CURTIS LEE MORRISON (CSBN 321106)
RED EAGLE LAW, L.C.
30211 Avienda De Las Banderas
Suite 200 #7325
Rancho Santa Margarita, CA 92688
Phone: 714-661-3446
Email: curtis@redeaglelaw.com
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| TOKTAM HOSSEINNEZHAD ARIANI, HAMED MIKANIKI, ERFAN REZVANI GHOMI,  KHALIL TAHERI, ZEINAB ALIPANAHLOO,  AMIRREZA MOINI, NAZANIN SAMIEI,  HADI KASEB GHANE, PAYAM SHOJAEI, ASIYEH MOTAMEDFARD, SIAMAK AKHSHIK, ATEFEH MORADI ADRIAN AKHSHIK, MOHAMMADREZA REZAEI KAMALABAD, FARANK MESBAH, NIMA GHIASIDOOST, GHAZAL DELNAVAZ,  ALI ASGHAR SAFAEI, SAHEBEH HAGHI,  KAMRAN SEPANLOO, SAMIEH KOKABI, MONIREH FARAJI DIZAJI, VAHID KHLILIAN AIDIN KHALILIAN, ELHAM ASADIAN, ALI DEHSHAHRI, SAMIRA HOSSAINI ALHASHEMI, HANA HANAEE AHVAZ, HAMIDREZA YOUSEFI,  NAZILA AGHAEI HIRI, MEHDI EFFATPARVAR,  KIMIA NAJAFI, KAVEH HOSSEINI,  NAVID RASEKH, ATEFEH TORABI, MOHAMMAD AMIN ABBASZADEH | Civil No.: 2:24-cv-4536<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND PETITION FOR WRIT OF MANDAMUS |

SARDEHAEI, SANAZ AFLAKI, MAHBOOBEH MAHMOODI, NASER PARSAEIAN,  JAVAD GHORBANI, SOUGOL AGHDASI, PARVANEH HATAMI, SEYEDHAMED NICKNAMASL,  MAHDI KARAMI, SABA SABAGHI,  MITRA KARBASI KHEIR, SAJJAD RIMAZ, MOOSA HEIDARI, MARYAM DEHDASHTI, HAMED SAFFARI, SOODEH MAGHSOODI,  MOHAMMADERFAN KAZEMI, MOHAMMADREZA SHOKOUHIMEHR, AEJUNG KIM, JAVAD ESMAEILI NOOSHABADI, ROYA KARAMIEMAD, MOHAMMADTAGHI VAKILI,  JALAL ROUHI,  SARA VAKILI, ROOZBEH SANAEI, SOHEIL MOHTARAM, HOSSEIN BAKHSHI KHANIKI, HAMED KHEZRZADEH, ROZA ASADI,  SARA AGHAKHANI, AMIR HOSSINI, REZA MOVAHEDINIA, MARYAM BAHRANI, REZA BAREKATAIN, NASIM CHITSAZ,  SEYED MOJTABA MIRFENDERESKI, TAYEBEH MAZAHERI, AFSHIN BABAZADEH, FERESHTEH MOHAMMADI VAHED, MOHSEN MOHAGHEGH, MARYAM JAMSHIDISIANAKI,  ESMAEIL SADEGHI, PARIA KARIMI, MEHDI RAHMANI,  YASHAR TOOPCHI, FATEMEH SAFARPOUR DIZBONI, AYOU AMINI, MEHRNAZ MESDAGHI , AHMAD GHASEM POUR, JAVAD GHODDOOSINEJAD, ELHAM BAGHBAN BAGHESTAN,  ATEFEH AMERIZADEH,  ALIREZA AMANI, MARYAM MAZANDARANI, EUNHYE LEE, AMIRHOSSEIN GOUDARZI, SAYYED MAHDI ZIAEI,  MARYAM

SADAT SADROSADAT, ROOZBEH
SANAEI, MOHAMMAD ALIZADEH,
SAHAR ANDARZA, MOHAMMAD
MEHDI KHAJEH, MORTEZA KAZEMI,
SARA KAZEMI,

                                        Plaintiffs,

                    v.

ANTONY J. BLINKEN, in his official
capacity as U.S. Secretary of State,

CARSON WU, in his official capacity as
Acting Director of Screening, Analysis and
Coordination,

    Serve: Antony J. Blinken
            Secretary of State
            The U.S. Department of State
            The Executive Office
            Office of the Legal Adviser
            Suite 5.600
            600 19th Street NW
            Washington, DC  20522

            Carson Wu
            Acting Director of Screening,
            Analysis and Coordination
            The U.S. Department of State
            The Executive Office
            Office of the Legal Adviser
            Suite 5.600
            600 19th Street NW
            Washington, DC  20522

            US Attorney General Merrick
            Garland
            U.S. Department of Justice
            950 Pennsylvania Ave. NW

Washington, DC  20530-0009

Civil Process Clerk
US Attorney's Office
Central District of California
300 North Los Angeles St.,
Suite 7516
Los Angeles, CA   90012

Defendants.

## TABLE OF CONTENTS

TABLE OF EXHIBITS ................................................................................. iii

INTRODUCTION ....................................................................................... 1

JURISDICTION ......................................................................................... 6

VENUE ................................................................................................... 10

PARTIES ................................................................................................ 10

PLAINTIFFS ........................................................................................... 10

DEFENDANTS ........................................................................................ 92

STATUTORY AND REGULATORY FRAMEWORK ................................. 92

I.      Statutory and Regulatory Framework for Visa Adjudications ............... 92

II.     Defendants' Mandatory Duty to Adjudicate Plaintiffs' Visa Applications.

        100

STATEMENT OF FACTS ........................................................................ 107

I.      THE EVOLUTION OF THE DS-5535 SCHEME ............................... 107

II.     DEFENDANTS RELIED ON A FACTOR WHICH CONGRESS HAS

NOT INTENDED THEM TO CONSIDER. ........................................... 111

III.    DEFENDANTS FAILED TO CONSIDER IMPORTANT ASPECT OF

THE PROBLEM BEFORE IMPLEMENTING THE DS-5535 SCHEME. ........ 112

IV.     IMMIGRANT VISA APPLICANTS CAN ONLY FURNISH DS-5535

RESPONSES AFTER THEY ARE REFUSED UNDER INA 221(g). ............... 113

V.      DEFENDANTS HAVE SET ARBITRARY EXPECTATIONS THAT

ARE ALL OVER THE PLACE. ............................................................. 115

i

**VI.**    PLAINTIFFS' HARDSHIP AND HARM SUFFERED. ......................116

CAUSES OF ACTION ..................................................................................118

COUNT ONE: Violation of the APA, § 706(2)(A) and (D) ...............................118

COUNT TWO: Violation of the APA, § 706(2)(A) and (D) ..............................120

COUNT THREE: Violation of the APA, 5 U.S.C. § 706(2) ...........................121

COUNT FOUR: Violation of the APA, 5 U.S.C. § 706(1)...............................123

COUNT FIVE: Violation of the APA; 5 U.S.C. § 555(b) ...................................126

COUNT SIX: Mandamus Act, 28 U.S.C. § 1361 ...............................................128

PRAYER FOR RELIEF ...............................................................................133

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## TABLE OF EXHIBITS

Exhibit A     82 FR 20956

Exhibit B     9 FAM 304.5-9(D) as of October 12, 2021

Exhibit C     9 FAM 504.11-2(A)

Exhibit D     US Embassy Mumbai, DS-5535

Exhibit E     US Embassy Ankara answer to general question

Exhibit F     U.S. Virtual Embassy Iran AP Estimation

Exhibit G     U.S. Embassy Abu Dhabi Automatic reply

Exhibit H     US Embassy Abu Dhabi, United Arab Emirates – ABD

Exhibit I     US Embassy Ankara - After the Interview

Exhibit J     CEAC Online Case Statuses as of May 20-31, 2024

Exhibit K     April 7, 2024 Declaration of Defendant Carson Wu

Exhibit M     9 FAM § 504.11-3(B)(2)(a), (before February 26, 2024)

Exhibit N     9 FAM § 504.11-3(B)(2)(a), (after February 26, 2024)

Exhibit O     Excerpt of Transcript, *EsmaeilZadeh v Blinken*, Case No. 8:23-cv-02118-FWSJDE, oral argument on April 4, 2023

Exhibit P     DOJ Letter explaining Administrative Processing

<u>INTRODUCTION</u>

1.    Plaintiffs include 97 Iranian national immigrant visa applicants, including both 57 primary applicants and 40 derivative spouses ("Plaintiffs"), itemized in the Parties section below (collectively "Plaintiffs"). Plaintiffs, by and through the undersigned counsel, respectfully bring this Complaint for Declaratory and Injunctive Relief and Petition for Writ of Mandamus to compel Defendants ANTONY J. BLINKEN, in his official capacity as US Secretary of State, and CARSON WU, in his official capacity as Acting Director of the Office of Screening, Analysis ("Defendants"), and those acting under them, to cease preventing the collection of Form DS-5535, Supplemental Questions for Visa Applicants prior to immigrant visa interviews ("DS-5535 Scheme"), because the policy is incongruent with law, and causing unreasonable delays for Iranian immigrant visa applicants, including plaintiffs here. Further, Plaintiffs request the court compel Defendants to cease using §221(g) to throttle legal immigration, as the practice is unlawful. Plaintiffs also ask the Court to compel Defendants to remedy Plaintiffs' injuries by providing final adjudications for the immigrant visa applications of Plaintiffs without further delay.

2.    Defendants' implementation of the DS-5535 Scheme is unlawful because it violates the text of 8 U.S.C. 1202(b). Simply, Congress was clear that "[e]very alien applying for an immigrant visa…shall furnish to the consular officer

1

with his application a copy of a certification by the appropriate police authorities stating what their records show concerning the immigrant; a certified copy of any existing prison record, military record, and record of his birth; and a certified copy of all other records or documents concerning him or his case which may be required by the consular officer. The copy of each document so furnished shall be permanently attached to the application and become a part thereof." 8 U.S.C. §1202(b), (emphasis added).

3.     By implementing the DS-5535 Scheme and preventing Iranian immigrant visa applicants from submitting the DS-5535 prior to interviews, Defendants have extended the period of time it takes for Iranian immigrant visa applicants to receive final adjudications of their applications by a period that varies from several months to years.

4.     Plaintiffs here are Iranian nationals who are applicants for Employment-Based Immigrant Visas, and their derivative spouse and minor child beneficiaries. ("Plaintiffs").

5.     All Plaintiff in this action submitted a Form DS-260, Online Immigrant Visa and [Noncitizen] Registration Application ("DS-260"), and those DS-260 applications were found by NVC to be "Documentarily Qualified" or "Documentarily Complete."

6.      All Plaintiffs have been interviewed by a consular officer at a US Embassy or Consulate. At all those interviews, all Plaintiffs presented valid unexpired passports or other suitable travel documents. Further, all Plaintiffs furnished to the consular officers with their applications all documents concerning them or their individual cases which may be required by the consular officer. Yet, because Defendants' DS-5535 Scheme prevented all Plaintiffs from submitting completed DS-5535 questionnaires at or prior to their interviews, the final adjudications of all Plaintiffs have been unreasonably delayed.

7.      Through Department guidance and software, Defendants' DS-5535 Scheme requires consular officers to request Iranian visa applicants to complete the DS-5535. The decisions to request the completion of the DS-5535 are not made by consular officers. This is contrary to law, and the proposition and methodology described in the State Department's notices.

8.      Following their immigrant visa interviews, Plaintiffs' cases were placed in what Defendants call administrative processing. Defendants told them that they required vetting of their DS-5535 responses, which embassies, consulates, and consular officers refuse to accept prior or even at the immigrant visa interviews.

9.      "Admininstrative processing is a catch-all term that refers to various discretionary, post-adjudication processes undertaken by the State Department

("State"). They are explained on State's website and discussed in State's Foreign Affairs Manual ("FAM") but are not mandated by any statute or regulation." **Exhibit P,** *DOJ Letter Explaining AP to CADC*.

10.    Plaintiffs' immigrant visa applications remain in administrative processing since their interviews. Plaintiffs have yet to receive final adjudications of their immigrant visa applications.

11.    Plaintiffs have fulfilled all necessary administrative requirements to obtain the immigrant visas, but Defendants have unreasonably delayed in making final decisions on their ability to immigrate to the United States, leaving the Plaintiffs and their families in a perpetual status of uncertainty about their future.

12.    The delays in adjudications of Plaintiffs' applications have placed severe emotional and financial strain on the Plaintiffs, individually and in the aggregate. Plaintiffs have been unable to definitively plan for their families' futures.

13.    Statutes, regulations, and agency guidance make clear that the Defendants have a mandatory duty to adjudicate Plaintiffs' applications within a reasonable time – a duty which they have failed to fulfill.

14.    As a result of the unreasonable delay in final adjudications, Plaintiffs have suffered concrete, severe, and particularized injury.

15.    Plaintiffs are entitled to a decision on their immigrant visa applications. See 22 C.F.R. § 42.81(a) ("Issuance or refusal mandatory. When a visa application has been properly completed and executed before a consular officer in accordance with the provisions of INA and the implementing regulations, the consular officer must either issue or refuse the visa[.]") (emphasis added); see also sections 101(a)(9), (16), 201(b)(2)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101(a)(9), (16), 1201(b)(2)(A)(i); Patel v. Reno, 134 F.3d 929, 932 (9th Cir. 1997) ("A consular office is required by law to act on visa applications.").

16.    If a visa is refused, the application must be reconsidered if "within one year from the date of refusal [the applicant] adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based." 22 C.F.R. § 42.81(e). However, Defendant WU has revealed that reconsideration cannot occur, at least not in good faith, because consular officers technically cannot re-open applications when a SOA is pending. **Exhibit K, April 7, 2024 Declaration of Carson Wu**, ¶ 26. Thus, if Defendants produce new §221(g) non-final decisions for Plaintiffs purporting to be from reconsiderations in this action, Plaintiffs preemptively incorporate here an allegation of bad faith related to that production. Consular officers could not possibly make a lawful decision whether or issue or refuse a visa application that they could not re-open.

17.     Plaintiffs' immigrant visa applications remain within the jurisdiction of the Defendants, who have improperly withheld action on them for more than nine months since their immigrant visa interviews, to the extreme detriment of the rights and privileges of Plaintiffs.

18.     Plaintiffs turn to the Court seeking an order to compel the Defendants and those acting under them to cease the DS-5535 Scheme, and immediately and forthwith take all appropriate action to fulfill their mandatory, non-discretionary duty to provide final adjudications Plaintiffs immigrant applications.

<u>JURISDICTION</u>

19.     This case arises under the United States Constitution; the INA, 8 U.S.C. § 1101 et seq.; and the APA, 5 U.S.C. § 555(b) and § 701 et seq. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1329, and 1361.

20.     This is a civil action brought pursuant to 28 U.S.C. § 1361. ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.") Jurisdiction is further conferred by 8 U.S.C. § 1329 (jurisdiction of the district courts) and 28 U.S.C. § 1331 (federal subject matter jurisdiction). This Court also has authority to grant

declaratory relief under 28 U.S.C. § 2201 and 2202, and injunctive relief under 5 U.S.C. § 702 and 28 U.S.C. § 1361.

21.    Under 28 U.S.C. § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

22.    Plaintiffs are challenging the Defendants' authority to withhold the adjudications of Plaintiffs' immigrant visa applications, and not challenging decisions which are within the discretion of the Defendants. Therefore, jurisdiction exists for this Court to consider whether Defendants have the authority to withhold adjudication. See Patel, 134 F.3d at 932; Raduga USA Corp. v. United States Dep't of State, 440 F. Supp. 2d 1140, 1149 (S.D. Cal. 2005) (finding mandamus jurisdiction where "Plaintiffs simply seek to compel the consul to render a final decision on Plaintiff's visa application which is mandated under [8 C.F.R.] § 42.81(a)").

23.    Jurisdiction is also conferred pursuant to 5 U.S.C. §§ 555(b) and 702, the Administrative Procedure Act ("APA"). The APA requires the Defendants to carry out their duties within a reasonable time.  5 U.S.C. § 555(b) provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to

conclude a matter presented to it." The Defendants are subject to 5 U.S.C. § 555(b). See Patel, 134 F.3d at 931-32 ("Normally a consular official's discretionary decision to grant or deny a visa petition is not subject to judicial review. However, when the suit challenges the authority of the consul to take or fail to take an action as opposed to a decision taken within the consul's discretion, jurisdiction exists.") (Internal citations omitted); Raduga USA, 440 F. Supp. 2d at 1146 ("[T]he Court finds that Plaintiffs have sufficiently demonstrated Article III standing to bring this APA mandamus action.") See also Trudeau v. FTC, 456 F.3d 178, 185 (D.C. Cir. 2006) (finding that district court has jurisdiction under the APA, in conjunction with 28 U.S.C. § 1331, to review Plaintiffs' complaint for declaratory and injunctive relief against federal agency); Liberty Fund, Inc. v. Chao, 394 F. Supp. 2d 105, 114 (D.D.C. 2005) ("The [APA] requires an agency to act, within a reasonable time," 5 U.S.C. § 555(b), and authorizes a reviewing court to compel agency action … unreasonably delayed," 5 U.S.C. § 706(1).")

24.    Section 242 of the INA, 8 U.S.C. § 1252, does not deprive this Court of jurisdiction. INA § 242(a)(5) provides that "a petition for review filed with an appropriate court of appeals in accordance with this section, shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act[.]" As the present action does not seek review of a removal order, but is simply an action to compel the Defendants to adjudicate the

Plaintiffs' unreasonably delayed application, this Court retains original mandamus jurisdiction under 28 U.S.C. § 1361. See <u>Liu v. Novak</u>, 509 F. Supp. 2d 1, 5 (D.D.C. 2007) ("[T]here is … significant district court authority holding that [8 U.S.C.] § 1252(a)(2)(B)(ii) does not bar judicial review of the pace of application processing or the failure to take action.") As set forth below, the delay in adjudicating Plaintiffs' immigrant visa applications is unreasonable.

25.     Under the APA, a reviewing court may order action unlawfully withheld, and may also "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law" and agency action taken "without observance of procedure required by law" See 5 U.S.C. §§706(1), 706(2)(A), 706(2)(D).

26.     The Code of Federal Regulations is unambiguous that the Embassy has a mandatory and affirmative duty to adjudicate a properly filed immigrant visa application where the underlying Form I-140 ("Form I-140") has been approved by USCIS and forwarded to the appropriate overseas embassy. 22 C.F.R. § 42.81(a); see also INA § 201(d) ("Worldwide level of employment-based immigrants.").

27.     The court has further remedial authority under the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the Administrative Procedure Act, 5 U.S.C. § 500 et seq.

VENUE

28.    Pursuant to 28 U.S.C. § 1391(e), venue is proper in this district on the following grounds:  this is a civil action in which (1) Defendants are officers of the United States acting in their official capacity or an agency of the United States; (2) Plaintiff Toktam Hosseinnezhad Ariani, resides in Encino, California, in Los Angeles County, and within the Western Division of this judicial district; and (3) a substantial part of the acts or omissions giving rise to the claim occurred in this judicial district. Further, Plaintiff Morteza Kazemi has a job offer in Irvine, California, and an intent to reside within this district.

29.    Since at least one Plaintiff resides in the Central District of California, venue is proper before this court for all Plaintiffs. Mosleh v. Pompeo, No. 1:19-cv-00656-LJO-BAM, 2019 U.S. Dist. LEXIS 102765, at *5 (E.D. Cal. June 19, 2019); Also see Californians for Renewable Energy v. United States Envtl. Prot. Agency, No. C 15-3292 SBA, 2018 WL 1586211, at *5-6 (N.D. Cal. Mar. 30, 2018)(ruling only one Plaintiff must reside within the forum district for venue purposes and collecting cases holding the same).

PARTIES

PLAINTIFFS

Self-Petitioner Toktam Hosseinnezhad Ariani

30.    Plaintiff Toktam Hosseinnezhad Ariani is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date March 25, 2022.

31.    Plaintiff Toktam Hosseinnezhad Ariani is a Nuclear Medicine Specialist with extensive clinical experience. She holds an MD and a specialization in Nuclear Medicine from Mashhad University of Medical Sciences. Toktam has served as a Nuclear Medicine Physician at Mashhad University of Medical Sciences, a Private Nuclear Medicine Center in California, and Almahdi Nuclear Medicine in Ardabil, Iran. Plaintiff Toktam Hosseinnezhad Ariani research focuses on myocardial perfusion imaging, neonatal care, and the application of nuclear medicine in detecting ectopic gastric mucosa and diagnosing solitary pulmonary nodules. Plaintiff Toktam Hosseinnezhad Ariani has published several articles in prominent medical journals, contributing significantly to the field of nuclear medicine.

32.    Following the approval of the I-140 petition on February 8, 2022, the petition was forwarded to NVC. On September 13, 2022, NVC created a case number for the case: YRV2023602018. The case then became documentarily qualified in October of 2022.

11

33.    Plaintiff Hamed Mikaniki is an Iranian national, the spouse of Plaintiff Toktam Hosseinnezhad Ariani, and a derivative applicant on their application.

34.    Plaintiff Toktam Hosseinnezhad Ariani's children A.M. and A.M. are also derivative applicants on their application.

35.    On Monday, November 27, 2023, Toktam Hosseinnezhad Ariani attended an immigrant visa interview at U.S. Embassy Yerevan, Armenia. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses for Plaintiff Hamed Mikaniki, which were timely provided on December 02, 2023.

36.    Plaintiff Hamed Mikaniki, the spouse of Toktam Hosseinnezhad Ariani, has remained in Administrative processing for six months.

Self-Petitioner Payam Shojaei

37.    Plaintiff Payam Shojaei is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date December 03, 2021. Plaintiff Payam Shojaei is a distinguished academic and researcher with a Ph.D. in Management-Systems Management from Shiraz University. Plaintiff Payam Shojaei is an Associate Professor at Shiraz University, where he has held various teaching and administrative roles, including Dean of International Affairs.

Payam's expertise spans operations research, supply chain management, and healthcare management. Plaintiff Payam Shojaei has been recognized with several honors and awards for his academic excellence and research contributions.

38.    Following the approval of that petition on March 30, 2022, the petition was forwarded to NVC. On July 30, 2022, NVC created a case number ANK2022742001. The case became documentarily qualified in October 2022.

39.    However, Plaintiff requested a transfer to U.S. Embassy Yerevan and on June 30, 2023, NVC assigned a new case number: YRV2023680013. The case then became documentarily qualified in October of 2022.

40.    Plaintiff Asiyeh Motamedfard is an Iranian national, the spouse of Plaintiff Payam Shojaei, and a derivative applicant on their application.

41.    Plaintiff Payam Shojaei's son B.S. is also a derivative applicant on their application.

42.    On Monday, October 16, 2023, Payam Shojaei attended an immigrant visa interview at U.S. Embassy Yerevan, Armenia. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on October 16, 2023.

43.    Plaintiff has remained in Administrative processing for over seven months.

Self-Petitioner Khalil Taheri

13

44.     Plaintiff Khalil Taheri is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date October 01, 2021. Plaintiff Khalil Taheri is a Ph.D. graduate in Computer Engineering from the University of Tehran, specializing in Artificial Intelligence and Robotics. He has extensive experience in machine intelligence, robotics, and software engineering. Khalil has served as an IT Security Manager and Software Developer at several companies. He is a prolific researcher with multiple peer-reviewed publications and has been recognized with awards such as the Best Paper Award at the 22nd Iranian Conference on Electrical Engineering. He is also a reviewer for prestigious journals and conferences in his field.

45.     Following the approval of that petition on February 23, 2022, the petition was forwarded to NVC. On June 7, 2022, NVC created a case number for the case YRV2022658003. The petitioner requested a transfer to U.S. Embassy Montreal, Canada, following the request NVC changed the case number to MTL2022821001.

46.     Plaintiff Khalil Taheri became documentarily qualified in August of 2022 Later the petitioner requested a transfer back to U.S. Embassy Yerevan, following the request NVC changed the case number to YRV2023600008. Plaintiff Khalil Taheri received an invitation on August 03, 2023, to attend an interview the following month.

47.    Plaintiff Zeinab Alipanahloo is an Iranian national, the spouse of Plaintiff Khalil Taheri, and a derivative applicant on their application.

48.    On Monday, September 18, 2023, Plaintiff Khalil Taheri and Plaintiff Zeinab Alipanahloo attended an immigrant visa interview at U.S. Embassy Yerevan, Armenia. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which they timely provided on September 20, 2023.

49.    On September 22, 2023, the consulate confirmed receipt of the DS-5535 via email. However, Plaintiffs Khalil Taheri and Plaintiff Zeinab Alipanahloo have remained in Administrative Processing for over eight months.

Self-Petitioner Amirreza Moini

50.    Plaintiff Amirreza Moini is an Iranian-Canadian dual national who filed a Form I-140 self-petition in the EB1-A visa category with the priority date Febuary 02, 2022. Plaintiff Amirreza Moini is a highly skilled Senior Full Stack Software Developer. With extensive experience spanning both academic and corporate environments, Amirreza holds a Master's degree in Physics from the University of Windsor and a Bachelor's degree in Physics from Ferdowsi University of Mashhad.

51.    Plaintiff Amirreza Moini expertise encompasses a wide range of programming languages and frameworks, allowing him to excel in diverse

industries such as insurance, banking, and energy services. Throughout his career, he has played a pivotal role in developing and maintaining high-performance applications for notable organizations.

52.    Following the approval of that petition on August 18, 2022, the petition was forwarded to NVC. On December 14, 2022, NVC created a case number for the case: MTL2022847037. Plaintiff Amirreza Moini requested a transfer to the U.S. Embassy Yerevan, Armenia which was approved on January 30, 2023. NVC assigned a new case number for the case: YRV2023530009. The case then became documentarily qualified in January of 2023.

53.    On Monday, July 17, 2023, Plaintiff Amirreza Moini attended an immigrant visa interview at U.S. Embassy Yerevan, Armenia. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, Plaintiff Amirreza Monini's responses were timely sent the same day, July 17, 2023.

54.    Plaintiff Amirreza Moini has remained in Administrative processing for over ten months.

Self-Petitioner Nazanin Samiei

55.    Plaintiff Nazanin Samiei is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date July 01, 2021. Plaintiff Nazanin Samiei is a distinguished Board-Certified Periodontist based in

16

Tehran, Iran, with a robust background in both clinical practice and academia. She holds a Doctorate in Dentistry (DDS) from Shahid Beheshti University of Medical Sciences and a Master's in Periodontics from Tehran University of Medical Sciences. Nazanin has served as an Assistant Professor at the Tehran University of Medical Sciences, where she taught various theoretical and practical courses in periodontology and dental implantology. Her extensive research includes numerous publications in esteemed journals, covering topics such as implant stability, periodontal disease, and innovative dental treatments. She is recognized for her contributions to dental education and has been actively involved in professional conferences and workshops worldwide.

56.    Following the approval of that petition on February 2, 2022, the petition was forwarded to NVC. On February 11, 2023, NVC created a case number for the case: ATH2023555003. The case then became documentarily qualified in March of 2023.

57.    Plaintiff Hadi Kaseb Ghane is an Iranian national, the spouse of Plaintiff Nazanin Samiei, and a derivative applicant on their application. On Tuesday, October 31, 2023, Plaintiffs Nazanin Samiei and Hadi Kaseb Ghane attended an immigrant visa interview at U.S. Embassy Athens, Greece. Following their interview, the consular officer issued a non-final 221(g) decision, and

17

requested the DS-5535, the responses were sent to the consulate promptly on November 01, 2023.

58.    Plaintiffs Nazanin Samiei and Hadi Kaseb Ghane have remained in Administrative processing for over six months.

Self-Petitioner Erfan Rezvani Ghomi

59.    Plaintiff Erfan Rezvani Ghomi is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date December 13, 2021. Plaintiff Erfan Rezvani Ghomi is a Postdoctoral Research Fellow at the Lee Kong Chian School of Medicine, Nanyang Technological University in Singapore. With a Doctor of Philosophy (Ph.D.) in Mechanical Engineering from the National University of Singapore, he specializes in polymer and biomedical engineering. His research focuses on the development of antimicrobial wound dressings and polymer nanocomposites for biomedical applications. He has received numerous accolades, including the Singapore International Graduate Award (SINGA) and multiple Wiley Top-Cited and Top-Downloaded Article Certificates. He has co-authored over 40 peer-reviewed journal papers and his work is highly cited in the field.

60.    Following the approval of that petition on September 12, 2022, the petition was forwarded to NVC. On November 7, 2022, NVC created a case number for the case: SGP2022807002. Plaintiff Erfan Rezvani Ghomi completed

his DS-260 in December of 2022. The case then became documentarily qualified in January of 2023.

61.     On Wednesday, March 15, 2023, Plaintiff Erfan Rezvani Ghomi attended an immigrant visa interview at U.S. Embassy Singapore.

62.     Following his interview, the consular officer requested one additional document to be mailed through the local courier, Aramex. Plaintiff Erfan Rezvani Ghomi promptly obtained the requested document and submitted in April of 2023.

63.     Plaintiff Erfan Rezvani Ghomi has remained in Administrative processing for over fourteen months.

Self-Petitioner Siamak Akhshik

64.     Plaintiff Siamak Akhshik is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date February 08, 2021. Plaintiff Siamak Akhshik is an accomplished Mechanical Engineer with a Ph.D. from Sharif University of Technology in Tehran. With over 17 years of experience in Computational Fluid Dynamics (CFD) and mechanical engineering, he has contributed significantly to the field through both academic research and industry applications. He has held various roles, including Engineering Specialist at Worley and R&D Engineering Manager at IOEC, where he developed in-house codes and modeled fluid-structural interactions. His extensive research has been

19

published in several prestigious journals, and he has presented his findings at numerous international conferences.

65.    Following the approval of that petition on December 7, 2021, the petition was forwarded to NVC. On August 10, 2022, NVC created a case number for the case: AMS2022791001. The case then became documentarily qualified in September of 2022.

66.    Plaintiff Atefeh Moradi Adrian Akhshik is an Iranian national, the spouse of Plaintiff Siamak Akhshik, and a derivative applicant on their application.

67.    On Friday, March 17, 2023, Siamak Akhshik attended an immigrant visa interview at U.S. Embassy Amsterdam, Netherlands. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on March 20, 2023.

68.    Plaintiff has remained in Administrative processing for over fourteen months.

Self-Petitioner Mohammadreza Rezaei Kamalabad

69.    Plaintiff Mohammadreza Rezaei Kamalabad is an Iranian and Australian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date February 17, 2022. Plaintiff Mohammadreza Rezaei Kamalabad is a highly experienced pilot with a robust career spanning over 14 years. He has served as a Captain of the Airbus A320 for Turkish Airlines and as a

First Officer for various aircraft including the Airbus A330, A310, A300, and the EMB145. His extensive flight time totals 7,520 hours, with 6,923 hours on heavy commercial passenger jets. Plaintiff Mohammadreza Rezaei Kamalabad holds a Bachelor's degree in Aviation Technology and an Associate degree in Aircraft Maintenance Engineering – Mechanical.

70.    Following the approval of that petition on March 23, 2023, the petition was forwarded to NVC. On July 1, 2023, NVC created a case number for the case: SYD2023671003. The case then became documentarily qualified in May of 2023.

71.    Plaintiff Farank Mesbah is an Iranian national, the spouse of Plaintiff Mohammadreza Rezaei Kamalabad, and a derivative applicant on their application.

72.    Plaintiff Mohammadreza Rezaei Kamalabad's child D.K. is also a derivative applicant on their application.

73.    On Wednesday, October 18, 2023, Mohammadreza Rezaei Kamalabad attended an immigrant visa interview at U.S. Embassy Sydney, Australia. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on October 27, 2023.

74.    Plaintiff Mohammadreza Rezaei Kamalabad has remained in Administrative processing for over seven months.

Self-Petitioner Nima Ghiasidoost

75.     Plaintiff Nima Ghiasidoost is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date December 06, 2021. Plaintiff Nima Ghiasidoost is an accomplished pilot with extensive experience and a strong educational background in aviation. He has served as a First Officer for the Airbus A320 family at IranAir and has previously held roles as a First Officer for Fokker 70/100 and as a Ground and Simulator Instructor for B727 at IranAir. Nima holds several important certifications, including an ICAO ATPL, an A320 Type Rating, and a Fokker 70/100 Type Rating. He has a total flight time of over 2,784 hours, with significant experience in high-performance and turbine aircraft. His exceptional skills and performance were recognized in 2019 when he was honored with a Certificate of Merit for outstanding performance during an emergency situation.

76.     Following the approval of that petition on April 7, 2022, the petition was forwarded to NVC. On August 19, 2022, NVC created a case number for the case: YRV2022727006. The case then became documentarily qualified in September of 2022.

77.     Plaintiff Ghazal Delnavaz is an Iranian national, the spouse of Plaintiff Nima Ghiasidoost, and a derivative applicant on their application.

78.     On Thursday, March 30, 2023, Plaintiff Nima Ghiasidoost attended an immigrant visa interview at U.S. Embassy Yerevan, Armenia. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on March 30, 2023.

79.     Plaintiff has remained in Administrative processing for over thirteen months.

Self-Petitioner Ali Asghar Safaei

80.     Plaintiff Ali Asghar Safaei is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date December 06, 2021. Plaintiff Ali Asghar Safaei is an accomplished academic and professional in the field of Biomedical Informatics and Data Science. Plaintiff Ali Asghar Safaei holds a Ph.D. in Computer Engineering (Software) from Iran University of Science and Technology. Plaintiff Ali Asghar Safaei is currently an Associate Professor at Tarbiat Modares University, where he has also served as the Head of the Department of Medical Informatics. Plaintiff Ali Asghar Safaei has extensive experience in research and industry, co-founding two startup companies focused on IoT-based indoor positioning systems and augmented/virtual reality applications for healthcare. He has also worked as an IT consultant and project manager for various organizations, contributing to the development of eCRF systems and national HPC clusters.

23

81.    Following the approval of that petition on June 8, 2022, the petition was forwarded to NVC. On September 26, 2022, NVC created a case number for the case: YRV2022766005. The case then became documentarily qualified in October of 2022.

82.    Plaintiff Sahebeh Haghi is an Iranian national, the spouse of Plaintiff Ali Asghar Safaei, and a derivative applicant on their application.

83.    On Thursday, October 19, 2023, Ali Asghar Safaei attended an immigrant visa interview at U.S. Embassy Yerevan, Armenia. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on October 19, 2023.

84.    Plaintiff Ali Asghar Safaei has remained in Administrative processing for over seven months.

Self-Petitioner Kamran Sepanloo

85.    Plaintiff Kamran Sepanloo is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date August 02, 2021. Plaintiff Kamran Sepanloo is a distinguished expert in nuclear engineering with over 35 years of extensive experience in nuclear regulatory activities and research. He holds a Ph.D. in Nuclear Engineering from Amir-Kabir University of Technology and has served in prominent positions, including the Director General of the Nuclear Safety Department at the Iran Nuclear Regulatory Authority (INRA)

24

and the Deputy Director of Research at Daneshestan Institute of Higher Education. His research contributions are significant, with numerous publications in leading journals and conferences.

86.    Following the approval of that petition on December 7, 2021, the petition was forwarded to NVC. On July 18, 2022, NVC created a case number for the case: YRV2022692008. The case then became documentarily qualified in August of 2022.

87.    Plaintiff Samieh Kokabi is an Iranian national, the spouse of Plaintiff Kamran Sepanloo, and a derivative applicant on their application.

88.    Plaintiff Kamran Sepanloo's son K.S. is also a derivative applicant on their application.

89.    On Monday, September 18, 2023, Kamran Sepanloo attended an immigrant visa interview at U.S. Embassy Yerevan, Armenia. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on September 24, 2023.

90.    Plaintiff Kamran Sepanloo' has remained in Administrative processing for over eight months.


Self-Petitioner Monireh Faraji Dizaji

25

91. Plaintiff Monireh Faraji Dizaji is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date March 03, 2021.

92. Plaintiff Monireh Faraji Dizaji is a distinguished researcher and academic in the field of Physical Chemistry, specializing in Electrochemistry. She holds a B.S., from K.N.T university. and an M.S.C. from  Tarbiat Modares University. Monireh's research focuses on the development of novel electrocatalysts for fuel cells and renewable energy applications.

93. She has received several honors, including ranking first in her Ph.D. entrance exam, receiving a scholarship from the Iran Nanotechnology Initiative Council, and multiple awards for her research papers. Monireh has published extensively in top-tier journals, contributing significantly to advancements in electrocatalysis and nanomaterials.

94. Following the approval of the I-140 petition on June 6, 2022, the petition was forwarded to NVC. On August 25, 2022, NVC created a case number for the case: YRV2022741009. The case then became documentarily qualified in October of 2022.

95. Plaintiff Vahid Khlilian Aidin Khalilian is an Iranian national, the spouse of Plaintiff Monireh Faraji Dizaji, and a derivative applicant on their application.

96.    Plaintiff Monireh Faraji Dizaji 's child A.K. is also a derivative applicant on their application.

97.    On Thursday, October 19, 2023, Monireh Faraji Dizaji attended an immigrant visa interview at U.S. Embassy Yerevan, Armenia. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on October 24, 2023.

98.    Plaintiff Monireh Faraji Dizaji has remained in Administrative processing for over seven months.

Self-Petitioner Elham Asadian

99.    Plaintiff Elham Asadian is an Iranian national who filed a Form I-140 self-petition in the EB1-A visa category with the priority date of October 04, 2021.

100.    Plaintiff Elham Asadian is a highly accomplished Assistant Professor of Nanoscience and Nanotechnology at the School of Advanced Technologies in Medicine, Shahid Beheshti University of Medical Sciences in Tehran, Iran. Plaintiff Elham Asadian holds a Ph.D. in Nanoscience and Nanotechnology from Sharif University of Technology, where she graduated with the highest honors.

101.    Following the approval of the I-140 petition on October 14, 2021, the petition was forwarded to NVC. On December 2, 2021, NVC created a case number for the case: ANK2021834001 assigned to U.S. Embassy Ankara. Plaintiff

requested a transfer to U.S. Embassy Yerevan. NVC created a new case number for the case: YRV2023740024. The case then became documentarily qualified in February of 2022.

102.    On Thursday, November 30, 2023, Elham Asadian attended an immigrant visa interview at U.S. Embassy Yerevan, Armenia (previously assigned to Ankara). Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on I have submitted the responses on December 06, 2023.

103.    Plaintiff Elham Asadian has remained in Administrative processing for over six months.

Self-Petitioner Ali Dehshahri

104.    Self-Petitioner Ali Dehshahri Plaintiff Ali Dehshahri is an Iranian national who filed a Form I-140 self-petition in the EB1-A visa category with the priority date August 16, 2022. Plaintiff Ali Dehshahri is a highly regarded Professor in the Department of Pharmaceutical Biotechnology at Shiraz University of Medical Sciences, Iran. He holds a Ph.D. in Pharmaceutical Biotechnology from Mashhad University of Medical Sciences and a Doctor of Pharmacy (Pharm.D.) from Shiraz University of Medical Sciences. Plaintiff Ali Dehshahri's research focuses on nanotechnology-based delivery systems for gene and drug therapies,

cancer immunotherapy, targeted therapy, and bioinformatics. He has been a visiting researcher at prominent institutions, including Ludwig-Maximilians University of Munich and the University of Basel. He has received numerous grants for his research and serves on the editorial boards of several scientific journals. Plaintiff Ali Dehshahri's contributions to the field of pharmaceutical biotechnology are marked by his pioneering research and dedication to advancing therapeutic technologies.

105.    Following the approval of the I-140 petition on June 20, 2023, the petition was forwarded to NVC. On August 1, 2023, NVC created a case number for the case: ABD2023713018. The case then became documentarily qualified in September of 2023.

106.    Plaintiff Samira Hossaini Alhashemi is an Iranian national, the spouse of Plaintiff Ali Dehshahri, and a derivative applicant on their application.

107.    Plaintiff Ali Dehshahri's child D.D. is also a derivative applicant on their application.

108.    On Tuesday, November 21, 2023, Ali Dehshahri attended an immigrant visa interview at U.S. Embassy Abu Dhabi, UAE. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on November 22, 2023.

109.    Plaintiff Ali Dehshahri has remained in Administrative processing for over six months.

Self-Petitioner Hana Hanaee Ahvaz

110.    Plaintiff Hana Hanaee Ahvaz is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date May 13, 2022. Plaintiff Hana Hanaee Ahvaz is a distinguished researcher and Ph.D. candidate in Biotechnology at the University of Natural Resources and Life Sciences, Vienna, Austria. With a robust academic background, including a Ph.D. in Cellular and Molecular Biology-Biophysics from the University of Tehran and an M.Sc. in the same field, Plaintiff Hana Hanaee Ahvaz has made significant contributions to the fields of regenerative medicine, tissue engineering and stem cells. She has extensive experience in mammalian cell isolation, microbial cell cultivation, and bioconjugation of antibodies. Her expertise includes advanced analytical methods such as flow cytometry, immunohistochemistry, and surface plasmon resonance. Plaintiff Hana Hanaee Ahvaz has presented her findings at numerous international conferences, further establishing her as a leading figure in her field. Plaintiff Hana Hanaee Ahvaz's dedication to advancing scientific knowledge and her significant research contributions make her a valuable asset to the scientific community. Plaintiff Hana Hanaee Ahvaz was invited as a keynote

speaker in Germany because of nobel findings and research in her field. Plaintiff Hana Hanaee Ahvaz has 42 publications in her field.

111.    Following the approval of the I-140 petition on October 11, 2022, the petition was forwarded to NVC. On January 3, 2023, NVC created a case number for the case: VNN2022864002. The case then became documentarily qualified in June of 2023.

112.    Plaintiff Hamidreza Yousefi is an Iranian national, the spouse of Plaintiff Hana Hanaee Ahvaz, and a derivative applicant on their application.

113.    On Thursday, October 19, 2023, Plaintiffs Hana Hanaee Ahvaz and Hamidreza Yousefi attended an immigrant visa interview at U.S. Embassy Vienna, Austria. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on October 23, 2023.

114.    Plaintiff Hana Hanaee Ahvaz has remained in Administrative processing for over seven months.

Self-Petitioner Nazila Aghaei Hiri

115.    Plaintiff Nazila Aghaei Hiri is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date November 10, 2021. Plaintiff Nazila Aghaei Hiri is an esteemed Associate Professor of

Operations Research at the Mathematics Department of Islamic Azad University, Ardabil Branch. She holds a Ph.D. in Applied Mathematics with a specialization in Operational Research from the Science and Research Branch of Islamic Azad University, Tehran. Plaintiff Nazila Aghaei Hiri's research focuses on operations research, nonlinear programming, multi-objective programming, and data envelopment analysis (DEA). Her contributions to the field are evidenced by numerous publications in prestigious journals, including Expert Systems with Applications and the European Journal of Industrial Engineering. Plaintiff Nazila Aghaei Hiri's dedication and scholarly achievements underscore her valuable contributions to the field of operational research.

116.    Following the approval of the I-140 petition on March 26, 2022, the petition was forwarded to NVC. On July 28, 2022, NVC created a case number for the case: YRV2022709007. The case then became documentarily qualified in September of 2022.

117.    Plaintiff Mehdi Effatparvar is an Iranian national, the spouse of Plaintiff Nazila Aghaei Hiri, and a derivative applicant on their application.

118.    Plaintiff Nazila Aghaei Hiri's children H.E. and H.E. are also derivative applicants on their application.

119.    On Thursday, October 26, 2023, Nazila Aghaei Hiri attended an immigrant visa interview at U.S. Embassy Yerevan, Armenia. Following their

interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on November 1, 2023.

120.    Plaintiff Nazila Aghaei Hiri has remained in Administrative processing for over six months.

Self-Petitioner Kimia Najafi

121.    Plaintiff kimia Najafi is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date February 22, 2022. Plaintiff Kimia Najafi is an expert in medical genetics with a focus on pregnancy loss, intellectual disability, and rare genetic syndromes. She specializes in detecting chromosomal abnormalities using advanced techniques such as CGH and PGS. Plaintiff Kimia Najafi's pioneering research on recurrent miscarriage and intellectual disorders has led to significant genetic discoveries. She was the first to use Whole Exome Sequencing (WES) on miscarriage products in consanguineous families, identifying key genetic pathways. Her extensive publication record and international conference presentations highlight her proficiency in molecular techniques. Plaintiff Kimia Najafi's work aims to improve prenatal diagnosis and prevent genetic disorders, enhancing public health outcomes.

122.    Following the approval of the I-140 petition on May 4, 2022, the petition was forwarded to NVC. On November 1, 2022, NVC created a case

33

number for the case: ABD2022804039. The case then became documentarily qualified in December of 2022.

123.    Plaintiff Kaveh Hosseini is an Iranian national, the spouse of Plaintiff Kimia Najafi, and a derivative applicant on their application.

124.    Plaintiff Kimia Najafi's child C.H. is also a derivative applicant on their application.

125.    Following an approved expedite request due to medical issues, on August 31, 2023, Kimia Najafi attended an immigrant visa interview at U.S. Embassy Abu Dhabi, UAE. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on September 4th, 2023.

126.    Plaintiff Kimia Najafi has remained in Administrative processing for over eight months.

127.    Further, Plaintiff Kimia Najafi's elderly grandmother is a US citizen residing in El Dorado Hills, California, and she will benefit from Plaintiff Kimia Najafi's presence and support in the U.S.

Self-Petitioner Navid Rasekh

128.    Plaintiff Navid Rasekh is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date June 27, 2022.

129.   Plaintiff Navid Rasekh is a Power Electronics Engineer with a Ph.D. in Electrical and Electronic Engineering from the University of Bristol, UK. Plaintiff Navid Rasekh specializes in high-frequency power loss prediction and measurement in magnetic components. Plaintiff Navid Rasekh has extensive experience in designing power electronics converters and wireless power transfer systems. Plaintiff Navid Rasekh has developed innovative methods for measuring core and winding losses and holds patents in wireless power transfer technologies. Plaintiff Navid Rasekh has also contributed to academia as a Teaching Assistant at the University of Bristol, supporting courses in power electronics and energy conversion. Plaintiff Navid Rasekh's expertise in power electronics and magnetic components makes him a valuable asset in both academic and industrial settings.

130.   Following the approval of the I-140 petition on January 5, 2023, the petition was forwarded to NVC. NVC created a case number for the case: LND2023544031. The case then became documentarily qualified in March of 2023.

131.   Plaintiff Atefeh Torabi is an Iranian national, the spouse of Plaintiff Navid Rasekh, and a derivative applicant on their application.

132.   On Monday, October 23, 2023, Plaintiffs Navid Rasekh and Atefeh Torabi attended an immigrant visa interview at U.S. Embassy London, UK. Following their interview, the consular officer issued a non-final 221(g) decision,

and requested DS-5535 responses, which were timely provided on October 24, 2023.

133.    Plaintiff Navid Rasekh has remained in Administrative processing for over six months.

Self-Petitioner Mohammad Amin Abbaszadeh Sardehaei

134.    Plaintiff Mohammad Amin Abbaszadeh Sardehaei is an Iranian national who filed a Form I-140 self-petition in the EB1 visa category with the priority date Febuary 07, 2022. Plaintiff Mohammad Amin Abbaszadeh Sardehaei is an accomplished entrepreneur and Senior Industrial Designer based in Tehran, Iran. He holds a BA in Industrial Design from Tehran University of Arts and is the founder and CEO of AArshin Industrial Design Company. With a strong passion for technology and business, Mohammad Amin excels in product design, manufacturing, and customized prototyping. Plaintiff Mohammad Amin Abbaszadeh Sardehaei's accolades include winning prestigious design awards such as the Good Design Award (Australia), IDA Design Award (USA), and Loop Design Award (Portugal). Plaintiff Mohammad Amin has exhibited his innovative designs at numerous events, including Tehran University's Research Week and the Expo Motor Show. He has also been featured on Tolou, a scientific program on

Iran's national television, highlighting his contributions to the field of industrial design.

135.   Following the approval of the I-140 petition on July 8, 2022, the petition was forwarded to NVC. On August 25, 2022, NVC created a case number for the case: YRV2022730006. The case then became documentarily qualified in October of 2022.

136.   Plaintiff Sanaz Aflaki is an Iranian national, the spouse of Plaintiff Mohammad amin Abbaszadeh Sardehaei, and a derivative applicant on their application.

137.   On Monday, October 16, 2023, Mohammad amin Abbaszadeh Sardehaei attended an immigrant visa interview at U.S. Embassy Yerevan, Armenia. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on October 18, 2023.

138.   Plaintiff Mohammad amin Abbaszadeh Sardehaei has remained in Administrative processing for over seven months.


Self-Petitioner Mahboobeh Mahmoodi

139.   Plaintiff Mahboobeh Mahmoodi is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date October 14, 2021.

140.   Plaintiff Mahboobeh Mahmoodi is an Associate Professor in the Department of Biomedical Engineering at Azad University of Yazd, Iran. She holds a Ph.D. in Biomedical Engineering (Biomaterials) from Amirkabir University of Technology. Plaintiff Mahboobeh Mahmoodi has published extensively in high-impact journals and has contributed to numerous research projects, including the development of novel wound dressings and bone regeneration materials. Plaintiff Mahboobeh Mahmoodi is the Chair of the Board of Directors at Sanat Pajoohan Amitis Yazd Company and Novel Wound Dressing Aramis Company. Plaintiff Mahboobeh Mahmoodi work has earned her multiple awards and recognition, underscoring her significant contributions to the field of biomedical engineering.

141.   Following the approval of the I-140 petition on March 31, 2022, the petition was forwarded to NVC. On July of 2022, NVC created a case number for the case: ANK2022692018. The case then became documentarily qualified in September of 2022.

142.   Plaintiff Naser Parsaeian is an Iranian national, the spouse of Plaintiff Mahboobeh Mahmoodi, and a derivative applicant on their application.

143. On Tuesday, May 30, 2023, Plaintiffs Mahboobeh Mahmoodi and Naser Parsaeian attended an immigrant visa interview at U.S. Embassy Ankara, Turkey. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on June 6, 2023.

144. Plaintiff Mahboobeh Mahmoodi has remained in Administrative processing for over eleven months.

Self-Petitioner Javad Ghorbani

145. Plaintiff Javad Ghorbani is an Iranian and Australian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date October 08, 2021.

146. Plaintiff Javad Ghorbani is a distinguished Research Fellow in geotechnical engineering at the Royal Institute of Melbourne Technology. Plaintiff Javad Ghorbani holds a Ph.D. in Civil Engineering from the University of Newcastle, a Master's degree from Iran University of Science and Technology, and a Bachelor's degree from the University of Tehran. Plaintiff Javad Ghorbani specializes in infrastructure resilience, digital innovation, and advanced unsaturated soil mechanics. His pioneering research has led to significant advancements in climate-resilient transportation infrastructure and intelligent

construction technologies. He has led and contributed to multiple high-impact projects, including being a finalist in the Engineers Australia Excellence Awards and the NTRO Research Industry Partnership Award.  Plaintiff Javad Ghorbani's contributions to geotechnical engineering have been recognized with numerous awards and honors, reflecting his leadership and excellence in the field.

147.    Following the approval of the I-140 petition on September 7, 2022, the petition was forwarded to NVC. On June 12, 2022, NVC created a case number for the case: SYD2022835003. The case then became documentarily qualified in October of 2023.

148.    Plaintiff Sougol Aghdasi is an Iranian and Australian national, the spouse of Plaintiff Javad Ghorbani, and a derivative applicant on their application.

149.    On Tuesday, October 17, 2023, Javad Ghorbani attended an immigrant visa interview at U.S. Embassy Sydney, Australia. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on October 18, 2023.

150.    Plaintiff Javad Ghorbani has remained in Administrative processing for over seven months.

Self-Petitioner Parvaneh Hatami

151.    Plaintiff Parvaneh Hatami is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date December 30, 2021. Plaintiff Parvaneh Hatami is a board-certified dermatologist with extensive clinical and academic experience. She earned her MD and completed her dermatology residency at Tehran University of Medical Sciences. She has served as Assistant Professor at Rafsanjan University of Medical Sciences and Head of Dermatology Clinics at Newsha and Uranus Clinics in Tehran. Her specialties include immunobullous disorders, autoimmune cutaneous disorders, cosmetic dermatology, and cutaneous cancers. Plaintiff Parvaneh Hatami accolades include a silver medal in the national chemistry Olympiad, and recognition as the best researcher at the 22nd Iranian Dermatology Congress. Plaintiff Parvaneh Hatami has published extensively in high-impact journals and presented at numerous international conferences, establishing her as a leading expert in dermatology.

152.    Plaintiff Seyedhamed Nicknamasl is an Iranian national, the husband of Plaintiff Parvaneh Hatami, and a derivative applicant on her application.

153.    Plaintiff Parvaneh Hatami's children S.N. and S.N. are also derivative applicants on their application.

154.    Following the approval of the I-140 petition on September 6, 2022, the petition was forwarded to NVC. On January 10, 2023, NVC created a case

41

number for the case: ABD2023510026. The case then became documentarily qualified in February of 2023.

155.    On Thursday, August 10, 2023, Plaintiffs Parvaneh Hatami and Seyedhamed Nicknamasl, and their children, attended an immigrant visa interview at U.S. Embassy Abu Dhabi, UAE. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on August 16, 2023.

156.    Plaintiff Parvaneh Hatami has remained in Administrative processing for over nine months.

Self-Petitioner Mahdi  Karami

157.    Plaintiff Mahdi Karami is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date November 26, 2021. Plaintiff Mahdi Karami is an Assistant Professor of Electrical Engineering at Islamic Azad University, Bushehr Branch, Iran. Plaintiff Mahdi Karami holds a Ph.D. and Master's in Electrical Power Engineering from Universiti Putra Malaysia, and a Bachelor's in Electrical Engineering from Islamic Azad University, Bushehr Branch. With over 14 years of experience, Plaintiff Mahdi Karami has served in various academic and administrative roles, including Head of the Department of Electrical Engineering. Plaintiff Mahdi Karami's research

focuses on power systems, fault detection, and renewable energy, with numerous publications in high-impact journals. Plaintiff Mahdi Karami's professional experience includes roles as a site supervisor, trainer, and contractor for various engineering projects, making him a valuable asset in both academic and industrial settings.

158.    Following the approval of the I-140 petition on March 18, 2022, the petition was forwarded to NVC. On August 17, 2022, NVC created a case number for the case: YRV2023569007. The case then became documentarily qualified in September of 2022.

159.    Plaintiff Saba Sabaghi is an Iranian national, the spouse of Plaintiff Mahdi Karami, and a derivative applicant on their application.

160.    On Thursday, October 12, 2023, Mahdi  Karami attended an immigrant visa interview at U.S. Embassy Yerevan, Armenia.

161.    Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on October 15, 2023.

162.    Plaintiff Mahdi Karami has remained in Administrative processing for over seven months.

Self-Petitioner Mitra Karbasi kheir

43

163.    Plaintiff Mitra Karbasi kheir is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date November 8, 2021. Plaintiff Mitra Karbasi Kheir is a highly accomplished Oral and Maxillofacial Radiologist with extensive academic and clinical experience. She holds a Dental Specialty Degree in Oral and Maxillofacial Radiology from Isfahan University of Medical Sciences, where she graduated with high honors. Her research contributions are notable, with numerous publications in prestigious journals. She has received several awards, including first place in the National Comprehensive Basic Science Exam of Dentistry. Mitra also holds a patent for a dental irrigation device and has authored multiple books in her field. Her expertise and dedication to dental radiology have made her a respected figure in the medical community.

164.    Following the approval of the I-140 petition on March 19, 2022, the petition was forwarded to NVC. On May 10, 2022, NVC created a case number for the case: YRV2022630010. The case then became documentarily qualified in August of 2022.

165.    On Monday, March 27, 2023, Mitra Karbasi Kheir attended an immigrant visa interview at U.S. Embassy Yerevan, Armenia. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on April 7, 2023.

166.    Plaintiff Mitra Karbasi Kheir has remained in Administrative processing for over thirteen months.

Self-Petitioner Sajjad Rimaz

167.    Plaintiff Sajjad Rimaz is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date October 14, 2021. Plaintiff Sajjad Rimaz is a Chemical Engineer with a Ph.D. from the National University of Singapore. His research focuses on developing catalysts for energy and environmental applications, including carbon dioxide capture and renewable energy. Plaintiff Sajjad Rimaz has extensive experience in machine learning and deep learning for catalysis synthesis. Plaintiff Sajjad Rimaz co-founded and served as CTO of AntePlastics, a startup converting plastic waste into valuable materials. Plaintiff Sajjad Rimaz has published numerous papers in high-impact journals and holds a provisional patent for a plastic depolymerization process.Plaintiff Sajjad Rimaz accolades include the Singapore International Graduate Award (SINGA) and top rankings in Iran's university entrance exams.

168.    Following the approval of the I-140 petition on March 7, 2022, the petition was forwarded to NVC. On May 9, 2022, NVC created a case number for the case: YRV2023552014. The case then became documentarily qualified on August 11, 2022.

169. On Monday, September 18, 2023, Sajjad Rimaz attended an immigrant visa interview at U.S. Embassy Yerevan, Armenia. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on September 18, 2023.

170. Plaintiff Sajjad Rimaz has remained in Administrative processing for over eight months.

Petitioner Moosa Heidari

171. Plaintiff Moosa Heidari is an Iranian national who filed a Form I-140 applicant in the EB-3 visa category with the priority date November 25, 2014.

172. Plaintiff Moosa Heidari has been offered permanent employment by House of Raeford Farms, Inc., one of the nation's top poultry producers. Heidari's job role, under the EB-3 unskilled worker category, involves full-time (40+ hours a week) tasks such as removing feathers, cleaning, dressing, cutting, and processing poultry. Despite extensive efforts to recruit local workers through various advertising channels, House of Raeford Farms, Inc. has faced a severe labor shortage, necessitating the hiring of foreign nationals. Heidari's employment is set to commence immediately upon his arrival in the U.S. and the provision of lawful immigration status.

46

173.   Following the approval of the I-140 petition on June 2, 2015, the petition was forwarded to NVC. On October 27, 2015, NVC created a case number for the case: YRV2015800001. The case then became documentarily qualified in May of 2016.

174.   Plaintiff Maryam Dehdashti is an Iranian national, the spouse of Plaintiff Moosa Heidari, and a derivative applicant on their application.

175.   Plaintiff Moosa Heidari's daughter J.H. is also a derivative applicant on their application.

176.   In 2016, Plaintiff Moosa Heidari attended her first immigrant visa interview on this application at U.S. Embassy Yerevan, Armenia on June 28, 2016, and was issued a non-final 221(g) decision. On July 27, 2023, Plaintiff Moosa Heidari attended their second  immigrant visa interview. Following the second interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on July 30, 2023.

177.   Plaintiff Moosa Heidari has remained in Administrative processing for over ten months.

Self-Petitioner Hamed Saffari

178.   Plaintiff Hamed Saffari is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date September 13,

2021. Plaintiff Hamed Saffari is a Professor of Structural Engineering at Shahid Bahonar University of Kerman. He holds a Ph.D. in Civil Engineering from Iran University of Science & Technology. With extensive experience in academia and industry, Plaintiff Hamed Saffari has held roles at Sazehpardazi and Moshanir Power Consulting Engineers. Plaintiff Hamed Saffari has received awards such as Researcher Engineer of the Year and the Distinguished Teaching Award. His research focuses on earthquake engineering, and structural strengthening, with numerous publications in high-impact journals.

179.    Following the approval of the I-140 petition on September 2022, the petition was forwarded to NVC. On November 18, 2022, NVC created a case number for the case: YRV2023513006. The case then became documentarily qualified in November of 2022.

180.    Plaintiff Soodeh Maghsoodi is an Iranian national, the spouse of Plaintiff Hamed Saffari, and a derivative applicant on their application.

181.    Plaintiff Hamed Saffari's son S.S. and daughter A.S. are also derivative applicants on their application.

182.    On Thursday, April 27, 2023, Hamed Saffari attended an immigrant visa interview at U.S. Embassy Yerevan, Armenia. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on May 25, 2023.

48

183.    Plaintiff Hamed Saffari has remained in Administrative processing for over thirteen months.

Self-Petitioner MohammadErfan Kazemi

184.    Plaintiff MohammadErfan Kazemi is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date April 28, 2022. Plaintiff MohammadErfan Kazemi is a Postdoctoral Research Associate at Imperial College London. He holds a Ph.D. in Mechanical Engineering from the Hong Kong University of Science and Technology and an MSc in Aerospace Engineering from Sharif University of Technology. Plaintiff MohammadErfan Kazemi's research focuses on composite structures, bio-inspired materials, and offshore wind turbine blades. Plaintiff MohammadErfan Kazemi has led significant projects with Rolls-Royce plc and the Aerospace Technology Institute, developing and patenting innovative composite solutions for aircraft engines. Plaintiff MohammadErfan Kazemi's work has earned him patents and recognition at international conferences, establishing him as a leading researcher in his field.

185.    Following the approval of the I-140 petition on September 26, 2022, the petition was forwarded to NVC. On December 6, 2022, NVC created a case number for the case: LND2022835010. The case then became documentarily qualified in March of 2023.

186.   On Tuesday, September 5, 2023, MohammadErfan Kazemi attended an immigrant visa interview at U.S. Embassy London, UK. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on September 13, 2023.

187.   Plaintiff MohammadErfan Kazemi has remained in Administrative processing for over eight months.

Self-Petitioner Mohammadreza Shokouhimehr

188.   Plaintiff Mohammadreza Shokouhimehr is an Iranian and Korean national who filed a Form I-140 self-petition in the EB1 visa category with the priority date January 26, 2021.

189.   Plaintiff Mohammadreza Shokouhimehr is a highly accomplished researcher with extensive experience in materials science and engineering. He is a Research Associate Professor at Hanyang University, with previous positions at Seoul National University. Plaintiff Mohammadreza Shokouhimehr has published numerous papers in high-impact journals, holds multiple patents, and has been recognized as a top scientist in materials science by Stanford University. He earned his Ph.D. in Chemical and Biological Engineering from Seoul National University and has an M.S. in Chemistry from Kent State University and another in Chemical and Biological Engineering from Seoul National University.

190.    Following the approval of the I-140 petition on August 6, 2021, the petition was forwarded to NVC. On August 30, 2021, NVC created a case number for the case: SEO2021742002. The case then became documentarily qualified on October 21, 2021.

191.    Plaintiff Aejung Kim is an Iranian and Korean national, the spouse of Plaintiff Mohammadreza Shokouhimehr, and a derivative applicant on their application.

192.    On Monday, November 14, 2022, Mohammadreza Shokouhimehr attended an immigrant visa interview at U.S. Embassy Seoul, South Korea. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on November 14, 2022.

193.    Plaintiff Mohammadreza Shokouhimehr has remained in Administrative processing for over eighteen months.

Self-Petitioner Javad Esmaeili Nooshabadi

194.    Plaintiff Javad Esmaeili Nooshabadi is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date March 15, 2022.

51

195.   Plaintiff Javad Esmaeili Nooshabadi is an Assistant Lecturer at Maynooth University in Ireland, where he is also pursuing a Ph.D. in Management. He holds an MBA from Yalova University, Turkey, and a B.Sc. in Computer Engineering from Azad University, Iran. Plaintiff Javad Esmaeili Nooshabadi research focuses on the impact of CEOs' dark triad personalities on firm internationalization. Plaintiff Javad Esmaeili Nooshabadi has received several awards, including the Best Reviewer Award from the Academy of Management and the Academy of International Business Doctoral Travel Stipend Award. He has published extensively and presented at numerous international conferences. Plaintiff Javad Esmaeili Nooshabadi is proficient in SPSS and AMOS and has served as a reviewer for various academic journals and conferences. His academic contributions and research expertise make him a valuable asset in the field of management and international business.

196.   Following the approval of the I-140 petition on October 2022, the petition was forwarded to NVC. On December 28, 2022, NVC created a case number for the case: DBL2022856003. The case then became documentarily qualified in March of 2023.

197.   Plaintiff Roya Karamiemad is an Iranian national, the spouse of Plaintiff Javad Esmaeili Nooshabadi, and a derivative applicant on their application.

52

198.    On Thursday, September 21, 2023, Javad Esmaeili Nooshabadi attended an immigrant visa interview at U.S. Embassy Dublin, Ireland. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on October 16, 2023.

199.    Plaintiff Javad Esmaeili Nooshabadi has remained in Administrative processing for over eight months.

Self-Petitioner Mohammadtaghi Vakili

200.    Plaintiff Mohammadtaghi Vakili is an Iranian national who filed a Form I-140 self-petition in the EB1 visa category with the priority date January 12, 2023. Plaintiff Mohammadtaghi Vakili is a Senior Researcher at ORLEN UniCRE, specializing in environmental engineering and wastewater treatment. He holds a Ph.D. and M.Sc. from Universiti Sains Malaysia and a B.Sc. from Islamic Azad University. With over five years of experience, Plaintiff Mohammadtaghi Vakili has a strong publication record and has managed significant research projects. Plaintiff Mohammadtaghi Vakili work focuses on refinery corrosion, waste material modification, and pollutant adsorbents. Plaintiff Mohammadtaghi Vakili is listed among the top 2% of scientists worldwide by Stanford University and Elsevier, earning multiple awards and recognitions in his field.

201.    Following the approval of the I-140 petition on January 23, 2023, the petition was forwarded to NVC. On March 3, 2023, NVC created a case number for the case: PRG2023660002. The case then became documentarily qualified in July of 2023.

202.    On Friday, October 13, 2023, Mohammadtaghi Vakili attended an immigrant visa interview at U.S. Embassy Prague, Czech Republic. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on October 18, 2023.

203.    Plaintiff Mohammadtaghi Vakili has remained in Administrative processing for over seven months.

Self-Petitioner Jalal Rouhi

204.    Plaintiff Jalal Rouhi is an Iranian national who filed a Form I-140 self-petition in the EB1-A visa category with the priority date March 08, 2022. Plaintiff Jalal Rouhi is an Adjunct Professor and Researcher in Nanophysics at the University of Tabriz. He holds a Ph.D. in Nanophysics from Universiti Sains Malaysia and an MSc in Applied Physics from the University of Mazandaran and the University of Tabriz. Plaintiff Jalal Rouhi specializes in nanodevice fabrication and has published over 64 research articles. His work has been cited more than 5914 times, earning him multiple awards, including the Sanggar Sanjung Award.

Plaintiff Jalal Rouhi has extensive research experience at Tabriz University, Shahid Beheshti University, and Universiti Teknologi MARA, and serves as a reviewer for prestigious journals and conferences.

205.    Following the approval of the I-140 petition on March 15, 2022, the petition was forwarded to NVC. On April 28, 2022, NVC created a case number for the case: YRV2022618002. The case then became documentarily qualified in July of 2022.

206.    Plaintiff Sara Vakili is an Iranian national, the spouse of Plaintiff Jalal Rouhi, and a derivative applicant on their application.

207.    Plaintiff Jalal Rouhi's children D.R. and D.R. are also derivative applicants on their application.

208.    On Monday, March 27, 2023, Jalal Rouhi attended an immigrant visa interview at U.S. Embassy Yerevan, Armenia. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on April 06, 2023.

209.    Plaintiff Jalal Rouhi has remained in Administrative processing for over thirteen months.


Self-Petitioner Roozbeh Sanaei

210.    Plaintiff Roozbeh Sanaei is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date March 11, 2022. Plaintiff Roozbeh Sanaei is a Senior Engineer specializing in Algorithm and Software development at Continental, Singapore. Plaintiff Roozbeh Sanaei holds a Ph.D. in Engineering Product Development from Singapore University of Technology and Design and a Master of Engineering from the National University of Singapore, and a Bachelor's Degree from Iran University of Science and Technology. Plaintiff Roozbeh Sanaei has extensive experience in machine learning for automotive technologies, focusing on explainability and trustworthiness. He has also worked as a Computer Vision Engineer at Rapsodo, developing image/video processing and mathematical models to capture golf swing dynamics for sports analytics products.. His research includes developing algorithms for complex product modularization and computational modeling of electromagnetic waves. Plaintiff Roozbeh Sanaei has published numerous research articles and has received several awards, including the Award of Excellence from Continental and the President's Graduate Fellowship from Singapore University of Technology and Design. His technical skills and innovative contributions make him a valuable asset in engineering and artificial intelligence.

211.    Following the approval of the I-140 petition on October 14, 2022, the petition was forwarded to NVC. On December 20, 2022, NVC created a case

number for the case: SGP2022854002. The case then became documentarily qualified in February of 2023.

212.    On August 2, 2023, Plaintiff Roozbeh Sanaei attended an immigrant visa interview at U.S. Embassy Singapore, Singapore. Following their interview, the consular officer issued a non-final 221(g) decision.

213.    Plaintiff Roozbeh Sanaei has remained in Administrative processing for over ten months.

Self-Petitioner Soheil Mohtaram

214.    Plaintiff Soheil Mohtaram is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date December 30, 2021. Plaintiff Soheil Mohtaram is a Postdoctoral Research Associate at the University of Shanghai for Science and Technology. He holds a Ph.D. in Engineering Mechanics from Hohai University and an MSc in Mechanical Engineering from Islamic Azad University. Plaintiff Soheil Mohtaram focuses on clean energy conversion systems, working on cycle innovation and system optimization. He has collaborated with institutions like Tsinghua University and Texas Tech University. His research includes developing multi-mixture thermal energy systems and optimizing centrifugal compressors. Plaintiff Soheil Mohtaram has published extensively in top journals and received awards such as Best Oral

Presentation at the International Conference on New Energy and Future Energy Systems. Plaintiff Soheil Mohtaram serves on the editorial boards of various scientific journals and has extensive experience in reviewing for international journals.

215.   Following the approval of the I-140 petition on April 18, 2022, the petition was forwarded to NVC. On August 16, 2022, NVC created a case number for the case: GUZ2022728016. The case then became documentarily qualified in December of 2022.

216.   On Thursday, March 23, 2023, Soheil Mohtaram attended an immigrant visa interview at U.S. Embassy Guangzhou, China. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided via email with their CV two day after the interview.

217.   Plaintiff Soheil Mohtaram has remained in Administrative processing for over thirteen months.

Self-Petitioner Hossein Bakhshi Khaniki

218.   Plaintiff Hossein Bakhshi Khaniki is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date November 22, 2021.

58

219.    Plaintiff Hossein Bakhshi Khaniki is a Mechanical Engineer with a Ph.D. from the University of Adelaide, where he was awarded the Dean's Commendation for Doctoral Thesis Excellence. He has extensive experience in academia and industry, including roles as a Mechanical Engineer at Orana Engineering and a lecturer at Payame Noor University. Plaintiff Hossein Bakhshi Khaniki research focuses on structures analysis, vibrations, continuum mechanics, nonlinear dynamics, and computational mechanics. Plaintiff Hossein Bakhshi Khaniki has published 43 scientific journal papers and 2 conference papers, with a total of 1334 citations, an h-index of 24, and an i10-index of 36. Plaintiff Hossein Bakhshi Khaniki is a recognized reviewer for several prestigious journals and serves on the editorial boards of multiple scientific publications. His contributions to mechanical engineering have earned him numerous accolades, highlighting his expertise and dedication to the field.

220.    Following the approval of the I-140 petition on November 22, 2021, the petition was forwarded to NVC. On October 27, 2022, NVC created a case number for the case: SYD2022799001. The case then became documentarily qualified in December of 2022.

221.    On Tuesday, July 18, 2023, Hossein Bakhshi Khaniki attended an immigrant visa interview at U.S. Embassy Sydney, Australia. Following their

interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on July 19, 2023.

222.    Plaintiff Hossein Bakhshi Khaniki has remained in Administrative processing for over ten months.

Self-Petitioner Hamed Khezrzadeh

223.    Plaintiff Hamed Khezrzadeh is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date October 01, 2021.

224.    Plaintiff Hamed Khezrzadeh is an Assistant Professor of Structural Engineering at Tarbiat Modares University, Tehran, Iran. He holds a Ph.D. in Structural Engineering from Sharif University of Technology, where he also earned his B.Sc. and M.Sc. degrees. Hamed has supervised numerous MSc and Ph.D. students and published 19 journal papers and 6 conference papers. Plaintiff Hamed Khezrzadeh's research interests include innovative materials in passive energy damping devices, mechanical metamaterials, and fracture mechanics. Hamed is a registered Professional Engineer and has extensive experience in structural design, including significant projects like the Westa Hotel and Sasan Tower in Tehran. Plaintiff Hamed Khezrzadeh has received a Research

Assistantship offer from the University of New Hampshire's Department of Civil and Environmental Engineering.

225.   Following the approval of the I-140 petition on March 21, 2022, the petition was forwarded to NVC. NVC created a case number for the case: YRV2022630011. The case then became documentarily qualified in August of 2022.

226.   Plaintiff Roza Asadi is an Iranian national, the wife of Plaintiff Hamed Khezrzadeh, and a derivative applicant on their application.

227.   Plaintiff Hamed Khezrzadeh's daughter T.K. is also a derivative applicant on their application.

228.   On Thursday, March 30, 2023, Hamed Khezrzadeh attended an immigrant visa interview at U.S. Embassy Yerevan, Armenia. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on April 03, 2023.

229.   Plaintiff Hamed Khezrzadeh has remained in Administrative processing for over thirteen months.


Self-Petitioner Sara Aghakhani

230.    Plaintiff Sara Aghakhani is an Iranian and Canadian national and resident of Canada who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date September 18, 2020.

231.    Plaintiff Sara Aghakhani is a technical leader with extensive experience in developing machine learning algorithms. Plaintiff Sara Aghakhani holds a Ph.D. in Computer Science from the University of Calgary, an MSc from the University of Alberta, and a BSc from Tehran Azad University. Sara has led AI projects for customer churn prediction, segmentation, and sales forecasting at Shaw Communications, BDO, and Palantir Economic Solutions. Plaintiff Sara Aghakhani's academic research includes neuro-fuzzy forecasting, protein crystallization prediction, and financial factor selection. She has published several papers and served as a technical reviewer for multiple conferences and journals.

232.    Following the approval of the I-140 petition on July 24, 2021, the petition was forwarded to NVC. On August 17, 2021, NVC created a case number for the case: MTL2021729015. The case then became documentarily qualified in September of 2021.

233.    Plaintiff Amir Hossini is an Iranian and Canadian national and resident of Canada, the spouse of Plaintiff Sara Aghakhani, and a derivative applicant on their application. He has a job offer to relocate to Hanwha Qcells Technologies (formerly Qcells GELI) office in their San Francisco headquarters.

62

234.    Plaintiff Sara Aghakhani's son S.H. is also a derivative applicant on their application.

235.    On Tuesday, July 25, 2023, Sara Aghakhani attended an immigrant visa interview at U.S. Embassy Montreal, Canada. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on 7/29/2023 (myself), 7/30/2023 (my spouse).

236.    Plaintiff Sara Aghakhani has remained in Administrative processing for over ten months.

Self-Petitioner Reza Movahedinia

237.    Plaintiff Reza Movahedinia is an Iranian and Canadian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date August 15, 2019. Plaintiff Reza Movahedinia is an experienced hardware engineer specializing in semiconductor, communication, and networking technologies. He holds a Ph.D. in Electrical Engineering from Concordia University, where he focused on designing low-cost beam-reconfigurable antennas. Plaintiff Reza Movahedinia has published over 10 papers and holds multiple patents. His notable achievements include designing a GNSS antenna with extended bandwidth and low axial ratio, and developing an antijamming fixed

63

radiation pattern system. He has received several awards, such as the International Tuition Fee Remission Award and the Ph.D. Accelerator Award from Concordia University. Plaintiff Reza Movahedinia technical expertise and innovation have established him as a leader in hardware engineering. He has significantly contributed to the advancement of antenna design and signal integrity in high-performance electronic systems.

238.    Following the approval of the I-140 petition on January 12, 2021, the petition was forwarded to NVC. On February 3, 2021, NVC created a case number for the case: MTL2021527018. The case then became documentarily qualified in November of 2021.

239.    Plaintiff Maryam Bahrani is an Iranian and Canadian national, the spouse of Plaintiff Reza movahedinia, and a derivative applicant on their application.

240.    Plaintiff Reza movahedinia's daughter E.M. is also a derivative applicant on their application.

241.    On Monday, July 24, 2023, Reza movahedinia attended an immigrant visa interview at U.S. Embassy Montreal, Canada. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided in August of 2023.

242.    Plaintiff Reza movahedinia has remained in Administrative processing for over nine months.

Self-Petitioner Reza Barekatain

243.    Plaintiff Reza Barekatain is an Iranian and Australian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date November 03, 2021. Plaintiff Reza Barekatain is the Leader of the Pigs and Poultry Science Subprogram at SARDI and an Affiliate Senior Lecturer at the University of Adelaide and Flinders University. Plaintiff Reza Barekatain holds a Ph.D. in Poultry Science from the University of New England and degrees in Agricultural Engineering from Iranian universities. Plaintiff Reza Barekatain specializes in poultry nutrition and digestive physiology, leading research projects on gut health, nutrient utilization, and growth performance. Plaintiff Reza Barekatain has published extensively, presented at international conferences, and received awards such as the SARDI Achievement Award and publication awards from the University of Adelaide. Plaintiff Reza Barekatain's contributions to poultry science and animal nutrition have established him as a leading researcher in his field.

244.    Following the approval of the I-140 petition on April 22, 2022, the petition was forwarded to NVC. On October 7, 2022, NVC created a case number

65

for the case: SYD2022779003. The case then became documentarily qualified in January of 2023.

245.    Plaintiff Nasim Chitsaz is an Iranian national, the spouse of Plaintiff Reza Barekatain, and a derivative applicant on their application.

246.    Plaintiff Reza Barekatain's child E.R.B. is also a derivative applicant on their application.

247.    On Tuesday, September 19, 2023, Reza Barekatain attended an immigrant visa interview at U.S. Embassy Sydney, Australia.

248.    Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on September 21, 2023.

249.    Plaintiff Reza Barekatain has remained in Administrative processing for over eight months.

Self-Petitioner Seyed Mojtaba Mirfendereski

250.    Plaintiff Seyed Mojtaba Mirfendereski is an Iranian national who filed a Form I-140 self-petition in the EB1 visa category with the priority date April 02, 2021. Plaintiff Seyed Mojtaba Mirfendereski is an Assistant Professor at Shahid Beheshti University, specializing in membrane technology and chemical engineering. He holds a Ph.D. in Chemical Engineering from Iran University of

Science and Technology. Plaintiff Seyed Mojtaba Mirfendereski's extensive experience includes postdoctoral research at Arizona State University and roles as a researcher at TEMA Energy srl in Italy. Plaintiff Seyed Mojtaba Mirfendereski's research focuses on membrane synthesis and applications for gas separation, water treatment, and carbon capture. He has published numerous peer-reviewed journal articles and holds a US patent for hydrophobic MFI zeolite hollow fiber membranes. Plaintiff Seyed Mojtaba Mirfendereski's work has earned him several awards, including the Best Ph.D. Thesis Award and recognition as a top graduate student. Plaintiff Seyed Mojtaba Mirfendereski is also an accomplished educator, having taught various mechanical engineering courses and supervised numerous graduate students. His contributions to the field of chemical engineering are well-regarded, and he is an active reviewer for multiple scientific journals.

251.    Following the approval of the I-140 petition on April 12, 2021, the petition was forwarded to NVC. On May 11, 2021, NVC created a case number for the case: ANK2021630018. The case then became documentarily qualified in June of 2021.

252.    Plaintiff Mrs.Tayebeh Mazaheri is an Iranian national, the spouse of Plaintiff Seyed Mojtaba Mirfendereski, and a derivative applicant on their application.

253.    Plaintiff Seyed Mojtaba Mirfendereski's child S.V.M. is also a derivative applicant on their application.

254.    On Thursday, March 30, 2023, Seyed Mojtaba Mirfendereski attended an immigrant visa interview at U.S. Embassy Ankara, Turkey. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on two days after on April 02, 2023.

255.    Plaintiff Seyed Mojtaba Mirfendereski has remained in Administrative processing for over thirteen months.

Self-Petitioner Afshin Babazadeh

256.    Plaintiff Afshin Babazadeh is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date January 05, 2022. Plaintiff Afshin Babazadeh is a skilled researcher with a Ph.D. in Biomedical Sciences from Macquarie University, specializing in neurodegenerative diseases and nano-drug delivery systems. Plaintiff Afshin Babazadeh has held teaching positions at Macquarie University and conducted research at the Drug Applied Research Center and the Faculty of Nutrition at Tabriz University of Medical Sciences. Plaintiff Afshin Babazadeh has extensive experience in designing nano-drug formulations, clinical trial operations, cell-based and animal-based research,

and various laboratory techniques. Plaintiff Afshin Babazadeh has published numerous papers and book chapters, earning awards such as the Best Review Paper Award from Macquarie Medical School.

257.   Following the approval of the I-140 petition on December 2, 2022, the petition was forwarded to NVC. On January 31, 2023, NVC created a case number for the case: SYD2023531007. The case then became documentarily qualified in March of 2023.

258.   Plaintiff Fereshteh Mohammadi Vahed is an Iranian national, the wife of Plaintiff Afshin Babazadeh, and a derivative applicant on their application.

259.   On Wednesday, May 24, 2023, Afshin Babazadeh attended an immigrant visa interview at U.S. Embassy Sydney, Australia. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided the same day.

260.   Plaintiff Afshin Babazadeh has remained in Administrative processing for over eleven months.

Self-Petitioner Mohsen Mohaghegh

261.   Plaintiff Mohsen Mohaghegh is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date January 27, 2022. Plaintiff Mohsen Mohaghegh is an Assistant Professor of Economics at the

Indian Institute of Management Ahmedabad (IIMA). Plaintiff Mohsen Mohaghegh holds a Ph.D. in Economics from Ohio State University and MSc degrees from East Carolina University and the University of Tehran. Plaintiff Mohsen Mohaghegh specializes in inequality, income mobility, and economic growth, with numerous publications and conference presentations. Plaintiff Mohsen Mohaghegh has received awards such as the Burton Abrams Dissertation Award. Plaintiff Mohsen Mohaghegh teaches macroeconomics and econometrics and is involved in academic committees and journal reviews.

262.    Following the approval of the I-140 petition on September 28, 2022, the petition was forwarded to NVC. On December 5, 2022, NVC created a case number for the case: BMB2022836026. The case then became documentarily qualified in January of 2023.

263.    Plaintiff Maryam Jamshidisianaki is an Iranian national, the spouse of Plaintiff Mohsen Mohaghegh, and a derivative applicant on their application.

264.    On Thursday, July 27, 2023, Plaintiffs Mohsen Mohaghegh and Maryam Jamshidisianaki attended an immigrant visa interview at U.S. Consulate General, Mumbai. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses from both applicants, which were timely provided on July 29, 2023.

265.   Plaintiff Mohsen Mohaghegh has remained in Administrative processing for over ten months.

Self-Petitioner Esmaeil Sadeghi

266.   Plaintiff Esmaeil Sadeghi is an Iranian and Swedish national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date December 09, 2021. Plaintiff Esmaeil Sadeghi is an Assistant Professor in the Department of Mechanical and Mechatronics Engineering at the University of Waterloo, affiliated with the Multi-Scale Additive Manufacturing Lab (MSAM). He holds a Ph.D. in Mechanical Engineering from University West, Sweden, an M.Sc. from Tarbiat Modares University, and a B.Sc. from Amirkabir University of Technology, Iran. Plaintiff Esmaeil Sadeghi specializes in additive manufacturing, materials characterization, and surface engineering. Plaintiff Esmaeil Sadeghi co-founded OptiFab, developing advanced material technologies for metal 3D printing. He has held postdoctoral fellowships and served as a lecturer, directing a master's program in metal additive manufacturing. Plaintiff Esmaeil Sadeghi's extensive research includes quality control in 3D printing, corrosion resistance, and surface modification. Plaintiff Esmaeil Sadeghi has published numerous articles, holds several patents, and received awards for his work, including reviewer awards and travel grants.

267.    Following the approval of the I-140 petition on March 9, 2022, the petition was forwarded to NVC. On January 24, 2023, NVC created a case number for the case: STK2023558003. The case then became documentarily qualified in March of 2023.

268.    Plaintiff Paria Karimi is an Iranian national, the spouse of Plaintiff Esmaeil Sadeghi, and a derivative applicant on their application.

269.    Plaintiff Esmaeil Sadeghi's child V.S. is also a derivative applicant on their application.

270.    On Wednesday, May 24, 2023, Esmaeil Sadeghi attended an immigrant visa interview at U.S. Embassy Stockholm, Sweden. Following their interview, the consular officer issued a non-final 221(g) decision.

271.    Plaintiff Esmaeil Sadeghi has remained in Administrative processing for over twelve months.

Self-Petitioner Mehdi Rahmani

272.    Plaintiff Mehdi Rahmani is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date July 07, 2021.

273.    Plaintiff Mehdi Rahmani is an Associate Professor of Electrical Engineering at Imam-Khomeini International University (IKIU) in Qazvin, Iran. Plaintiff Mehdi Rahmani holds a Ph.D. in Electrical Engineering from Sharif

University of Technology, specializing in control systems. Plaintiff Mehdi Rahmani has received numerous awards, including outstanding researcher at IKIU and recognition for his contributions to reviewing papers. Plaintiff Mehdi Rahmani has also taught various courses in control systems and electronics at IKIU and Sharif University of Technology. Plaintiff Mehdi Rahmani's research interests include optimization, model predictive control, robust control, state estimation, and applications of control theory in power and communication systems. He has published extensively in high-impact journals and presented at international conferences.

274.   Following the approval of the I-140 petition on January 24, 2022, the petition was forwarded to NVC. On June 30, 2022, NVC created a case number for the case: YRV2022681003. The case then became documentarily qualified in August of 2022.

275.   On Monday, March 27, 2023, Mehdi Rahmani attended an immigrant visa interview at U.S. Embassy Yerevan, Armenia. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on March 28, 2023.

276.   Plaintiff Mehdi Rahmani has remained in Administrative processing for over fourteen months.

Self-Petitioner Yashar Toopchi

277.   Plaintiff Yashar Toopchi is an Iranian and Australian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date May 20, 2019. Plaintiff Yashar Toopchi is a Solution Architect and Researcher with over 15 years of experience in network science, data science, and complex network theories. He holds a Ph.D. in Electrical and Electronics Engineering from RMIT University and an MSc in Electrical Engineering from Mazandaran University. Plaintiff Yashar Toopchi has expertise in strategic network design, image processing, and emerging technologies. He is certified as an Amazon AWS Solution Architect Associate and Cisco Certified Internetwork Expert (CCIE). He has published extensively in international journals and conferences. Plaintiff Yashar Toopchi has led projects in synchronization of complex networks, network system design, and advanced monitoring systems, significantly contributing to the field of network science.

278.   Following the approval of the I-140 petition on May 25, 2020, the petition was forwarded to NVC. On June 2, 2020, NVC created a case number for the case: SYD2020654009. The case then became documentarily qualified in June of 2020.

279.   On Tuesday, October 24, 2023, Yashar Toopchi attended an immigrant visa interview at U.S. Embassy Sydney, Australia. Following their

interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on October 30, 2023.

280.   Plaintiff Yashar Toopchi has remained in Administrative processing for over six months.

Self-Petitioner Fatemeh Safarpour Dizboni

281.   Plaintiff Fatemeh Safarpour Dizboni is an Iranian national who filed a Form I-140 self-petition in the EB1 visa category with the priority date August 25, 2020. Plaintiff Fatemeh Safarpour is a distinguished Taekwondo coach with extensive experience coaching national and international teams. Plaintiff Fatemeh Safarpour Dizboni holds certifications as well as international coaching credentials. Plaintiff Fatemeh Safarpour has served as the head coach for the Iranian national Taekwondo teams across various age groups from 2010 to 2023. She has led teams at multiple prestigious tournaments, including the Asian Taekwondo Junior Championships, World Taekwondo Junior Championships, and the Youth Olympic Games.

282.   Plaintiff Fatemeh Safarpour's achievements include winning the Best Coach award at the 2023 Asian Taekwondo Junior Championships and leading teams to numerous gold, silver, and bronze medals in international competitions.

Fatemeh is recognized for her exceptional leadership, motivational skills, and in-depth knowledge of Taekwondo training and coaching.

283.    Following the approval of the I-140 petition on April 13, 2021, the petition was forwarded to NVC. On May 1, 2021, NVC created a case number for the case: YRV2022853006. The case then became documentarily qualified in July of 2021.

284.    Plaintiff Ayou Amini is an Iranian national, the spouse of Plaintiff Fatemeh Safarpour Dizboni, and a derivative applicant on their application.

285.    Plaintiff Fatemeh Safarpour Dizboni's child A.M.A.. is also a derivative applicant on their application.

286.    On Thursday, March 30, 2023, Fatemeh Safarpour Dizboni attended an immigrant visa interview at U.S. Embassy Yerevan, Armenia. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on March 31, 2023.

287.    Plaintiff Fatemeh Safarpour Dizboni has remained in Administrative processing for over fourteen months.

Self-Petitioner Mehrnaz Mesdaghi

288.    Plaintiff Mehrnaz Mesdaghi is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date March 3,

76

2021. Plaintiff Mehrnaz Mesdaghi is an associate professor of Immunology at Shahid Beheshti University of Medical Sciences. She holds a Ph.D. in Immunology and an M.D. from Tehran University of Medical Sciences. Plaintiff Mehrnaz Mesdaghi has led the Allergy and Primary Immunodeficiency Lab at Massoud Medical Laboratory since 2019 and has extensive teaching experience in medical immunology. Plaintiff Mehrnaz Mesdaghi's administrative roles include Vice-President of the Iranian Society of Immunology and Allergy and Council Member of the International Union of Immunological Societies. Plaintiff Mehrnaz Mesdaghi research in immunology has been published widely, enhancing her reputation as a leading expert in her field.

289.    Following the approval of the I-140 petition on March 21, 2022, the petition was forwarded to NVC. On August 18, 2022, NVC created a case number for the case for an Ankara interview, which was later changed on September 16, 2022 for a case number for a Yerevan interview: YRV2022758013. The case then became documentarily qualified in October of 2022.

290.    Plaintiff Ahmad Ghasem Pour is an Iranian national, the spouse of Plaintiff Mehrnaz Mesdaghi, and a derivative applicant on their application.

291.    Plaintiff Mehrnaz Mesdaghi's child H.G. is also a derivative applicant on their application.

292.   On Thursday, October 19, 2023, Mehrnaz Mesdaghi attended an immigrant visa interview at U.S. Embassy Yerevan, Armenia. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided.

293.   Plaintiff Mehrnaz Mesdaghi has remained in Administrative processing for over seven months.

Self-Petitioner Javad Ghoddoosinejad

294.   Plaintiff Javad Ghoddoosinejad is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date December 14, 2021.

295.   Plaintiff Javad Ghoddoosinejad is an expert in healthcare research, focusing on cost analysis of health services, cost-effectiveness analysis, systematic reviews, and meta-analyses of healthcare interventions. He is proficient in teaching healthcare administration and health economics and has successful experience managing health research centers, auditing clinical governance, hospital accreditation, and administering a large hospital with over 900 employees. Plaintiff Javad Ghoddoosinejad has a passion for coordinating high-quality research projects, particularly international collaborations.

296.    Following the approval of the I-140 petition on March 29, 2022, the petition was forwarded to NVC. On June 7, 2022, NVC created a case number for the case: YRV2022658002. The case then became documentarily qualified in August of 2022.

297.    Plaintiff Elham Baghban Baghestan is an Iranian national, the spouse of Plaintiff Javad Ghoddoosinejad, and a derivative applicant on their application.

298.    Plaintiff Javad Ghoddoosinejad's children P.G. and B.G. are also derivative applicants on their application.

299.    On Thursday, March 30, 2023, Javad Ghoddoosinejad attended an immigrant visa interview at U.S. Embassy Yerevan, Armenia. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on March 30, 2023.

300.    Plaintiff Javad Ghoddoosinejad has remained in Administrative processing for over thirteen months.

Self-Petitioner Atefeh Amerizadeh

301.    Plaintiff Atefeh Amerizadeh is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date December 08, 2021. Plaintiff Atefeh Amerizadeh holds an MSc in Biophysics from the University of Tehran and a Ph.D. in Molecular Medicine from Universiti Sains

Malaysia (USM). Her work has led to patents in the United States for both the antigen and the technology she utilized. Plaintiff Atefeh Amerizadeh has held post-doctoral positions at the Isfahan Cardiovascular Research Institute and Sharif University of Technology. At the Isfahan Cardiovascular Research Institute, she conducted clinical trials in cardiology, public health, and pharmacology, and performed systematic reviews and meta-analyses.

302.   Following the approval of the I-140 petition on June 22, 2022, the petition was forwarded to NVC. On July 25, 2022, NVC created a case number for the case: YRV2022699006. The case then became documentarily qualified in November of 2022.

303.   On Thursday, October 19, 2023, Atefeh Amerizadeh attended an immigrant visa interview at U.S. Embassy Yerevan, Armenia. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided.

304.   Plaintiff Atefeh Amerizadeh has remained in Administrative processing for over seven months.


Self-Petitioner Alireza Amani

305.   Plaintiff Alireza Amani is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date November 18, 2021.

306.   Plaintiff Alireza Amani is an Assistant Professor of Sports Science (Exercise Physiology) and has served at Shomal University, Iran, from 2003 to October 2022. He holds a Ph.D. in Sports Science from University Putra Malaysia, an MSc from Razi University, and a BSc in Physical Education from Bahonar University. Plaintiff Alireza Amani has extensive experience in academic leadership, having served as the Dean of the Sports Science Faculty at Shomal University and as a member of the university's Board of Trustees. He is the founder and Editor-in-Chief of the Asian Exercise and Sports Science Journal and has been involved in various editorial boards and peer-reviewing activities. Plaintiff Alireza Amani is also a senior member of the International Science and Football Association and has founded several distance learning platforms related to sports science. Plaintiff Alireza Amani's contributions to the field include research, academic leadership, and the development of educational resources in sports science.

307.   Following the approval of the I-140 petition on May 9, 2022, the petition was forwarded to NVC. On August 15, 2022, NVC created a case number

81

for the case: YRV2022793001. The case then became documentarily qualified in November of 2022.

308.  Plaintiff Maryam Mazandarani is an Iranian national, the spouse of Plaintiff Alireza Amani, and a derivative applicant on their application.

309.  Plaintiff Alireza Amani's children A.A. and A.A. are also derivative applicants on their application.

310.  On Monday, March 27, 2023, Alireza Amani attended an immigrant visa interview at U.S. Embassy Yerevan, Armenia. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on March 27, 2023.

311.  Plaintiff Alireza Amani has remained in Administrative processing for over thirteen months.

Self-Petitioner Eunhye Lee

312.  Plaintiff Eunhye Lee is a Korean national who filed a Form I-140 self-petition in the EB3 visa category with the priority date February 17, 2022. Plaintiff Eunhye Lee is a dedicated and experienced Intensive Care Unit (ICU) nurse with over five years of professional care experience. She holds a B.S. in Nursing from Yonsei University, South Korea, and is a licensed Registered Nurse (RN) in Florida, New York, and California.

313.    Plaintiff Eunhye Lee currently works at Broward Health Medical Center in the Cardiac Vascular Intensive Care Unit/Cardiac Care Unit (CVICU/CCU) in Florida.

314.    Plaintiff Amirhossein Goudarzi is an Iranian and Korean national, the spouse of Plaintiff Eunhye Lee, and a derivative applicant on their application.

315.    Plaintiff Amirhossein Goudarzi is a digital finance consultant with over 8 years of experience in operations consulting, project development, and team management. He holds an MBA in Finance from Sungkyunkwan University and a B.Sc. in Electrical and Computer Engineering from Seoul National University. Plaintiff Amirhossein Goudarzi expertise includes digital finance, IT governance, project management, and data visualization. He holds certifications such as PMP, CFA Level I, and UiPath RPA Advanced Certificate. Amirhossein has received the Korean Government Scholarship and Daewoon Scholarship and is a member of the Project Management Institute.

316.    Following the approval of the I-140 petition on August 16, 2022, the petition was forwarded to NVC. On September 23, 2022, NVC created a case number for the case: SEO2022766005. The case then became documentarily qualified in February of 2023.

317.    On Monday, April 17, 2023, Eunhye Lee and Plaintiff Amirhossein Goudarzi attended an immigrant visa interview at U.S. Embassy Seoul, South

83

Korea. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on April 19, 2023.

318.   Plaintiff Eunhye Lee received clearance and her visa was issued. However, Plaintiff Amirhossein Goudarzi has remained in Administrative processing for over thirteen months.

Self-Petitioner Sayyed Mahdi Ziaei

319.   Plaintiff Sayyed Mahdi Ziaei is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date February 14, 2022. Plaintiff Sayyed Mahdi Ziaei, Ph.D., is an Associate Professor of Financial Economics at Xiamen University of Malaysia. He holds a Ph.D. in Economics from Universiti Putra Malaysia and has published over 40 papers in prestigious journals. His research focuses on monetary and fiscal studies, financial economics, and renewable energy and environmental economics. Ranked among the top 25% of economists in Malaysia, Plaintiff Sayyed Mahdi Ziaei recent work includes studying obstacles to renewable energy investment and the environmental impacts of industries like palm oil. Plaintiff Sayyed Mahdi Ziaei aims to continue high-impact research on post-COVID-19 policies, financial markets, and sustainable energy investments.

320.    Following the approval of the I-140 petition on October 5, 2022, the petition was forwarded to NVC. On December 1, 2022, NVC created a case number for the case: KLL2022835001. The case then became documentarily qualified in December of 2022.

321.    On Tuesday, March 21, 2023, Sayyed Mahdi Ziaei attended an immigrant visa interview at U.S. Embassy Kuala Lumpur, Malaysia. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on March 30, 2023.

322.    Plaintiff Sayyed Mahdi Ziaei has remained in Administrative processing for over fourteen months.

Self-Petitioner Maryam Sadat Sadrosadat

323.    Plaintiff Maryam Sadat Sadrosadat is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date January 31. 2022.

324.    Plaintiff Maryam Sadat Sadrosadat is a seasoned researcher with extensive experience in molecular biology and immunology. She holds an MSc in Plant Physiology from Al-Zahra University and a BSc in Cell & Molecular Biology from Islamic Azad University. Currently, she is a PhD candidate in practical cellular& molecular Biology, University of Medical Sciences, Kashan,

Iran.

. Plaintiff Maryam Sadat Sadrosadat has served as a lab supervisor at the Molecular Immunology Research Center, Tehran University of Medical Sciences (TUMS), and has worked in various research and clinical laboratories. Plaintiff Maryam Sadat Sadrosadat has a strong publication record and has participated in numerous international conferences and workshops.

325.    Following the approval of the I-140 petition on March 26, 2022, the petition was forwarded to NVC. On August 12, 2022, NVC created a case number for the case: YRV2022717002. The case then became documentarily qualified in October of 2022.

326.    On October 16, 2023, Maryam Sadat Sadrosadat attended an immigrant visa interview at U.S. Embassy Yerevan, Armenia. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on October 20, 2023.

327.    Plaintiff Maryam Sadat Sadrosadat has remained in Administrative processing for over seven months.

Self-Petitioner Roozbeh Sanaei

328.    Plaintiff Roozbeh Sanaei is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date 11 March 2022 March 11, 2022. Plaintiff Roozbeh Sanaei is a Senior Engineer at Continental in

Singapore. He holds a Ph.D. in Engineering Product Development from the Singapore University of Technology and Design,  and a Master of Engineering from the National University of Singapore., and a BSc from Iran University of Science and Technology. Plaintiff Roozbeh Sanaei specializes in machine learning for automotive technologies. Plaintiff Roozbeh Sanaei has received awards such as the Award of Excellence from Continental and the President's Graduate Fellowship from SUTD.  Plaintiff Roozbeh Sanaei's expertise in engineering and artificial Intelligence makes him a valuable asset

329.   Following the approval of the I-140 petition on 14 Oct 2022, the petition was forwarded to NVC. On December 20, 2022, NVC created a case number for the case: SGP2022854002. The case then became documentarily qualified in February 08, 2023.

330.   On August 02, 2023, Roozbeh Sanaei attended an immigrant visa interview at U.S. Embassy Singapore. Following their interview, the consular officer issued a non-final 221(g) decision, and was verbally requested DS-5535 responses, which were timely provided in the interview.

331.   Plaintiff Roozbeh Sanaei has remained in Administrative processing for over tenmonths.

Self-Petitioner Mohammad Alizadeh

87

332.    Plaintiff Mohammad Alizadeh is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date October 12, 2021.

333.    Plaintiff Mohammad Alizadeh is an experienced engineer with a strong background in petroleum engineering and energy management. Plaintiff Mohammad Alizadeh has held significant positions at Middle East Petrogas and the Vehicle Fuel and Environment Institute in Tehran, Iran, where he has contributed to various research projects and managed large-scale teams. Plaintiff Mohammad Alizadeh has a Master's degree in Mechanical Engineering from the University of Tehran and a Bachelor's degree from Semnan University. Mohammad is currently employed at TurboTEC in Tehran, specializing in engineering projects related to energy systems.

334.    Following the approval of the I-140 petition on March 4, 2022, the petition was forwarded to NVC. In April of 2022, NVC created a case number for the case: ABD2022604002. The case then became documentarily qualified in August of 2022.

335.    Plaintiff Sahar Andarza is an Iranian national, the wife of Plaintiff Mohammad Alizadeh, and a derivative applicant on their application.

336.    On November 14, 2023, Mohammad Alizadeh attended an immigrant visa interview at U.S. Embassy Abu Dhabi, UAE. Following their interview, the

consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided on November 17, 2023.

337.    Plaintiff Mohammad Alizadeh has remained in Administrative processing for over six months.

Self-Petitioner Mohammad Mehdi Khajeh

338.    Plaintiff Mohammad Mehdi Khajeh is a Canadian and Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date July 03, 2020. Plaintiff Mohammad Mehdi Khajeh, CFA, Ph.D., P.Eng., is a Senior Reservoir Engineer based in Calgary, Canada. He holds a Ph.D. in Petroleum (Reservoir) Engineering from the University of Alberta and is currently pursuing an MS in Analytics from the Georgia Institute of Technology, expected to graduate in December 2024. Plaintiff Mohammad Mehdi Khajeh has extensive experience in reservoir engineering leadership, data analysis, and reservoir management.

339.    Following the approval of the I-140 petition on 07/01/2021, the petition was forwarded to NVC. On July 21, 2021, NVC created a case number for the case: MTL2021702014. The case then became documentarily qualified in August of 2021.

89

340.    On July 28, 2023, Plaintiff Mohammad Mehdi Khajeh attended an immigrant visa interview at U.S. Embassy Montreal, Canada. Following their interview, the consular officer issued a non-final 221(g) decision, and requested DS-5535 responses, which were timely provided. Plaintiff Mohammad Mehdi Khajeh has remained in Administrative processing for over ten months.

341.    Plaintiff Mohammad Mehdi Khajeh is separated from his wife, who is a U.S. Lawful Permanent Resident who lives in Maryland. Their prolonged separation has not been emotionally and financially difficult for the couple.

Self-Petitioner Morteza Kazemi

342.    Plaintiff Morteza Kazemi is an Iranian national who filed a Form I-140 self-petition in the EB2-NIW visa category with the priority date April 2022. Plaintiff Morteza Kazemi is an Economist and Economic Policy Researcher with a Ph.D. from University Putra Malaysia. He is the Chief Economist at Fardaye Eghtesad and a Senior Economic Analyst at Golriz Industrial Group. He has also been a visiting lecturer at Allameh Tabataba'i University. Plaintiff Morteza Kazemi's research focuses on foreign direct investment and economic freedom, with multiple publications in prestigious journals. Plaintiff Morteza Kazemi has extensive experience in economic research and consulting, and actively contributes to public understanding of economics through media appearances and public

events. Plaintiff Morteza Kazemi has a job offer in Irvine, California, and an intent to reside within this district.

343.    Following the approval of the I-140 petition on August 2022, the petition was forwarded to NVC. On December 2022, NVC created a case number for the case: MST2023629003. The case then became documentarily qualified in February of 2023.

344.    Plaintiff Sara Kazemi, an Iranian national, is the spouse of Plaintiff Morteza Kazemi, and a derivative applicant on their application.

345.    Plaintiff Morteza Kazemi 's daughter S.K. is also a derivative applicant on their application. She just graduated from high school with high marks and is awaiting to go to university. However, she does not know whether to plan to go to school in Iran or the U.S.

346.    On October 03, 2023, Morteza Kazemi attended an immigrant visa interview at U.S. Embassy Muscat, Oman. **Following their interview, the consular officer issued a non-final 221(g) decision, and orally told her that DS-5535 responses would be requested through email within 10 days, but that email never came**.

347.    Plaintiff Morteza Kazemi has remained in Administrative processing for over eight months.

1
2
3    DEFENDANTS

4        348.  Defendant ANTONY J. BLINKEN ("SECRETARY BLINKEN") is

5    the Secretary of the U.S. Department of State, the department under which the

6    U.S. embassies and consulates operate. The U.S. Department of State is

7    responsible for the issuance visas following evaluation of Form DS-5535. As

8    such, SECRETARY BLINKEN has supervisory responsibility over the U.S.

9    Embassy, and the issuance visas following evaluation of Form DS-5535.

10    SECRETARY BLINKEN is sued in his official capacity.

11        349.  Defendant CARSON WU is the Acting Director of the Office of

12    Screening, Analysis and Coordination ("SAC"), within the Bureau of Consular

13    Affairs' Visa Service Office. Defendant Wu is employed by the Department of

14    State and is sued in his official capacity.

15
16
17    STATUTORY AND REGULATORY FRAMEWORK

18    **I.**        Statutory and Regulatory Framework for Visa Adjudications

19        350.  In 1952, Congress enacted the INA and has amended it several times

20    since.

21        351.  The INA Amendments of 1965 (P.L. 89-236), enacted during a period

22    of broad social reform, eliminated the national origins quota system, which was

92

widely viewed as discriminatory. In 1990, Congress passed the Immigration Act of 1990. Pub. L. 101-649.

352.  The INA established a complex system of immigrant visa availability to classes of foreign nationals. Congress's chief goals in writing the INA were reunifying families, admitting skilled immigrants, protecting humanitarian interests, and promoting diversity. See, e.g., Solis- Espinoza v. Gonzales, 401 F.3d 1090, 1094 (9th Cir. 2005), (emphasis added).

353.  The INA authorizes consular officers to issue immigrant and nonimmigrant visas to foreign nationals who are eligible for those visas and who are admissible to the United States. See 8 U.S.C. § 1201; 22 C.F.R. § 42.71.

354.  When introduced, the State Department noted that the "Form DS–260 will be used to elicit information to determine the eligibility of aliens applying for immigrant visas." 74 FR 6686.

355.  When visa applicants first sign in to complete a DS-260, they are told on the website that "[t]he information solicited on this form will be used by consular officers to determine an applicant's eligibility for a visa."

356.  After completing the DS-260, filing supporting documentation and submitting fees, forms and supporting documentation to the NVC for review, the application is then sent to the Embassy having jurisdiction over the applicant's place of residence for interview.

357.  Generally, Department regulations designate the applicant's residence as the determining factor for the place of application under normal circumstances. 9 FAM 504.4-8(A).

358.  However, for "homeless" applicants, The Visa Office (VO) has designated specific posts to process those IV applications. 9 FAM 504.4-8(E)(2)(c).

359.  A homeless visa applicant is a national of a country in which the United States has no consular representation or the political or security situation is tenuous or uncertain enough that the limited consular staff is not authorized to process IV applications. 9 FAM 504.4-8(E)(1)(a). Iranian visa applicants are considered homeless and are typically assigned processing posts in Abu Dhabi, Ankara, and Yerevan. 9 FAM 504.4-8(E)(1)(b).

360.  The INA authorizes consular officers to issue immigrant and nonimmigrant visas to foreign nationals who are eligible for those visas and admissible to the United States. See 8 U.S.C. § 1201; 22 C.F.R. § 42.71. One of the primary methods by which foreign nationals seek to immigrate to the United States is employment-based immigration. Under the INA, employment-based visas may be issued to, inter alia, noncitizens who are "[p]riority workers," which includes "[noncitizens] with extraordinary ability," "[o]utstanding professors and researchers," and "[c]ertain multinational executives and managers." 8 U.S.C. §

1153(b)(1). Further, "[a] spouse or child acquired prior to the principal applicant's admission to the United States or adjustment of status to that of a Lawful Permanent Resident (LPR), or a child born of a marriage which existed before the principal applicant's admission to the United States as an immigrant or adjustment of status, who is accompanying or following to join the principal, should be accorded derivative status under INA 203(d)." 9 FAM 502.1-1(C)(2).[1]

361.  Section 212(a)(14) of the INA of 1952 included provisions that created the labor certification process that made importing foreign labor to the United States permissible. Pub.L. 82-414 (1952). The INA of 1965 required employers to file labor certification applications to permanently hire foreign employees. Pub.L. 89-236 (1965). Current U.S. immigration law on employment-based immigration, the Immigration Act of 1990, Pub.L. 101-649, as amended, still follows the framework set in those acts.

362.  About 34 years ago, via Section 101(a) of the Immigration Act of 1990, Congress authorized a worldwide level of employment-based immigrants of no less than 140,000 per fiscal year. 8 U.S.C. § 1151(d).

---

[1] The Foreign Affairs Manual ("FAM") and associated Handbooks ("FAHs") are internal sources for the Department of State's organization structures, policies, and procedures that govern the operations of the State Department. The FAM (generally policy) and the FAHs (generally procedures) together convey internal policies to Department of State staff and contractors so they can carry out their responsibilities.

363.  Upon I-140 approval and visa number(s) is available, if the petitioner and dependents, if any, is residing outside of the United States, the petition is then sent to the NVC for pre-processing, and the petitioner and dependents, if any, is able to begin the process of formally applying for an immigrant visa by submitting a DS-260.

364.  After submitting fees, completing the DS-260, and filing supporting documentation to the NVC for review, and the application is then sent to the Embassy or Consulate having jurisdiction over the noncitizen's place of residence for interview.

365.  After completing a medical examination, and paying applicable fees, the beneficiary is interviewed by a consular officer at the beneficiary's applicable U.S. Embassy or Consulate. During the interview, the applicant executes Form DS-260 by swearing to or affirming its contents and signing it before a consular officer. See 22 C.F.R. §42.67.

366.  The Department of State website instructs that at the end of the immigrant visa interview at the U.S. Embassy or Consulate, the consular officer will inform you whether your visa application is approved or denied. "If your visa

is denied, you will be informed by the consular officer why you are ineligible to receive a visa."[2]

367.  Once "a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and its implementing regulations, the consular officer must either issue or refuse the visa under INA 212(a) or INA 221(g) or other applicable law." 22 C.F.R. § 42.81(a) (emphasis added).

368.  As an Assistant US Attorney recently conceded before a court in this district, a decision under INA 221(g) is not a final decision. **Exhibit O, Excerpt of Transcript,** *EsmaeilZadeh v Blinken*, **Case No. 8:23-cv-02118-FWS-JDE, oral argument on April 4, 2023**.

369.  The FAM further explains that "[o]nce an application has been executed, you must either issue the visa or refuse it [...]. You cannot temporarily refuse, suspend, or hold the visa for future action. If you refuse the visa, you must inform the applicant of the provisions of law on which the refusal is based, and of any statutory provision under which administrative relief is available." 9 FAM § 504.9-2.

---

[2] *See "The Immigrant Visa Process,"* U.S. Department of State, *available at* https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-10-prepare-for-the-interview/step-12-after-the-interview.html (last accessed March 1, 2024)

97

370.  If the consular officer determines that a visa should be issued, the officer is required to arrange the appropriate visa documentation and sign and seal the immigrant visa, consistent with the requirements set forth in 22 C.F.R. § 42.73. "The immigrant visa shall then be issued by delivery to the immigrant or the immigrant's authorized agent or representative." Id. § 42.73(d).

371.  Conversely, if the consular officer determines that the visa should be refused, the officer must have a basis for refusal that is "specifically set out in the law or implementing regulations." 22 C.F.R. § 40.6. The officer also must comply with the refusal procedure outlined in 22 C.F.R. § 42.81(b), which mandates, in relevant part, that the "consular officer shall inform the applicant of the provision of law or implementing regulation on which the refusal is based and of any statutory provision of law or implementing regulation under which administrative relief is available."[3]

372.  There are no exceptions to the rule that once a visa application has been properly completed and executed before a consular officer, a visa must be either issued or refused. 9 FAM § 504.9-2. Accordingly, any noncitizen to whom a visa is not issued by the end of the working day on which the application is

_____

[3] State Department guidelines provide additional details regarding the manner in which visa applications should be refused, including a requirement that officers notify applicants, orally and in writing, who are refused a visa under INA Sections 212(a) or 221(g). See 9 FAM § 504.11-3(A)(1) (setting forth the required contents of 212(a) and 221(g) refusal letters).

made, or by the end of the next working day if it is normal post-procedure to issue visas to some or all applicants the following day, must be found ineligible under one or more provisions of INA 212(a), 212(e), or 221(g). Furthermore, INA 221(g) is not to be used when a provision of INA 212(a) is applicable. See 9 FAM 504.11-2(A)(a).

373.  If the consular officer determines that the visa should be refused, the officer "shall provide the applicant a timely written notice" that states the basis for the denial and lists the specific provisions of the law under which the visa was refused. INA § 212(b), 8 USC § 1182(b); 22 § CFR 41.121(b).

374.  If a consular officer determines that additional information is required from an applicant or that a SAO—known as "administrative processing"—is necessary to determine an applicant's eligibility, the officer must deny the application under INA § 221(g), pending future consideration once additional information is received or administrative processing is concluded. See 9 FAM § 504.11-3(B)(2)(a) ("If, after interviewing the applicant, you decide that an [advisory opinion] is necessary, first refuse the applicant under INA 221(g).") The FAM categorizes Section 221(g) refusals issued for the purpose of conducting administrative processing as "Quasi-Refusal Cases." 9 FAM § 504.11-3(B).

375.  The FAM categorizes Section 221(g) refusals issued for the purpose of conducting administrative processing as "Quasi-Refusal Cases." 9 FAM §

504.11-3(B). When a "quasi-refusal" is issued pursuant to INA § 221(g), the applicant must be notified both orally and through a refusal letter, which is required to "[e]xplicitly state the provision of the law under which the visa was refused." 9 FAM § 504.11-3(A)(1).

376.    If at a visa interview, allegedly derogatory information exists about an applicant or someone with a similar name to the applicant as determined by an algorithm, the consular officer receives a "red-light" response to one of the automated lookout systems. When a consular officer encounters a "red light," the consular officer will request the applicant complete and return responses to Form DS-5535. The consular officer would use the DS-5535 response to submit a SAO, which is handled by one of two divisions in SAC: the Counterterrorism Division or the Screening Division. As of April 7, 2024, the SAC offices combined have a mere 37 analysts addressing a backlog of 61,000 pending requests. Furthermore, SAO requests are not addressed or resolved on a first-in-first-out basis. **Exhibit E**, ***April 7, 2024 Declaration of Defendant Wu***.

**II.**    Defendants' Mandatory Duty to Adjudicate Plaintiffs' Visa Applications.

377.  Congress requires that "[e]very alien applying for an immigrant visa…shall furnish to the consular officer with his application a copy of a certification by the appropriate police authorities stating what their records show

100

concerning the immigrant; a certified copy of any existing prison record, military record, and record of his birth; and a certified copy of all other records or documents concerning him or his case which may be required by the consular officer. The copy of each document so furnished shall be permanently attached to the application and become a part thereof." 8 U.S.C. §1202(b) (emphasis added).

378.  Defendants have a mandatory duty to adjudicate Plaintiffs' visa applications within a reasonable time. Mohamed v. Pompeo, No. 1:19-cv-01345-LJO-SKO, 2019 U.S. Dist. LEXIS 167266 (E.D. Cal. Sep. 27, 2019) (issuing a mandatory injunction ordering the DOS to complete adjudications of immigrant visa applications); 5 U.S.C § 555(b) (requiring agencies to, "within a reasonable time … conclude the matter presented to it"); Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry ("Nine Iraqi Allies"), 168 F. Supp. 3d 268, 293 n. 22, 295–96 (D.D.C. 2016).

379.  The INA, its implementing regulations, and preexisting Department policies in the FAM all mandate timely adjudication of immigrant visa applications.

380.  Every foreign national executing an immigrant visa application "must be interviewed by a consular officer who shall determine on the basis of the applicant's representations and the visa application and other relevant documentation - (1) The proper immigrant classification, if any, of the visa

101

applicant, and (2) The applicant's eligibility to receive a visa." 22 C.F.R. § 42.62 (b).

381.  After completing a medical examination, and paying applicable fees, the beneficiary is interviewed by a consular officer at the beneficiary's applicable U.S. Embassy or consulate. During the interview, the applicant executes Form DS-260 by swearing to or affirming its contents and signing it before a consular officer. See 22 C.F.R. §42.67.

382.  Defendants have promulgated a regulation that says that a consular officer may require "the submission of additional information or question the alien on any relevant matter whenever the officer believes that the information provided in Form DS-230 or Form DS-260 is inadequate to determine the alien's eligibility to receive an immigrant visa." 22 C.F.R. §42.63 (emphasis added).

383.  The Department of State website instructs that at the end of one's immigrant visa interview at the U.S. Embassy or Consulate, the consular officer will inform the applicant whether their visa application is approved or denied. "If your visa is denied, you will be informed by the consular officer why you are ineligible to receive a visa."

384.  At the interview, a consular officer must issue a visa to an eligible applicant.

385.  Under 22 C.F.R. § 42.81(a), "when a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa [or] refuse the visa under INA 212(a) or 221(g) or other applicable law."

386.  If the applicant is admissible to the United States, the consular officer "shall" issue the selectee an immigrant visa and may only refuse a visa "upon a ground specifically set out in the law or implementing regulations." 22 C.F.R. § 40.6.

387.  The FAM reiterates that "[o]nce an application has been executed, you must either issue the visa or refuse it [...]. You cannot temporarily refuse, suspend, or hold the visa for future action. If you refuse the visa, you must inform the applicant of the provisions of law on which the refusal is based, and of any statutory provision under which administrative relief is available." 9 FAM § 504.9-2.

388.  If the consular officer determines that a visa should be issued, the officer is required to arrange the appropriate visa documentation and sign and seal the immigrant visa, consistent with the requirements set forth in 22 C.F.R. § 42.73. "The immigrant visa shall then be issued by delivery to the immigrant or the immigrant's authorized agent or representative." Id. § 42.73(d).

389.  Conversely, if the consular officer determines that the visa should be refused, the officer must have a basis for refusal that is "specifically set out in the law or implementing regulations." 22 C.F.R. § 40.6.

390.  The officer also must comply with the refusal procedure outlined in 22 C.F.R. § 42.81(b), which mandates, in relevant part, that the "consular officer shall inform the applicant of the provision of law or implementing regulation on which the refusal is based and of any statutory provision of law or implementing regulation under which administrative relief is available."

391.  According to 9 FAM 504.11-2(A), there are no exceptions to the rule that once a visa application has been properly completed and executed before a consular officer, a visa must be either issued or refused. Further, any foreign national to whom a visa is not issued by the end of the working day on which the application is made, or by the end of the next working day if it is normal post procedure to issue visas to some or all applicants the following day, must be found ineligible under one or more provisions of INA 212(a), 212(e), or 221(g). Furthermore, INA 221(g) is not to be used when a provision of INA 212(a) is applicable.

392.  The regulations and the FAM specify what are valid grounds for refusal.

393.  **Before** Plaintiffs were issued 221(g) notices, the FAM included a section headed: "Procedures in cases *deferred* for advisory opinions or other reasons:" (emphasis added). **Exhibit M, 9 FAM § 504.11-3(B)(2)(a), (before February 26, 2024)**. The body of that section read, in part, "This procedure is also to be followed in other situations where the applicant has formally applied, but a *final determination is deferred* for additional evidence, further clearance, name check, or some other similar reason."

394.  **After** Plaintiffs were issued 221(g) notices, Defendants changed the heading of that FAM section to read: "Procedures in *cases requiring an* AO." **Exhibit N, 9 FAM § 504.11-3(B)(2)(a), (after February 26, 2024)**. Further, the body of that section now completely omits the smoking gun admission that "a final determination is deferred for….further clearance." However, when scrubbing the webpage, Defendants, or those acting under them, forgot to remove one insightful sentence: "Under no circumstances should a decision on the question of eligibility be made before the Department's AO is received." That is relevant because the final decision on the question of Plaintiffs' eligibility is the decision Plaintiffs claim is unreasonably delayed in this action. The current version of 9 FAM § 504.11-3(B)(2)(a) can be found on the government website: https://fam.state.gov/FAM/09FAM/09FAM050411.html, (last accessed May 29, 2024).

395.  If the consular officer determines that the visa should be refused, the officer "shall provide the applicant a timely written notice" that states the basis for the denial and lists the specific provisions of the law under which the visa was refused. INA § 212(b), 8 USC § 1182(b); 22 § CFR 41.121(b).

396.  The FAM categorizes Section 221(g) refusals issued for the purpose of conducting administrative processing as "Quasi-Refusal Cases." 9 FAM § 504.11-3(B).

397.  When a "quasi-refusal" is issued pursuant to INA § 221(g), the applicant must be notified both orally and through a refusal letter, which is required to "[e]xplicitly state the provision of the law under which the visa was refused." 9 FAM § 504.11-3(A)(1) (emphasis added).

398.  In the event that a visa is refused, the application must be reconsidered if "within one year from the date of refusal [the applicant] adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based." 22 C.F.R. § 42.81(e) (emphasis added).

399.  In addition, 22 C.F.R. § 40.6 states that "[a] visa can be refused only upon a ground specifically set out in the law or implementing regulations."

400.  A consular officer cannot temporarily refuse, suspend, or hold the visa for future action.

401.  If the consular officer refuses the visa, he or she must inform the applicant of the provisions of law on which the refusal is based, and of any statutory provision under which administrative relief is available. 9 FAM 504.1-3(g); see 9 FAM § 504.11-2(A)(b) ("There is no such thing as an informal refusal or a pending case once a formal application has been made."); see also Alharbi v. Miller, 368 F. 3d 527, 558 (E.D.N.Y. 2019) (holding that consular officers have a "nondiscretionary binary" duty to issue or refuse visas).

402.  When read together, the INA, regulations, and DOS policy require applicants to submit their application including "documents concerning him or his case which may be required by the consular officer", and then for Defendants to process, interview, and issue visas to eligible visa applicants. 8 U.S.C. §1202(b).

## STATEMENT OF FACTS

**I.**  THE EVOLUTION OF THE DS-5535 SCHEME

403.  By creating a false narrative that immigrants are a threat to our country, former President Donald Trump enacted a series of "extreme vetting" policies to restrict entry into the United States

404.  On May 4, 2017, the State Department first introduced the DS-5535 when it published a notice of request for emergency Office of Management and Budget approval and public comment. The methodology explained that consular officers at visa-adjudicating posts would ask the additional DS-5535 questions

107

"*when the consular officer determines* that the circumstances of a visa applicant, a review of a visa application, or responses in a visa interview indicate a need for greater scrutiny. The additional questions may be sent electronically to the applicant or be presented orally or in writing at the time of the interview." **Exhibit A, 82 FR 20956**, (emphasis added). In 2021, the Department requested extension of the DS-5535 under Paperwork Reduction Act which was neither requested nor granted on an emergency basis. 86 Fed. Reg. 8475. The Office of Management and Budget approved that request on May 11, 2021.

405.  In early July 2019, the State Department instituted a new procedure to run an enhanced automated screening and vetting process for all immigrant and nonimmigrant visa applicants, including those subject to Presidential Proclamation 9645, Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists or Other Public-Safety Threats. 82 Fed. Reg. 45161, ("PP 9645"). The new enhanced review was automated, occurring prior to the interview, and providing consular officers with the information required to make most PP 9645 waiver determinations much more quickly than before. The new procedure made it possible for many visas to be issued within days of the interview, should the security check done prior to the interview not identify any concerns, and the consular officer determined that the applicant met all criteria for a PP 9645 waiver.

406.  The enhanced automated screening and vetting process is no longer being implemented.

407.  On October 3, 2019, the VO hosted an outreach event with AILA's State Department Liaison Committee and addressed a broad range of visa-related questions presented by the Committee. The State Department revealed that the it "does not track the number of applicants requested by a consular officer to provide responses to the questions contained in Form DS-5535 as our systems do not have this specific capability," and that "[w]hile every visa applicant is required to submit a Form DS-160 or DS260 visa application, a consular officer may request responses to the questions contained in Form DS-5535 only when the consular officer determines that information is needed to confirm identity or conduct more rigorous national security vetting of that particular applicant."

408.  On January 20, 2021, President Biden called the need for the DS-5535 into question; ordering "[a] description of the current screening and vetting procedures for those seeking immigrant and nonimmigrant entry to the United States. This should include information about any procedures put in place as a result of any of the Executive Order and Proclamations revoked in section 1 of this proclamation and should also include an evaluation of the usefulness of form DS–5535." Presidential Proclamation No. 10141, Ending Discriminatory Bans on Entry to the United States, January 20, 2021 ("PP10141").

409.  Plaintiffs' counsel has a FOIA request pending since September 5, 2023, #F-2023-12770, seeking the requested evaluation of DS-5535.

410.  There is a section of the FAM code, 9 FAM 304.5-9(D), that deals specifically with Iran. Further, 9 FAM 304.5-9(D)(2) and (D)(3), deal directly with State Department policies pertaining to Iranian IV and NIV applicants, respectively. Despite President Biden's direction under PP10141, as of October 12, 2021 (nine months later), Defendants had not updated either sub-section of the FAM code. In fact, neither sub-section had been updated since April 14, 2020. **Exhibit B, 9 FAM 304.5-9(D) as of October 12, 2021**.

411.  Modernly, the vetting process for the DS-5535 is the same vetting process for a waiver of PP 9645 under the Trump administration.

412.  Modernly, consular officers do not decide which visa applicants require the DS-5535, because State Department software makes that determination for them.

413.  Modernly, consular officers often ask the Form DS-5535 questions in the body of an email without referencing the form.

414.  Modernly, when consular officers receive responses to DS-5535 from immigrant visa applicants whose applications they have refused under 221(g), they transmit that information to Washington, DC via a SAO.

415.  After the DS-5535 responses are submitted to the SAC office in Washington, D.C., consular officers have no control over the adjudication of the visa applications. Further, consular officers cannot access or re-open a DS-260 while  an SAO is pending.

**II.**    DEFENDANTS RELIED ON A FACTOR WHICH CONGRESS HAS NOT INTENDED THEM TO CONSIDER.

416.    Defendants decided to use non-final §221(g) decisions as a tool to satisfy their duties under the law to provide final immigrant visa adjudications. However, satisfying their duties under the law to provide final immigrant visa adjudications was not a factor Congress intended that they consider in administering § 221(g) decisions. This problem is elaborated more in  Count Two, below.

417.    Further, Defendants have shown bad faith as they are actively updating their website to support their misinterpretation of law that § 221(g) refusals are final decisions. For example, as of Sept. 24, 2023, the State Department webpage called "Visa Denials," found at https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visa-denials.html, explained that a 221(g) refusal "means ... your case is pending further action..." Since all Visa Plaintiffs here have attended interviews, the State Department has edited that webpage to omit the phrase "your case is pending further action."

See: https://web.archive.org/web/20230924180743/https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visa-denials.html.

### III.    DEFENDANTS FAILED TO CONSIDER IMPORTANT ASPECT OF THE PROBLEM BEFORE IMPLEMENTING THE DS-5535 SCHEME.

418.  Before introducing the DS-5535 Scheme, the Defendants failed to consider three important aspects of the problem.

419.  First, Defendants failed to consider the unreasonable and unnecessary delays that would ensue by only requesting the information at the end of the process. These delays are pronounced for Iranian immigrants specifically as the three US Embassies where most interview, Abu Dhabi, Ankara, and Yerevan, also have backlogs that cause applicants not to be scheduled for interviews for several months up to two years after their cases are determined to be documentarily qualified by NVC. This is a period where the DS-5535 could be completed concurrently, but Defendants never considered that.

420.  Second, Defendants failed to consider the State Department's own institutional animus against and deeply irrational fixations on Iranian visa applicants and how the discretion inherent in the DS-5535 Scheme could be used as a pseudo-travel ban.

421.  Third, Defendants failed to consider how the DS-5535 Scheme could be used in bad faith by Defendants as a tool to evade judicial review of the timeliness of visa adjudications. Specifically, when defending against lawsuits brought challenging unreasonable delays in administrative processing, Defendants always try to hide behind a  regulation only requiring that a consular officer "issue the visa, refuse the visa under INA 212(a) or 221(g) or other applicable law or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa." See 22 C.F.R. § 42.81(a).

422.  Failing to consider these problems supports Plaintiffs' Count One below.

**IV.**     **IMMIGRANT VISA APPLICANTS CAN ONLY FURNISH DS-5535 RESPONSES AFTER THEY ARE REFUSED UNDER INA 221(g).**

423.  In 2021, Deputy Assistant Secretary for Visa Service in the Bureau of Consular Affairs Julie Stufft posted the following in the Federal Register: "Department of State consular officers at visa-adjudicating posts worldwide will ask the additional questions to resolve an applicant's identity or to vet for terrorism, national security-related, or other visa ineligibilities when the consular officer determines that the circumstances of a visa applicant, a review of a visa application, or responses in a visa interview indicate a need for greater scrutiny. The additional questions may be sent electronically to the applicant or be

presented orally or in writing at the time of the interview." 86 FR 8475, 8476, (emphasis added).

424.   While Defendant Stufft's post in the Federal Register suggests who gets a DS-5535 is determined by the consular officer, what happens in practice is a flag triggered by an algorithm or artificial intelligence pops up on their computer screen, leaving the consular officer no other choice but to issue a 221(g) notice and collect the DS-5535 responses. See **Exhibit K, April 7, 2024 Declaration of Carson Wu**. Since that flag does not show up until after the interview is in process or completed, the scenario where a consular officer would request, or accept, the DS-5535 responses in advance of the interview does not exist.

425.   A U.S. Embassy Ankara webpage makes clear that the DS-5535 can only be sent after interviews: "[c]ase[s] requiring administrative processing will receive additional instructions via email. Please fully and accurately complete DS-5535 form and send it to us after your interview" **Exhibit I, US Embassy Ankara - After the Interview**.

426.   U.S. Embassy Mumbai informs visa applicants to "Please only complete [Form DS-5535] if a visa officer has requested you to at the time of your visa interview." **Exhibit D, US Embassy Mumbai, DS-5535**.

427.  On its website, U.S Embassy Djibouti instructs visa applicants to complete the DS-5535 "only if instructed to do so by a consular officer in the letter you received at your interview or by email."

428.  When asked if Iranian applicants can submit their DS-5535 questionnaire before their interviews, U.S. Embassy Ankara responded: "We do not request or accept a DS-5535 prior to the interview for applicants." **Exhibit E, US Embassy Ankara answer to general question**.

**V.**      DEFENDANTS HAVE SET ARBITRARY EXPECTATIONS THAT ARE ALL OVER THE PLACE.

429.  Many U.S. Embassies have estimated wait times for administrative processing listed on their websites as between 60 to 90 days.

430.  U.S. Embassy in Iran's website says, "most administrative processing is resolved within 60 days of the visa interview." **Exhibit F, U.S. Virtual Embassy Iran AP Estimation**.

431.  Plaintiffs who inquired with U.S. Embassy Abu Dhabi received an auto-reply email that informs visa applicants that administrative processing is a "process" that "can last between 60-90 days" but "it can take significantly longer," and that "[w]e realize that these extended time periods cause frustration but we must adjudicate visas in accordance with the provision of the law," without

noting any provision of law. **Exhibit G, US Embassy Abu Dhabi Automatic reply**.

432.  U.S. Embassy Abu Dhabi's webpage reads: "Administrative processing takes additional time after the interview. Most administrative processing is resolved within 60 days. However, the timing varies based on the circumstances of each case. Before inquiring about the status of administrative processing, please wait at least 90 days after your interview." **Exhibit H, US Embassy Abu Dhabi, United Arab Emirates – ABD webpage**.

433.  U.S. Embassy in Ankara has a webpage for advising applicants "After the Interview". It reads: "If administrative processing is required, the consular officer will inform the applicant at the interview. Duration of administrative processing varies but most administrative processing is resolved within 6 months. However, the timing varies based on the circumstances of each case. Before inquiring about the status of administrative processing, please wait at least 6 months after your interview." **Exhibit I, US Embassy Ankara - After the Interview**.

**VI.**    PLAINTIFFS' HARDSHIP AND HARM SUFFERED.

434.  Following their immigrant visa interviews, Plaintiffs were informed that their applications would have to undergo mandatory administrative processing, and they were given non-final §221(g) refusal notices.

116

435.  The consular officers also requested that Plaintiffs complete and submit the DS-5535, requesting, in some cases 15 years of detailed history, including addresses, employment, travel, and social media handles. As explained on their website, US Embassy Ankara requires "the applicant's entire employment history." **Exhibit I, US Embassy Ankara - After the Interview**.

436.  Plaintiffs promptly completed and submitted their detailed response to the questionnaires.

437.  As of the date of filing, Plaintiffs are still in limbo, awaiting clearance of their submitted DS-5535 responses from unclear and opaque government agencies, and/or government contractors.

438.  For more than nine months since their interviews, Plaintiffs have remained patiently waiting, their visa application status on the State Department CEAC website continues to show that their cases as "Refused" and informs them that "[their] case will remain refused while undergoing such processing" and that they "will receive another adjudication once such processing is complete." **Exhibit J, CEAC Online Case Statuses as of January 1, 2024**.

439.  As the beneficiaries of approved I-140 petitions, Plaintiffs are entitled to the issuance of the immigrant visas unless they are ineligible under a specific ground of ineligibility set forth in the governing statutes and regulations.

440.  As a direct result of Defendants' failure to issue final decisions on Plaintiffs' immigrant visa applications, Plaintiffs have experienced, and will continue to experience, severe, particularized, and concrete injury.

441.  The failure of the Defendants to timely adjudicate Plaintiffs' applications is causing severe emotional distress and psychological harm to Plaintiffs.

442.  Despite all reasonable attempts by Plaintiffs to determine the nature of the delay in visa issuance, Defendants have unreasonably delayed making a final decision on Plaintiffs' visa applications without explanation or on the grounds of any rational basis.

443.  Defendants' delay in adjudication is unreasonable and is causing irreparable injury to the Plaintiffs.

444.  The physical, financial, and emotional stresses that Plaintiffs have suffered, all of which Defendants are fully aware of, because of Defendants' failure to act have exacted a significant toll on Plaintiffs that will not be relieved until Plaintiffs' applications are adjudicated.

## CAUSES OF ACTION

COUNT ONE: Violation of the APA, § 706(2)(A) and (D)
Defendants' DS-5535 Scheme is not lawful.

118

445.  Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

446.  The Department is an Agency subject to the requirements of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) and (D).

447.  The APA prohibits federal agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or is conducted "without observance of procedure required by law." 5 U.S.C. § 706(2)(A) and (D).

448.  The DS-5535 was promulgated for waivers of the now-rescinded PP 9645, but now is required on many if not most Iranian visa applicants.

449.  The essence of Defendants' DS-5535 Scheme is a decision by Defendants to prohibit Iranian immigrant visa applicants from submitting the DS-5535 prior to their immigrant visa interviews.

450.  The action of preventing Iranian immigrant visa applicants from furnishing DS-5535 responses prior to their interviews, is arbitrary and capricious.

451.  The arbitrariness of the DS-5535 Scheme is underscored by the US Embassy Ankara posting a tip on their webpage suggesting that immigrant visa applicants attempt a little hustle, by sneaking in their entire work history for their whole life on the DS-260, even though the DS-260 only requests work history for 10 years. This work history is just one of the questions on the DS-5535. The US

119

Embassy Ankara contains no tip about how to furnish consular officers answers to other DS-5535 questions, like travel history, prior to interview. **Exhibit I, US Embassy Ankara - After the Interview**.

COUNT TWO: Violation of the APA, § 706(2)(A) and (D)
Defendants' decision to use §221(g) to throttle legal immigration

452. Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

453. Defendants, inclusive of their predecessors in the Trump administration, have made a decision to use non-final §221(g) decisions to satisfy their duties to provide final adjudications, and thus throttle legal immigration, and that is not lawful. The statute does not allow this discretion.

454. Specifically, §221(g) includes mandates that "[n]o visa or other documentation shall be issued to an alien if (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law…" 8 U.S.C. 1182(g).

120

455.  What §221(g) does not include is discretion for Defendants to refuse immigrant visa applications based upon information that was not requested prior to the interview.

456.  Simply, §221(g) was not written with Defendants' administration processing scheme, devised by the Trump administration, in mind. Plaintiffs were harmed by Defendants' decision to use non-final §221(g) decisions to satisfy their duties to provide final visa adjudications, and thus, throttle legal immigration.

COUNT THREE: Violation of the APA, 5 U.S.C. § 706(2)
Withholding of Adjudication of Plaintiffs' Immigrant Visa Applications

457.  Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

458.  The Department is an Agency subject to the requirements of the APA, 5 U.S.C. § 701(b)(1).

459.  Under 5 U.S.C. § 706(2), courts shall hold unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations; or without observance of procedure required by law.

460.  The APA defines action, in part, as a "failure to act." 5 U.S.C. § 551(13).

461.  The APA authorizes courts to compel agency action for two distinct types of "failures to act" – (1) unlawful withholding of agency action or (2) unreasonable delay of agency action. 5 U.S.C. § 706(1).

462.  Here, Defendants have unlawfully withheld agency action in contravention of statutes, regulations, and stated policy pronouncement.

463.  Plaintiffs have fulfilled all requirements, paid all fees, and is otherwise eligible for an immigrant visa. Yet Defendants have failed to adjudicate their applications within a reasonable time and have instead unlawfully withheld agency action, leaving Plaintiffs in indefinite limbo.

464.  The unlawful withholding and unreasonable delay in the adjudication of Plaintiffs' immigrant visa applications constitute a final agency action that is reviewable by this Court. Whitman v. Am. Trucking Ass'n, 531 U.S. 457, 478 (2001); Bennett v. Spear, 520 U.S. 154, 177–78 (1997).

465.  Agency action "cover[s] comprehensively every manner in which an agency may exercise its power." Whitman, 531 U.S. at 478.

466.  Agency action that is final is "mark[ed by] the consummation of the agency's decision-making process" and "be one by which rights or obligations

have been determined, or from which legal consequences will flow." <u>Bennett v. Spear</u>, 520 U.S. 154, 177–78 (1997).

467.  As demonstrated above, Defendants have failed to timely adjudicate Plaintiffs' applications, effectively suspending the processing and adjudication of a visa for an otherwise qualified and eligible applicants.

468.  Defendants' inaction, in this case, creates jurisdiction. <u>Moghaddam v. Pompeo</u>, 424 F. Supp. 3d 103, 114 (D.D.C. 2020) (quoting <u>Patel v. Reno</u>, 134 F.3d 929, 931–32 (9th Cir. 1997)); see also <u>Nine Iraqi Allies</u>, 168 F. Supp. 3d at 290–91, ("When the Government simply declines to provide a decision in the manner provided by Congress, it is not exercising its prerogative to grant or deny applications but failing to act at all.").

469.  Plaintiffs and their clients were harmed by Defendants' inaction and delay.

470.  Plaintiffs and their clients will continue to be irreparably harmed by these unlawful acts absent an injunction from this Court enjoining Defendants from withholding adjudication of Plaintiffs' immigrant visa applications.

COUNT FOUR: Violation of the APA, 5 U.S.C. § 706(1)
Withholding of a Mandatory Entitlement Owed to Plaintiffs

471.  Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

123

472.  Section "706(1) grants judicial review if a federal agency has a 'ministerial or non-discretionary' duty amounting to a 'specific, unequivocal command.'" Anglers Conservation Network v. Pritzker, 809 F.3d 664, 670 (D.C. Cir. 2016).

473.  Under section 706(1) of the APA, the court may "compel agency action unlawfully withheld." 8 U.S.C. § 706(1).

474.  The timely adjudication of and decision on a properly filed pending applications are not optional. This is not committed to agency discretion, nor are the statutes, regulations, and policies, so broad as to provide no meaningful standard to judge the agency's action. Rather, these duties and how Defendants must undertake them are detailed in the INA, the FAM, and its governing regulations.

475.  Defendants' conduct is contrary to the INA's mandate that all immigrant and nonimmigrant "visa applications shall be reviewed and adjudicated by a consular officer" 8 U.S.C. § 1202(b), (d), and 8 U.S.C. § 1201(a)(1) which provides that a "consular officer may issue" a visa to an individual who has "made proper application therefor."

476.  Pursuant to sections 1202(b) and 1202(d) of the INA, Defendants owe a nondiscretionary duty to Plaintiffs, which require that all immigrant and nonimmigrant visa applications "shall be reviewed and adjudicated by a consular

124

officer" and creates a discrete, legally required action. 8 U.S.C. § 1202(b), (d) (emphasis added).

477.  Congress's use of the word "shall" imposes a mandatory non-ministerial duty on consular officers to review, adjudicate, and issue fiancé visas. Sierra Club v. E.P.A., 705 F.3d 458, 467 (D.C. Cir. 2013) ("the word 'shall' ... evidences a clear legislative mandate…")

478.  Likewise, the Code of Federal Regulations is unambiguous that Defendants have amandatory and affirmative duty to interview immigrant visa applicants and adjudicate properly filed immigrant visa applications. Under 22 C.F.R. § 42.81(a), "when a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa [or] refuse the visa under INA 212(a) or 221(g) or other applicable law."

479.  Defendants have a "nondiscretionary, ministerial" duty to act. The INA governs visa processing and "confers upon consular officers' exclusive authority to review applications for visas. Saavedra Bruno v. Albright, 197 F. 3d 1153, 1156 (D.C. Cir. 1999); see also § 201(e), INA §§ 101(a)(9), (16); a "consular office is required by law to act on visa applications." Patel v. Reno, 134 F.3d 929, 932 (9th Cir. 1997).

480.  Defendants owe Plaintiffs a nondiscretionary, ministerial duty to act upon the immigrant visa application, one that they have failed to fulfill. See INA §201(e); INA §§ 101(a)(9), (16); 22 C.F.R.§ 42.62; see also, e.g., <u>Donovan v. United States</u>, 580 F.2d 1203, 1208 (3d Cir. 1978) (holding that mandamus is an appropriate remedy whenever a party demonstrates a clear right to have an action performed by a government official who refuses to act).

481.  Defendants have refused to adjudicate Plaintiffs' applications despite their eligibility for immigrant visa issuance.

482.  Defendants are unlawfully withholding discrete action they are required to take within the temporal limits imposed by statute and the express intent of Congress, and as outlined above they have failed to adjudicate Plaintiffs immigrant visa applications in contravention of that nondiscretionary duty.

COUNT FIVE: Violation of the APA; 5 U.S.C. § 555(b)<br>Unreasonably Delayed Immigrant Visa Adjudications

483.  Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

484.  Pursuant to the APA, Defendants have a nondiscretionary duty to conclude a matter presented to it within a reasonable time. See 5 U.S.C. § 555(b).

485.  Pursuant to the APA, 5 U.S.C. §706(1), a court may compel agency action unlawfully withheld or unreasonably delayed.

486.  Plaintiffs' claims implicate the statutory mandates that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer," 8 U.S.C. § 1202(b) (emphases added). Defendants' DS-5535 Scheme should not give them a workaround for this congressionally mandated duty.

487.  Defendants have unreasonably delayed processing Plaintiffs' visa applications since the date of their immigrant visa interviews, which were more than nine months ago.

488.  "Reasonable time for agency action is typically counted in weeks or months, not years." In re Am. Rivers & Idaho Rivers United, 372 F.3d 413, 419 (D.C. Cir. 2004).

489.  Plaintiffs' human welfare is "at stake" in this case and the prejudice from any further delay is devastating to them and their families. If Defendants continue to neglect adjudication of Plaintiffs' visa applications, Plaintiffs will continue to suffer financially, psychologically, and emotionally indefinitely. Telecommunications Research & Action Center v. FCC ("TRAC"), 750 F.2d 70, 80 (D.C. Cir. 1984).

490.  Defendants' adoption and implementation of the DS-5535 Scheme as a workaround to allow them to indefinitely delay the adjudication of Iranian immigrant visa applications demonstrates—although not needed to satisfy the TRAC analysis—that Defendants act with impropriety in creating "agency

lassitude." Further, Defendants' blatant disregard for the indefinite suffering of separated families and the time-sensitive nature of Plaintiffs' visa applications also show—that Defendants act with impropriety in creating "agency lassitude."

491. Defendants have failed to adjudicate immigrant visas for Plaintiffs within a reasonable time.

492. Plaintiffs have submitted all required information, documents, and payments and are eligible for the visa they seek, and yet, Defendants have failed to issue final decisions on their immigrant visa applications.

493. Absent an order from this Court, Defendants will continue to delay and fail to provide final adjudications on Plaintiffs' immigrant visa applications. As an election approaches which very well could result in more restrictive US immigration policies, including the return of what the former administration called the Travel Ban or the Muslim Ban,  Plaintiffs fear this year may be their last chance to immigrate to the US.

494. Plaintiffs were harmed and will continue to suffer irreparable harm if Defendants persist in unreasonably delaying the final adjudications of Plaintiffs' immigrant visa applications.

COUNT SIX: Mandamus Act, 28 U.S.C. § 1361

128

495.  Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

496.  Under 28 U.S.C. § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

497.  A mandamus plaintiff must demonstrate that: (i) he or she has a clear right to the relief requested; (ii) the defendant has a clear duty to perform the act in question; and (iii) no other adequate remedy is available. Liberty Fund, Inc. v. Chao, 394 F. Supp. 2d 105, 113 (D.D.C. 2005); see also Patel, 134 F. 3d at 933 (duty to adjudicate an immigrant visa application).

498.  The Plaintiffs clearly meet all three of these criteria. See, e.g., Raduga USA, 440 F. Supp. 2d at 1146 ("Plaintiffs' claim here is clear and certain, and the consul's nondiscretionary, ministerial duty is plainly prescribed. Furthermore, Plaintiffs have no other means to compel the United States consul to make a decision.") United States v. Kerry, 168 F.Supp.3d 268, 291-92 (D.D.C. 2016)(holding the doctrine of consular non-reviewability did not apply where plaintiffs' visa applications were not formally refused, but were held in "administrative processing"); see also Patel v. Reno, 134 F.3d 929, 932-33 (9th Cir. 1997)(affirming the granting of mandamus relief where plaintiff's application

had only been "provisionally refused"); <u>Maramjaya v. U.S. Citizenship &</u>
<u>Immigration Servs.</u>, 2008 WL 9398947, at 4 (D.D.C. Mar. 26, 2008)(holding that
the doctrine of consular non-reviewability did not apply when the case had not
procedurally progressed to the point where consular immunity would bar judicial
review").

499.  Plaintiffs have fully complied with all statutory and regulatory
requirements for obtaining visas for Plaintiffs, including obtaining approval of I-
140 petitions, applying for their visa with a properly filed DS-260, and submitting
all necessary documentation and paying all required fees.

500.  Defendants have a clear non-discretionary duty to adjudicate
immigrant visa applications and issue visas to Plaintiffs who are eligible to receive
visas and not inadmissible under 8 U.S.C. § 1182(a).

501.  Defendants owe Plaintiffs a duty to act upon Plaintiffs' immigrant
visa applications. The INA and the relevant regulations impose on the Defendants
a non-discretionary duty to timely adjudicate Plaintiffs' visa applications and to
complete any background checks, interviews, or other investigations required by
the Defendants to do so.

502.  This duty is owed under the INA, federal regulations, and published
agency guidance. See INA § 201(b)(2)(A)(i); INA §§ 101(a)(9), (16); 22 C.F.R. §
42.81(a); see also, e.g., <u>Donovan v. United States</u>, 580 F.2d 1203, 1208 (3d Cir.

1978) (holding that mandamus is an appropriate remedy whenever a party demonstrates a clear right to have an action performed by a government official who refuses to act).

503.  Nonetheless, Defendants have willfully and unreasonably failed to adjudicate Plaintiffs' visa applications, thereby depriving Plaintiffs of their rights under 22 C.F.R. § 42.81(a), 8 U.S.C. 1184(d)(1), and the APA to have a properly filed visa application decided in a timely manner.

504.  Adjudication of Plaintiffs' applications are a purely ministerial, non-discretionary act which the Defendants are under obligation to perform in a timely manner; the Plaintiffs have no alternative means to obtain adjudication of the visa; and their right to issuance of the writ is "clear and indisputable." Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 35 (1980); see also First Federal Savings and Loan Ass'n of Durham, 860 F.2d at 138; Patel, 134 F.3d at 933 ("[W]e find that the consulate had a duty to act and that to date ... the consulate has failed to act in accordance with that duty and the writ [of mandamus] should issue.").

505.  Mandamus action is also appropriate because Defendants failed to act within a reasonable time. See, e.g., Liu v. Novak, 509 F. Supp. 2d 1, 9 (D.D.C. 2007) (holding that the APA requires the government to act within a reasonable period of time); see also Sierra Club v. Thomas, 828 F.2d 783, 794 (D.C. Cir.

1987) (stating that "regardless of what course it chooses, the agency is under a duty not to delay unreasonably in making that choice").

506.  It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application. See 8 U.S.C. § 1571 and (Pub. L. 106–313, title II, §202, Oct. 17, 2000, 114 Stat. 1262.). Defendants have failed in their duty to adjudicate Plaintiffs' visa applications by refusing to act for an entirely unreasonable amount of time and well over 180 days.

507.  Defendants have failed to carry out the adjudicative and administrative functions delegated to them by law. See INA § 201(b)(2)(A)(i), INA §§ 101(a)(9), (16); 22 C.F.R. § 42.81(a) and 42.81(e).

508.  Defendants have a clear, non-discretionary, and mandatory duty to adjudicate the Plaintiffs' applications. There is no legal bar to doing so.

509.  Defendants have no legal basis for failing to proceed with providing final adjudication of the Plaintiffs' applications,  nor for their failure to complete any background checks or other investigations required.

510.  No alternative remedy exists to compel action by Defendants.

511.  Accordingly, Plaintiffs have a clear and indisputable right to final visa adjudications of their visa applications.

132

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs pray that this Court grant them the following relief:

A.   Declare the Defendants' DS-5535 Scheme as unlawful and inconsistent with 8 U.S.C. §1202(b), and thus, Plaintiffs were injured by the DS-5535 Scheme;

B.   Declare that the Defendants' decision to use non-final §221(g) decisions to satisfy their duties to provide final visa decisions, and to thus throttle legal immigration, is not lawful;

C.   Declare that the Defendants' delay in adjudicating Plaintiffs' immigrant visa applications is unreasonable and violates the INA and applicable statutes, regulations, agency guidance, and that Plaintiffs are entitled to a prompt adjudication of the immigrant visa application pursuant to the Declaratory Judgement Act 28 U.S.C. § 2201;

D.   Issue a writ of mandamus compelling the Defendants and those acting under them to perform their duty to complete all steps necessary to adjudicate Plaintiffs' immigrant visa applications, within thirty (30) days from the date of the order pursuant to the Court's mandamus authority under 28 U.S.C. § 1361;

E.   Issue an order compelling the Defendants and those acting under them to perform their duty to adjudicate the immigrant visa application of Plaintiffs within 30 days of the order pursuant to the Administrative Procedure Act;

F.   Enjoin Defendants and those acting under them from any further unreasonable delay in adjudication of Plaintiffs' pending immigrant visa applications;

G.   Retain jurisdiction over this action to monitor and enforce Defendants'

133

compliance with all orders of this Court;

H.     Award Plaintiffs reasonable attorney fees and costs pursuant to the Equal Access to Justice Act, 42 U.S.C. § 1988, 5 U.S.C. § 504, 28 U.S.C. § 2412 and any other applicable law; and

I.     Grant such further relief as this Court deems just and proper.

DATED: May 31, 2024
Bonsall, California

Respectfully submitted,

*/s/ Curtis Lee Morrison*

Curtis Lee Morrison
Red Eagle Law, L.C.
Email: curtis@redeaglelaw.com

134