1  BRIAN M. BOYNTON
2  Principal Deputy Assistant Attorney General
   NANCY K. CANTER (CA 263198)
3  Senior Litigation Counsel
   JOSEPH A. MCCARTER (MD 2311290014)
4  Trial Attorney
   Office of Immigration Litigation
5  Civil Division
   U.S. Department of Justice
6  P.O. Box 878, Ben Franklin Station
7  Washington, DC 20044
   Phone: (202) 746-8537
8  Email: Joseph.A.McCarter@usdoj.gov
9
10 Attorneys for Defendants
11
                    UNITED STATES DISTRICT COURT
12              FOR THE CENTRAL DISTRICT OF CALIFORNIA
13
   TOKTAM HOSSEINNEZHAD               No. 2:24-cv-04536-FWS-DFM
14 ARIANI, et al.,
15          Plaintiffs,               **DEFENDANTS' NOTICE OF MOTION
                                      AND MOTION TO DISMISS, DROP
16             v.                     MISJOINED PARTIES, AND SEVER
                                      CLAIMS**
17
   ANTONY J. BLINKEN, et al.,         (Filed Concurrently with [Proposed] Order)
18
            Defendants.               Hearing Date:   September 26, 2024
19                                    Hearing Time:   10:00 a.m.
20                                    Courtroom:      411 West 4th Street
                                                      Santa Ana, CA 92701
21                                                    Courtroom 10D
22
23
24                                    Honorable Fred W. Slaughter
                                      United States District Judge
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

<u>DESCRIPTION</u>                                                                 <u>PAGE</u>

TABLE OF AUTHORITIES .................................................................iii

NOTICE OF MOTION AND MOTION TO DISMISS ................................xiv

MEMORANDUM OF POINTS AND AUTHORITIES ...................................1

INTRODUCTION ..........................................................................1

STATUTORY AND REGULATORY BACKGROUND.................................2

STATEMENT OF FACTS ..................................................................4

LEGAL STANDARD.........................................................................6

ARGUMENT ..................................................................................7

    I.     Plaintiffs' Lack Standing to Challenge the Timing of DS-5535
           Collection and the Alleged Use of Section 1201(g) Refusals to
           "Throttle Legal Immigration" ...............................................7

    II.    Assuming Jurisdiction, Dismissal Is Warranted as Plaintiffs Have
           Failed to State a Claim for Relief as to the Timing of Collection of
           Form DS-5535 ..................................................................8

           A.    Plaintiffs' challenge to the timing of DS-5535 collection
                 should be dismissed as it is non-justiciable. ......................8
           B.    Collection of the DS-5535 after consular interviews is neither
                 unlawful nor arbitrary and capricious...............................12

    III.   Assuming Jurisdiction, Dismissal of Plaintiffs' "Illegal Throttling"
           Claim Is Further Warranted as Plaintiffs' Conclusory Challenge to
           Visa Refusals Under 8 U.S.C. § 1201(g) Fails to State a Claim................17

    IV.   This Court Is an Improper Venue for the Ninety-Four Co-Plaintiffs .........18

V.  Alternatively, the Court Should Drop the Ninety-Two Co-Plaintiffs Whose Refused Applications Remain in Administrative Processing for Misjoinder Under Rule 21 or, at the Very Least, Sever Those Co-Plaintiffs' Unreasonable Delay Claims Under Rule 21 ............................. 20

VI.  The Court Should Dismiss Certain Plaintiffs for Forum Shopping ............ 23

VII.  Dismissal of Plaintiffs' Unlawful Withholding and Unreasonable Delay Claims Is Warranted as Plaintiffs Name Defendants Who Cannot Provide the Relief Requested ........................................................ 24

VIII.  Regardless, the Court Lacks Jurisdiction over Plaintiffs' Unlawful Withholding and Unreasonable Delay Claims Because Plaintiffs Fail to Demonstrate that Consular Officers Have a Mandatory, Non-Discretionary Duty to Re-Adjudicate Visa Applications Already Refused Pursuant to 22 C.F.R. §§ 41.121(a) and 42.81(a) ........................ 25

IX.  The Consular Nonreviewability Doctrine Renders Plaintiffs' Unlawful Withholding and Unreasonable Delay Claims Non-Justiciable ...................................................................................... 30

X.  Regardless of Justiciability, Dismissal of Plaintiffs' Unlawful Withholding Claims Is Warranted as Plaintiffs Fail to Plausibly Allege Consular Officers Withheld Adjudication of Their Visa Applications .................................................................................. 32

XI.  Dismissal of Plaintiff Mikaniki's Unreasonable Delay Claims Is Warranted as He Does Not Plausibly Allege the Six Months His Visa Application Has Been in Administrative Processing Is Unreasonable as a Matter of Law ............................................................... 33

    C.  *TRAC* factors one and two ................................................ 34
    D.  *TRAC* factor four ............................................................ 36
    E.  *TRAC* factors three and five ............................................ 38
    F.  *TRAC* factor six .............................................................. 39

XII.  CONCLUSION ................................................................. 39

ii

# TABLE OF AUTHORITIES

## CASES

*Aghchay v. U.S. Dep't of State*,
   No. 22-cv-5708-PA-PVC, 2022 WL 19569516 (C.D. Cal. Dec. 20, 2022) ................37

*Al Shaleli v. Blinken*,
   No. 22-1244, 2022 WL 4664245 (E.D. Cal. Sept. 30, 2022) ........................................4

*Allen v. Milas*,
   896 F.3d 1094 (9th Cir. 2018) ..............................................................30, 31, 32

*Arab v. Blinken*,
   600 F.Supp.3d 59 (D.D.C. 2022) ....................................................................36

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................6, 17

*ASSE Int'l, Inc. v. Kerry*,
   803 F.3d 1059 (9th Cir. 2015) ........................................................................12

*Baan Rao Thai Rest. v. Pompeo*,
   985 F.3d 1020 (D.C. Cir. 2021) .....................................................................24

*Balt. Gas & Elec. Co. v. NRDC*,
   462 U.S. 87 (1983) .......................................................................................13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................6, 17

*Bennett v. Spear*,
   520 U.S. 154 (1997) .....................................................................................17

*Beshir v. Holder*,
   10 F.Supp.3d 165 (D.D.C. 2014) ...................................................................27

*Brunet v. United Gas Pipeline Co.*,
   15 F.3d 500 (5th Cir. 1992) ..........................................................................22

*Bustamante v. Mukasey,*
   531 F.3d 1059 (9th Cir. 2008) ...................................................................30
*Cabrera v. Ford Motor Co.,*
   No. 23-1402, 2023 WL 6307946 (N.D. Cal. Sept. 26, 2023)......................18
*Californians for Renewable Energy v. U.S. EPA,*
   No. 15-3292, 2018 WL 1586211 (N.D. Cal. Mar. 30, 2018) ......................19
*Chorostecki v. Blinken,*
   No. 24-cv-1240-PDW-JC, ---F.Supp.3d---, 2024 WL 3561944 (C.D. Cal. July 26,
   2024) ............................................................................................................20
*Chun v. Powell,*
   223 F.Supp.2d 204 (D.D.C. 2002) ..............................................................31
*Citizens to Preserve Overton Park, Inc. v. Volpe,*
   401 U.S. 402 (1971)..............................................................................9, 13
*Coalition for Clean Air v. VWR Int'l, LLC,*
   922 F.Supp.2d 1089 (E.D. Cal. 2013) .........................................................23
*Coleman v. Quaker Oats Co.,*
   232 F.3d 1271 (9th Cir. 2000) .........................................................20, 21, 22
*Coughlin v. Rogers,*
   130 F.3d 1348 (9th Cir. 1997) .....................................................................20
*Cupp v. Harris,*
   No.16-523, 2018 WL 4599588 (E.D. Cal. Sept. 21, 2018) .........................22
*Daniels-Hall v. Nat'l Educ. Ass'n,*
   629 F.3d 992 (9th Cir. 2010) .........................................................................3
*Dastagir v. Blinken,*
   557 F.Supp.3d 160 (D.D.C. 2021)...............................................................38
*Dep't of State v. Muñoz,*
   144 S. Ct. 1812 (2024)...............................................................30, 31, 32

iv

*Didban v. Pompeo*,
   435 F.Supp.3d 168 (D.D.C. 2020) ....................................................................36

*Doc Society, et al., v. Blinken*,
   No. 19-3632, 2023 WL 5174304 (D.D.C. Aug. 11, 2023)..........................................11

*E.V. v. Robinson*,
   200 F.Supp.3d 108 (D.D.C. 2016) ....................................................................18

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ........................................................................17

*Ekimian v. INS*,
   303 F.3d 1153 (9th Cir. 2002) ........................................................................9

*El Centro Reg'l Med. Ctr. v. Blinken*,
   No. 21-361, 2021 WL 3141205 (S.D. Cal. July 23, 2021)....................................36

*Eljalabi v. Blinken*,
   No. 21-1730, 2022 WL 2752613 (D.D.C. July 14, 2022)....................................36

*Exxon Corp. v. F.T.C.*,
   588 F.2d 895 (3d Cir. 1978)..........................................................................19

*FCC v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009)......................................................................................13

*Ferdowski v. Blinken*,
   No. 23-cv-1123-JWH-KES, 2024 WL 685912 (C.D. Cal. Feb. 12, 2024) .................35

*Gallinger v. Becerra*,
   898 F.3d 1012 (9th Cir. 2018) ......................................................................14

*Gelfer v. Chertoff*, No.,
   06-6724, 2007 WL 902382 (N.D. Cal. Mar. 22, 2007)......................................21

*Ghadami v. U.S. Dep't of Homeland Sec.*,
   No. 19-397, 2020 WL 1308376 (D.D.C. Mar. 19, 2020) ....................................34

*Ghalambor v. Blinken*,
   No. 23-cv-9377-MWF-BFM, 2024 WL 653377 (C.D. Cal. Feb. 1, 2024) ............29, 36

*Gul v. Blinken*,
   No. 24-787, 2024 WL 3400107 (D.D.C. July 11, 2024) ..............................................28

*Heckler v. Chaney*,
   470 U.S. 821 (1985) ........................................................................................9, 11

*Hernandez v. Avis Budget Group, Inc.*,
   No. 17-211, 2018 WL 10323280 (E.D. Cal. Nov. 2, 2018) ........................................33

*Hong Kong, Inc. v. Levin*,
   800 F.2d 970 (9th Cir. 1986) .........................................................................10, 24, 30

*Indep. Min. Co. v. Babbitt*,
   105 F.3d 502 (9th Cir. 1997) ..................................................................................34

*In re Am. Fed'n of Gov't Emps., AFL-CIO*,
   837 F.2d 503 (D.C. Cir. 1988) ...............................................................................39

*Kapoor v. Blinken*,
   No. 21-1961, 2022 WL 181217 (N.D. Cal. Jan. 20, 2022) .........................................35

*Karam v. Garland*,
   No. 21-915, 2022 WL 4598626 (D.D.C. Sept. 30, 2022)...........................................27

*Karimova v. Abate*,
   No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024)................................ *Passim*

*Kashin v. Kent*,
   457 F.3d 1033 (9th Cir. 2006) ................................................................................18

*Kaye v. Brown*,
   No. 17-cv-4225-SVW-JC, 2017 WL 11631496 n.7 (C.D. Cal. Oct. 4, 2017) ..............7

*Khajik v. Blinken*,
   No. 23-cv-4891-DSF-KS, 2023 U.S. Dist. LEXIS 202026 (C.D. Cal. Nov. 9, 2023).....
   ...................................................................................................................38

*Landon v. Plasencia*,
 459 U.S. 21 (1982) .................................................................................... 10

*Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State*,
 104 F.3d 1349 (D.C. Cir. 1997) ...........................................................10, 12

*Liberty Fund, Inc. v. Chao*,
 394 F.Supp.2d 105 (D.D.C. 2005) ............................................................ 38

*Lincoln v. Vigil*,
 508 U.S. 182 (1993) .................................................................................... 36

*Lujan v. Def. of Wildlife*,
 504 U.S. 555 (1992) ................................................................................7, 17

*Mashpee Wampanoag Tribal Council, Inc. v. Norton*,
 336 F.3d 1094 (D.C. Cir. 2003) ................................................................. 37

*Mathews v. Diaz*,
 426 U.S. 67 (1976) ........................................................................................ 9

*Mexichem Specialty Resins, Inc. v. EPA*,
 787 F.3d 544 (D.C. Cir. 2015) ................................................................... 35

*Mohammad v. Blinken*,
 548 F.Supp.3d 159 (D.D.C. 2021) ............................................................ 38

*Mohsenzadeh v. Kelly*,
 276 F.Supp.3d 1007 (S.D. Cal. 2017) ....................................................... 36

*Mosleh v. Pompeo*,
 No. 19-656, 2019 WL 2524407 (E.D. Cal. June 19, 2019) ........................ 19

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
 463 U.S. 29 (1983) ...................................................................................... 13

*Norton v. S. Utah Wilderness,*
 *All.*, 542 U.S. 55 (2004) ............................................................................. 25

*Nosraty v. Oudkirk*,
  No. 23-cv-4632-MCS-PD, 2024 U.S. Dist. LEXIS 587 (C.D. Cal. Jan. 2, 2024) .......34

*OC Modeling, LLC v. Pompeo*,
  No. 20-cv-1687-PA-MAA, 2020 WL 7263278 (C.D. Cal. Oct. 7, 2020).........27, 31, 33

*Patel v. Reno*,
  134 F.3d 929 (9th Cir. 1997) ......................................................................24, 25

*Piedmont Label Co. v. Sun Garden Packing Co.*,
  598 F.2d 491 (9th Cir. 1979) ...............................................................................6, 18

*Pinnacle Armor, Inc. v. U.S.*,
  648 F.3d 708 (9th Cir. 2011) ...............................................................................9, 10

*Poursohi v. Blinken*,
  No. 21-1960, 2021 WL 5331446 (N.D. Cal. Nov. 16, 2021) ....................................36

*Pushkar v. Blinken*,
  No. 21-2297, 2021 WL 4318116 (D.D.C. Sept. 23, 2021)........................................39

*R.R. St. & Co. v. Transp. Ins. Co.*,
  656 F.3d 966 (9th Cir. 2011) ...............................................................................23

*Rsch. and Action Ctr. ("TRAC") v. F.C.C.*,
  750 F.2d 70 (D.C. Cir. 1984)...........................................................................33, 39

*Saavedra Bruno v. Albright*,
  197 F.3d 1153 (D.C. Cir. 1999) ........................................................................30, 31

*San Francisco BayKeeper v. Whitman*,
  297 F.3d 877 (9th Cir. 2002) ...............................................................................26

*Sarlak v. Pompeo*,
  No. 20-35, 2020 WL 3082018 (D.D.C. June 10, 2020) .............................................35

*Senobarian v. Blinken*,
  No. 23-cv-7208-ODW-MAA, 2024 WL 897566 (C.D. Cal. Feb. 29, 2024) ....... *Passim*

*Shahijani v. Laitinen*,

    No. 23-cv-3967-RGK-MRW, 2023 WL 6889774 (C.D. Cal. Oct. 6, 2023)..........35, 37

*Shaughnessy v. U.S. ex rel. Mezei*,

    345 U.S. 206 (1953) ......................................................................................10

*Spokeo, Inc. v. Robins*,

    578 U.S. 330 (2016) ........................................................................................7

*Stith v. California*,

    No. 23-947, 2023 WL 4274043 (E.D. Cal. June 29, 2023) ..........................22

*Taherian v. Blinken*,

    No. 23-cv-1927-CJC-ADS, 2024 WL 1652625 (C.D. Cal. Jan. 16, 2024) ........9, 11, 12

*Talbot v. Sentinal Ins. Co., Ltd.*,

    No. 11-1766, 2012 WL 1068763 (D. Nev. Mar. 29, 2012) ..........................33

*Tate v. Pompeo*,

    513 F.Supp.3d 132 (D.D.C. 2021) ...............................................................37

*Tesfaye v. Blinken*,

    No. 22-411, 2022 WL 4534863 (D.D.C. Sept. 28, 2022)......................28, 33

*Throw v. Mayorkas*,

    No. 22-5699, 2023 WL 2787222 (W.D. Wash. Apr. 5, 2023) .....................35

*Trout Unlimited v. Pirzadeh*,

    1 F.4th 738 (9th Cir. 2021) ........................................................................9, 11

*Turtle Island Restoration Network v. U.S. Dep't of Com.*,

    878 F.3d 725 (9th Cir. 2017) .......................................................................13

*Vacek v. U.S. Postal Serv.*,

    447 F.3d 1248 (9th Cir. 2006) .......................................................................6

*Vaz v. Neal*,

    33 F.4th 1131 (9th Cir. 2022) ...............................................................34, 35

ix

*Viet. Veterans of Am. v. Cent. Intel. Agency*,
    811 F.3d 1068 (9th Cir. 2016) .........................................................................26, 29

*Vivendi SA v. T-Mobile USA*, Inc.,
    586 F.3d 689 (9th Cir. 2009) ....................................................................................23

*Walker v. Discover Fin. Servs.*,
    No. 10-3013, 2010 WL 4269193 (N.D. Cal. Oct. 25, 2010) ..................................23, 24

*Whitaker v. Tesla Motors, Inc.*,
    985 F.3d 1173 (9th Cir. 2021) ...................................................................................18

*Wolfe v. Strankman*,
    392 F.3d 358 (9th Cir. 2004) .......................................................................................6

*Xu v. Cissna*,
    434 F.Supp.3d 43 (S.D.N.Y. 2020) ...........................................................................38

*Yaghoubnezhad v. Stufft*,
    No. 23-3094, --- F.Supp.3d ---, 2024 WL 2077551 (D.D.C. May 9, 2024).....28, 31, 33

*Yang v. Cal. Dep't of Soc. Servs.*,
    183 F.3d 953 (9th Cir. 1999) .....................................................................................36

*Yocom v. USCIS*,
    No. 23-55430, 2024 WL 2206342 (9th Cir. May 16, 2024)........................................18

*Zhou v. Chertoff*,
    No. 08-4523, 2009 WL 2246231 (N.D. Cal. July 24, 2009) ......................................29

*Zhu v. Cissna*,
    No. 18-cv-9698-PA-JPR, 2019 WL 3064458 (C.D. Cal. April 22, 2019) ..................37

## **STATUTES**

5 U.S.C. § 555(b) ..............................................................................................6, 28, 32

5 U.S.C. § 701(a)(2)...............................................................................................9, 12

5 U.S.C. § 702........................................................................................25, 30, 32

5 U.S.C. § 706(1) ..............................................................................................6, 13, 17

5 U.S.C. § 706(2) ........................................................................................ 6, 13, 17

5 U.S.C. § 706(2)(a) ........................................................................................ 13, 32

8 U.S.C. § 1101(a)(9) ........................................................................................ 24

8 U.S.C. § 1101(a)(16) ........................................................................................ 24

8 U.S.C. § 1104 ........................................................................................ 26

8 U.S.C. § 1104(a) ........................................................................................ 26

8 U.S.C. § 1153(b)(2) ........................................................................................ 2

8 U.S.C. § 1154 ........................................................................................ 2

8 U.S.C. § 1182 ........................................................................................ 27

8 U.S.C. § 1182(a) ........................................................................................ 3

8 U.S.C. § 1201(a) ........................................................................................ 24

8 U.S.C. § 1201(a)(1) ........................................................................................ 3, 5, 17

8 U.S.C. § 1201(g) ........................................................................................ *Passim*

8 U.S.C. § 1201(g)(1) ........................................................................................ 27

8 U.S.C. § 1201(g)(3) ........................................................................................ 32

8 U.S.C. § 1202 ........................................................................................ 2, 8, 10

8 U.S.C. § 1202(a) ........................................................................................ 9, 10, 14, 26

8 U.S.C. § 1202(b) ........................................................................................ 8, 17

8 U.S.C. § 1361 ........................................................................................ 3

8 U.S.C. § 1571(b) ........................................................................................ 36

8 U.S.C. § 1571(c)(1) ........................................................................................ 26

22 U.S.C. § 1731 ........................................................................................ 26

22 U.S.C. § 1732 ........................................................................................ 26

22 U.S.C. § 1733 ........................................................................................ 26

22 U.S.C. § 1741 ........................................................................................ 26

22 U.S.C. § 1741a ........................................................................................ 26

22 U.S.C. § 1741b ........................................................................................ 26

22 U.S.C. § 1741c ......................................................................................26

22 U.S.C. § 1741d ......................................................................................26

22 U.S.C. § 1741e ......................................................................................26

22 U.S.C. § 1741f .......................................................................................26

22 U.S.C. § 2651a .......................................................................................26

22 U.S.C. § 3927 .........................................................................................26

28 U.S.C. § 1361 ....................................................................................6, 25

28 U.S.C. § 1391(e)(1) ...............................................................................18

28 U.S.C. § 1406 ...........................................................................................6

## RULES

Fed. R. Civ. P. 12(a)(4) ..............................................................................33

Fed. R. Civ. P. 12(b)(1) ..................................................................xiv, 6, 31

Fed. R. Civ. P. 12(b)(3) ..................................................................xiv, 6, 20

Fed. R. Civ. P. 12(b)(6) .................................................................... *Passim*

Fed. R. Civ. P. 20(a) ...................................................................................20

Fed. R. Civ. P. 21 ......................................................................xiv, 20, 21, 22

Fed. R. Civ. P. 25(d) .................................................................................xiv

Fed. R. Evid. 201 ..........................................................................................3

## REGULATIONS

8 C.F.R. § 204.1(a) ........................................................................................2

8 C.F.R. § 204.5 .............................................................................................2

8 C.F.R. § 204.5(h) ........................................................................................2

22 C.F.R. § 40.6 .............................................................................................3

22 C.F.R. § 41.121 .......................................................................................32

22 C.F.R. § 41.121(a) ........................................................................ *Passim*

22 C.F.R. § 42.63 ...........................................................................................2

22 C.F.R. § 42.63(c) ..........................................................................4, 12, 16

22 C.F.R. § 42.71 ....................................................................................3

22 C.F.R. § 42.81 ....................................................................................3

22 C.F.R. § 42.81(a)............................................................................ *Passim*

## **OTHER AUTHORITIES**

85 Fed. Reg. 67088 (Oct. 21, 2020).......................................................14

86 Fed. Reg. 8475 (Feb. 5, 2021) ....................................................11, 14

1

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

2

PLEASE TAKE NOTICE that, on September 26, 2024 at 10:00 a.m., or as soon

3

thereafter as they may be heard, Defendants Antony J. Blinken, U.S. Secretary of State,

4

and Robert Jachim[1], Director of Screening, Analysis, and Coordination, will, and hereby

5

do, move this Court for an order dismissing Plaintiffs' Complaint. This motion will be

6

made in the Ronald Reagan Federal Building and Courthouse before the Honorable Fred

7

W. Slaughter, U.S. District Judge, located at 411 West Fourth Street, Santa Ana, CA

8

92701, Courtroom 10D.

9

The Court should dismiss Plaintiffs' Complaint (ECF No. 1) in its entirety under

10

Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), 12(b)(6), and 21. As a preliminary

11

matter, the Court lacks jurisdiction to review Plaintiffs' challenge to the timing of the

12

collection of Form DS-5535 post interview (Count One) as well as refusals under 8 U.S.C.

13

§ 1201(g) (Count Two) as Plaintiffs have not and cannot establish Article III standing as

14

the relief Plaintiffs seek is not likely to be redressed by a favorable judicial decision. Even

15

if the Court were to find that it has jurisdiction over these claims, it should nonetheless

16

dismiss them for failure to state a claim. Indeed, the decision of when to require additional

17

information as part of immigrant visa applications is committed to the discretion of the

18

Executive Branch and is thus not justiciable. And Plaintiffs' allegations with respect to

19

Section 1201(g) refusals are conclusory, particularly where, as here, the consular officers

20

have reached decisions as required by statute and regulation when refusing Plaintiffs' visa

21

applications under Section 1201(g).

22

With respect to Plaintiffs' challenges to the alleged withholding and delay of

23

adjudication of their immigrant visa applications (Counts Three, Four, and Five), the Court

24

should dismiss these claims for improper venue for the ninety-four out-of-District

25

Plaintiffs or drop the misjoined parties from this action and sever their unreasonable delay

26

27

[1]    Pursuant to Rule 25(d), Robert Jachim, Director of Screening, Analysis, and Coordination, is automatically substituted for his predecessor, Carson Wu. *See* Fed. R. Civ. P. 25(d).

28

claims, as well as dismiss those who have evidenced a desire to forum shop. These claims should also be dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted where, as here, each Plaintiff's application was refused under Section 1201(g), fulfilling the requirements of the INA and 22 C.F.R. § 42.81(a), leaving the Court with no relief to order and where the alleged delay is not unreasonable as a matter of law.

This Motion is made upon this Notice, the attached Memorandum of Points and Authorities, and all pleadings, records, and other documents on file with the Court in this action, and upon such oral argument as may be presented at the hearing of this Motion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3 which was held on July 17, 2024.

Dated August 2, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

NANCY K. CANTER (CA 263198)
Senior Litigation Counsel
Civil Division
Office of Immigration Litigation

*/s/ Joseph A. McCarter*
JOSEPH A. MCCARTER (MD 2311290014)
Trial Attorney
Civil Division
Office of Immigration Litigation
U.S. Department of Justice

Attorneys for Defendants

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiffs Toktam Hosseinnezhad Ariani ("Plaintiff Ariani"), her husband, Hamed Mikaniki ("Plaintiff Mikaniki"), and ninety-four other noncitizens ("co-Plaintiffs"), (collectively "Plaintiffs"), bring this action against Defendants Antony J. Blinken, U.S. Secretary of State, and Robert Jachim, Director of Screening, Analysis, and Coordination, alleging that: collection by consular officers of Form DS-5535 after visa interviews is arbitrary and capricious (Count One), Defendants are seeking to "throttle legal immigration" using visa denials under 8 U.S.C. § 1201(g) (Count Two); and Defendants are unlawfully withholding and unreasonably delaying adjudication of Plaintiffs' visa applications (Counts Three, Four, Five, and Six).

The Court should dismiss Plaintiffs' Complaint for multiple reasons. First, the Court should dismiss Plaintiffs' DS-5535 (Count One) and "illegal throttling" (Count Two) claims for lack of jurisdiction because Plaintiffs lack standing to challenge the asserted agency policies. Assuming jurisdiction, the Court should dismiss Count One for failure to state a claim because: (1) the timing of DS-5535 collection is committed to agency discretion; and (2) there is nothing arbitrary or capricious about collecting the DS-5535 after consular interviews. The Court should also dismiss Count Two for failure to state a claim because: (1) Plaintiffs' "illegal throttling" allegations are conclusory; (2) Plaintiffs do not allege a final agency action; and (3) there is no statutory duty for consular officers to issue a "final" decision at the conclusion of a consular interview.

Because dismissal of Plaintiffs' DS-5535 and "illegal throttling" claims is warranted, the Court should also dismiss the ninety-four co-Plaintiffs residing outside this District for lack of venue or transfer their cases to the District of Columbia. But even assuming venue in this District is proper, the Court should drop the ninety-two out-of-District co-Plaintiffs whose applications are currently in administrative processing for misjoinder or, alternatively, sever their unreasonable delay claims (Counts Three, Four, Five, and Six) as assessing those claims would require the Court to conduct ninety-three

1

independent inquiries as to reasonableness (Plaintiff Mikaniki plus ninety-two co-Plaintiffs). Additionally, certain out-of-District co-Plaintiffs should be dismissed for forum shopping.

Should the Court decline to dismiss the improperly joined co-Plaintiffs or sever their unreasonable delay claims, the Court should nevertheless dismiss Plaintiffs' unlawful withholding and unreasonable delay claims for lack of jurisdiction because: (1) Plaintiffs name Defendants who cannot provide the requested relief; and (2) Defendants have no mandatory, non-discretionary duty to re-adjudicate visa applications that consular officers have refused. Assuming jurisdiction, the Court should nevertheless dismiss for failure to state a claim because: (1) the consular nonreviewability doctrine precludes judicial review of visa refusals; (2) regardless of justiciability, Plaintiffs do not plausibly allege consular officers withheld action as the officers refused the visas at the conclusion of the interviews as required by regulation; and (3) further, Plaintiffs do not plausibly allege unreasonably delayed adjudication of Plaintiff Mikaniki's—the only properly venued Plaintiff with an application currently in administrative processing—visa application, as delays of up to four years in the immigration context are not unreasonable as a matter of law.

## STATUTORY AND REGULATORY BACKGROUND

When a noncitizen seeks to obtain an immigrant visa on the basis of certain professional abilities, either the noncitizen or an employer must file Form I-140, Immigrant Petition for Alien Workers ("visa petition") with the U.S. Citizenship and Immigration Services ("USCIS"). 8 U.S.C. § 1153(b)(2); 8 C.F.R. § 204.5(h). If the visa petition establishes the noncitizen has the requisite professional qualifications, USCIS approves the petition. 8 U.S.C. § 1154; 8 C.F.R. § 204.5.

If the noncitizen beneficiary of an approved visa petition is located outside the United States, USCIS sends the approved petition to the State Department's National Visa Center ("NVC") for pre-processing. *See* 8 U.S.C. § 1202; 8 C.F.R. § 204.1(a), 204.2(d)(3). During pre-processing, the beneficiary submits Form DS-260, Immigrant Visa Electronic Application, 22 C.F.R. § 42.63, and the NVC schedules the beneficiary

for an immigrant visa interview before a consular officer to make and execute a visa application, *see* Dep't of State, Bureau of Consular Affairs, *Immigrant Visa Process, Step 2: NVC Processing*, available at https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-1-submit-a-petition/step-2-begin-nvc-processing.html (last visited July 24, 2024).[2]

The decision to grant or deny a visa application rests with the consular officer. *See* 8 U.S.C. § 1201(a)(1); 22 C.F.R. §§ 42.71, 42.81. Visa applicants bear the burden of establishing eligibility for a visa to the satisfaction of the consular officer. 8 U.S.C. § 1361. Before issuing a visa, the consular officer must ensure the applicant is not inadmissible under any INA provision. *See id.* If a consular officer is not satisfied that an applicant is eligible, the consular officer must refuse the visa application. *Id.* §§ 1201(g) ("No visa shall be issued to an alien if . . . it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa . . . under section 1182 of this title, or any other provision of law," or if "the consular officer knows or has reason to believe that [the] alien is ineligible to receive a visa . . . under section 1182 . . . or any other provision of law."), 1361; *see* 22 C.F.R. § 40.6. At the interview's conclusion, the consular officer must either issue or refuse the visa under 8 U.S.C. § 1182(a), 8 U.S.C. § 1201(g), or other applicable law. 22 C.F.R. § 42.81(a).

Because a refusal under 8 U.S.C. § 1201(g) is based on the applicant's failure to demonstrate eligibility for a requested visa, consular officers refusing visas on that ground often afford applicants additional administrative processes, which may generate evidence unavailable to the applicant that may provide a basis for the officer to reconsider the refusal. *See* Dep't of State, Bureau of Consular Affairs, *Administrative Processing Information*, available at https://usaodc.click/AdminProcessInfo (last visited July 24, 2024); *see Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *2 (D.C. Cir. July 24,

---

[2]    Defendant requests that the Court take judicial notice of the government websites cited in this Motion. *See* Fed. R. Evid. 201; *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 999 (9th Cir. 2010) (information on government websites is subject to judicial notice).

2024) ("As a result [of the applicant failing to carry her burden of showing visa eligibility], the consular officer may choose to place an officially refused application in administrative processing. . . . If the consular officer gets enough new information [to overcome ineligibility], sometimes from sources other than the applicant, the officer can determine *sua sponte* that the administrative processing is 'completed' and may then re-open and re-adjudicate the applicant's case."). Such administrative processes thus benefit a refused applicant by "keeping the door open" to potential re-consideration of eligibility should new information surface. *Karimova*, 2024 WL 3517852, at *2. Critically, after a consular officer has refused an application, there is no statutory command to engage in additional administrative processes that could assist noncitizens to meet their burden to demonstrate eligibility for a visa.

Consular officers may also request additional information from an applicant to determine visa eligibility. A consular officer "may require the submission of additional information or question the [noncitizen] on any relevant matter whenever the officer believes that the information provided in . . . Form DS–260 is inadequate to determine the [noncitizen's] eligibility to receive an immigrant visa" and this material shall be considered part of the immigrant visa application. *See* 22 C.F.R. § 42.63(c). Form DS-5535, Supplemental Questions for Visa Applicants, collects such information. *See Al Shaleli v. Blinken*, No. 22-1244, 2022 WL 4664245, at *3 (E.D. Cal. Sept. 30, 2022) (taking judicial notice "of the fact that [the DS-5535] is a form requesting supplemental information about various subjects, including travel history, relatives, and employment history."). Critically, there is no statutory command concerning the timing of DS-5535 collection.

## STATEMENT OF FACTS

Plaintiff Ariani is an Iranian national residing in this District. Compl. ¶¶ 28, 30. On March 25, 2022, Plaintiff Ariani filed a Form I-140 immigrant visa petition with USCIS for herself and her derivative family members: husband, Plaintiff Mikaniki, and their two children. Compl. ¶¶ 30, 33-34. USCIS approved the petition on February 8, 2022, and

transferred the case to the NVC. Compl. ¶ 32. On November 27, 2023, Plaintiff Ariani and her derivative family members appeared before a consular officer at the U.S. Embassy in Yerevan, Armenia for a visa interview and executed visa applications. *Id.* ¶ 35. Following the interview, the consular officer refused Plaintiff Ariani's, Plaintiff Mikaniki's, and their children's visa applications, citing 8 U.S.C. § 1201(g) as the ineligibility ground. *Id.* For Plaintiff Mikaniki, the consular officer requested that he submit Form DS-5535 and placed his application in administrative processing. *Id.* Since then, Plaintiff Ariani and her children overcame ineligibility and were issued visas, but administrative processing as to Plaintiff Mikaniki's refused application remains ongoing as of the date of this Motion. *Id.* ¶ 36; *see* U.S. Dep't of State Consular Electronic Application Center ("CEAC"), at https://ceac.state.gov/ceac (last accessed July 24, 2024).[3]

On May 31, 2024, just six months after the consular officer refused Plaintiff Mikaniki's visa application, he and Plaintiff Ariani filed the instant Complaint. Plaintiffs Ariani and Mikaniki joined as co-Plaintiffs ninety-four immigrant visa applicants who reside outside this District. *See* Compl. ¶¶ 37-347. Between November 14, 2022, and November 30, 2023, each of the co-Plaintiffs appeared for visa interviews at various U.S. consulates and embassies around the world. *Id.* In each case, consular officers found the co-Plaintiffs ineligible for visas and refused their applications, citing Section 1201(g) as the ineligibility ground. *Id.* After refusing the applications, the officers placed each case in administrative processing, which, for ninety-two co-Plaintiffs, remains ongoing as of the date of this Motion. *Id.*; *see also* CEAC.[4]

---

[3] The CEAC is a government website that allows applicants to check the status of their visa applications using their case number. Plaintiffs provided Plaintiff Ariani's visa case number as YRV2023602018. Compl. ¶ 32. Entering this case number shows that Plaintiff Ariani and her children have been issued visas but Plaintiff Mikaniki's visa application remains refused.

[4] The CEAC indicates that co-Plaintiffs Eunhye Lee and Kimia Najafi were issued visas, *see* CEAC (entering co-Plaintiff Lee's case number of SEO2022766005, Compl. ¶ 316, and co-Plaintiff Najafi's case number of ABD2022804039, *id.* ¶ 122), and all other co-Plaintiffs' applications remain refused, *see id.* (entering their case numbers as provided in the Complaint). Accordingly, co-Plaintiff Lee's and co-Plaintiff Najafi's claims should be dismissed as moot.

The Complaint seeks a writ of mandamus to compel the State Department to re-adjudicate Plaintiff Mikaniki and the ninety-two co-Plaintiffs' refused visa applications and alleges unlawfully withheld and unreasonably delayed adjudication under the APA, 5 U.S.C. §§ 555(b), 706(1), and 706(2) (Counts Three, Four, and Five), and the Mandamus Act, 28 U.S.C. § 1361 (Count Six). Compl. ¶¶ 457-511. The Complaint also seeks an order declaring unlawful, under 5 U.S.C. § 706(2), the State Department's alleged policies pertaining to the timing of DS-5535 collection (Count One) and the "illegal throttling" of legal immigration utilizing visa refusals under Section 1201(g) (Count Two). *Id.* ¶¶ 445-56.

## LEGAL STANDARD

Dismissal under Rule 12(b)(1) is warranted where the party asserting jurisdiction cannot bear its burden of proving jurisdiction exists. *See Vacek v. U.S. Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006) (quotation marks omitted). A Rule 12(b)(1) motion may be either facial, when the inquiry is confined to the complaint's allegations, or factual, when the court may look beyond the complaint to extrinsic evidence. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

Dismissal under Rule 12(b)(3) is appropriate when venue is improper. A court "shall dismiss" an action filed in an improper venue, but may "in the interest of justice" transfer the case to another district "in which it could have been brought." 28 U.S.C. § 1406. When venue is challenged under Rule 12(b)(3), the plaintiff bears the burden "of showing that venue was properly laid." *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).

Dismissal under Rule 12(b)(6) is warranted when a complaint fails to state a claim upon which relief may be granted that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts accept the complaint's factual allegations as true and draw reasonable inferences in favor of plaintiffs, but "[a] court need not accept as true a complaint's conclusory allegations or

legal conclusions." *Kaye v. Brown*, No. 17-cv-4225-SVW-JC, 2017 WL 11631496, at *5 n.7 (C.D. Cal. Oct. 4, 2017).

## ARGUMENT

### I.  Plaintiffs' Lack Standing to Challenge the Timing of DS-5535 Collection and the Alleged Use of Section 1201(g) Refusals to "Throttle Legal Immigration"

The Court should dismiss Plaintiffs' claims with respect to the timing of DS-5535 collection and alleged use of Section 1201(g) refusals to "throttle legal immigration" as Plaintiffs have not and cannot establish Article III standing. *See Lujan v. Def. of Wildlife*, 504 U.S. 555, 559-60 (1992). To establish standing, Plaintiffs "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Here, Plaintiffs' claims regarding the timing of DS-5535 collection (Count One) and alleged use of Section 1201(g) refusals to "throttle legal immigration" (Count Two) fail on redressability grounds. The injury Plaintiffs allege is the delayed adjudication of their visa applications currently in administrative processing. *E.g.*, Compl. ¶¶ 8, 434. But the relief Plaintiffs seek for that injury is an order declaring unlawful the collection of Form DS-5535 after a consular interview has taken place. *Id.* at 133 ¶ A. Each Plaintiff has already completed the DS-5535 and is awaiting the conclusion of administrative processing, *id.* ¶ 10; thus, a Court order declaring the timing of the collection of Form DS-5535 unlawful following a visa interview would not speed up conclusion of administrative processing. Nor would an order declaring unlawful the alleged use of Section 1201(g) visa refusals to "throttle legal immigration," *id.* at 133 ¶ B, cause administrative processing to conclude any faster. Administrative processing is initiated only after applicants fail to establish visa eligibility at their interviews, and such an order would not cure Plaintiffs' eligibility defects.

Further, Plaintiffs' "illegal throttling" claim also fails because any administrative processing "delay" is not traceable to the "type" of refusal the consular officers entered.

7

Rather, the delays are instead traceable to Plaintiffs' failure to establish eligibility for a visa at the time of their visa interview, which obligated consular officers, by statute and regulation, to refuse the applications. *See* 8 U.S.C. § 1201(g); Sections VIII-X *infra*.

Because the relief requested would not redress Plaintiffs' injury and Plaintiffs' injury is not traceable to the conduct alleged, the Court thus lacks jurisdiction over Plaintiffs' challenge to the collection of the Form DS-5535 post interview (Count One) and Plaintiffs' "illegal throttling" claim (Count Two).

## II. Assuming Jurisdiction, Dismissal Is Warranted as Plaintiffs Have Failed to State a Claim for Relief as to the Timing of Collection of Form DS-5535

Plaintiffs' challenge to the collection of the Form DS-5535 post interview (Count One) should be dismissed under Rule 12(b)(6) because Plaintiffs failed to plead a viable APA challenge to the collection of supplemental information via Form DS-5535 after their visa interviews. Plaintiffs allege that "preventing the collection of Form DS-5535, Supplemental Questions for Visa Applicants prior to immigrant visa interviews," Compl. ¶ 1, is unlawful because it contravenes 8 U.S.C. § 1202(b) which identifies "other documentary evidence" that accompanies the immigrant visa. *Id.* ¶ 2. Plaintiffs argue this practice is "arbitrary and capricious." *Id.* ¶ 450. Plaintiffs do not challenge the collection of this information, only the timing of collection.

Plaintiffs' challenge fails to state a claim for two reasons. First, Congress committed the decision of when to collect information via Form DS-5535 to the Secretary of State's discretion, 8 U.S.C. § 1202, thereby leaving the Court with no meaningful standard by which to review the policy. Second, even accepting Plaintiffs' allegations as true, the post-interview collection of the DS-5535 is not incongruent with and does not violate the INA.

### A. Plaintiffs' challenge to the timing of DS-5535 collection should be dismissed as it is non-justiciable.

Congress has given the Secretary of State broad discretion over the visa application process, including decisions about the "form and manner" of the immigrant visa application and what "additional information necessary to . . . the enforcement of the

8

immigration and nationality laws" needs to be collected, including when such information is to be collected. *See* 8 U.S.C. § 1202(a); 5 U.S.C. § 701(a)(2). Indeed, a court in this District recently dismissed a nearly identical claim for this reason, holding that Section 1202(a) "contains no standard by which the Court could judge the government's choices regarding when and how to collect the DS-5535 information." *Taherian v. Blinken*, No. 23-cv-1927-CJC-ADS, 2024 WL 1652625, at *6 (C.D. Cal. Jan. 16, 2024).

The APA prohibits judicial review of "agency action [that] is committed to agency discretion by law." *Trout Unlimited v. Pirzadeh*, 1 F.4th 738, 751 (9th Cir. 2021) (quoting 5 U.S.C. § 701(a)(2)). An action is committed to agency discretion when "statutes are drawn in such broad terms that in a given case there is no law to apply," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977), or "if no judicially manageable standards are available for judging how and when an agency should exercise its discretion," *Trout Unlimited*, 1 F.4th at 751 (citing *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)). That is because "[i]f no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible [for the Court] to evaluate agency action for 'abuse of discretion.'" *Ekimian v. INS*, 303 F.3d 1153, 1158 (9th Cir. 2002) (quoting *Heckler*, 470 U.S. at 830). Careful consideration of whether a standard is judicially manageable is paramount in the realm of foreign policy—especially in the context of determining whether to admit foreign nationals to the United States—given that "the responsibility for regulating the relationship between the United States and our [noncitizen] visitors has been committed to the political branches of the Federal Government." *See Mathews v. Diaz*, 426 U.S. 67, 81 (1976). In determining whether an action is committed to agency discretion, courts in the Ninth Circuit consider "the language of the statute and whether the general purposes of the statute would be endangered by judicial review." *Pinnacle Armor, Inc. v. U.S.*, 648 F.3d 708, 719 (9th Cir. 2011) (citation and quotation marks omitted). Courts "may also look to regulations,

established agency policies, or judicial decisions for a meaningful standard to review." *Id.* (citation and quotation marks omitted).

"[T]he power to admit or exclude [noncitizens] is a sovereign prerogative," *Landon v. Plasencia*, 459 U.S. 21, 32 (1982), that is "exercised by the Government's political departments largely immune from judicial control," *Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206, 210 (1953). Congress has given the Secretary of State broad discretion over the visa application process in 8 U.S.C. § 1202. While the specific decision of whether to grant or deny a visa application lies with consular officers, *see Hong Kong, Inc. v. Levin*, 800 F.2d 970, 971 (9th Cir. 1986), such decisions are governed by rules and regulations the Secretary prescribes, *see, e.g.*, *id.* ("[t]his court is without power to substitute its judgment for that of a Consul, *acting pursuant to valid regulations promulgated by the Secretary*, on the issue of whether a visa should be granted or denied." (emphasis added; citation and quotation marks omitted). Such regulations may be promulgated under 8 U.S.C. § 1202(a), as was the case in *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State*, 104 F.3d 1349 (D.C. Cir. 1997) ("*LAVAS*").

In *LAVAS*, the D.C. Circuit held that consular venue decisions were committed to agency discretion for two reasons. 104 F.3d at 1353. First, the court concluded that Section 1202(a) commits consular venue decisions "entirely to the discretion of the Secretary of State," noting, among others, that the Section 1202(a) authorizes the Secretary of State to "prescribe the place at which [noncitizens] apply for immigrant visas without providing substantive standards against which the Secretary's determination could be measured." *Id.* In other words, because "the broad language of the statute suggests that the State Department policy is unreviewable," *id.*, Section 1202(a) does not set out judicially manageable standards to evaluate such claims. Second, the court found the "nature of the administrative action counsels against review of plaintiffs' claim," since the State Department "is entrusted by a broadly worded statute with balancing complex concerns involving security and diplomacy." *Id.* Consequently, the Court held the plaintiffs' APA claims were unreviewable because "there is no law to apply." *Id.*

In *Taherian*, the court dismissed as judicially unreviewable a claim virtually identical to Plaintiffs' instant DS-5355 claim. *See Taherian*, 2024 WL 1652625, at *5 (challenge to the "allegedly belated timing of Defendants' DS-5355 collection"). In concluding that Section 1202 "contains no standard by which the Court could judge the government's choices regarding when and how to collect the DS-5535 information," the court rejected "[p]laintiffs' APA claim [regarding the DS-5355]" as it "would require the Court to intrude on a policy decision entrusted to another branch of government." *Id.* at *6 (noting plaintiffs' DS-5355 timing challenge is "not materially different" from *LAVAS*). Just as Section 1202(a) provides no judicially manageable standard as to the issue of *where* a noncitizen applies for an immigrant visa, it likewise provides no judicially manageable standard as to the issue of *when* the State Department collects information from visa applicants. *Id.*; *see also Doc Society, et al., v. Blinken*, No. 19-3632, 2023 WL 5174304, at * 3 (D.D.C. Aug. 11, 2023) (dismissing an APA challenge to a regulation that added questions to visa applications about social-media use as "judicially unreviewable" because "[e]valuating Plaintiffs' APA claim would require the Court to intrude on a . . . policy decision entrusted to another branch of government").

As in *LAVAS* and *Taherian*, "no judicially manageable standards are available for judging how and when an agency should exercise its discretion" with respect to the collection of Form DS-5355. *See Trout Unlimited*, 1 F.4th at 751 (citing Heckler, 470 U.S. at 830). Plaintiffs concede the collection of the DS-5535 is not required for every visa application. *See* Compl. ¶ 163 (stating the DS-5535 "now is required on *most* Iranian visa applicants") (emphasis added). Rather, Form DS-5355 is only collected "when the consular officer determines that the circumstances . . . indicate a need for greater scrutiny." 30 Day Notice of Proposed Information Collection: Supplemental Questions for Visa Applicants, 86 Fed. Reg. 8475, 8476 (Feb. 5, 2021). This information is requested under Section 1202(a), which mandates information that a noncitizen must provide on a visa application, including "additional information necessary to the identification of the applicant and the enforcement of the immigration and nationality laws as may be by

regulations prescribed." Section 1202 provides no "judicially manageable standard" by which a court may evaluate the Secretary's decision about when to collect certain information. *Taherian*, 2024 WL 1652625, at *6; *LAVAS*, 104 F.3d at 1353. This is particularly true where, as here, regulations also specify that a consular officer may require "additional information or questions on any relevant matter required by the consular officer" and that "[a]dditional statements made by the alien become a part of the visa application." 22 C.F.R. § 42.63(c). This decision undoubtedly involves questions of "security and diplomacy" that the *LAVAS* court concluded are not subject to judicial second-guessing, given the "complicated foreign policy matters" involved. 104 F.3d at 1353. Evaluating when this information is collected cannot be done "without infringing any of the State Department's prerogatives under the statute." *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1069 (9th Cir. 2015); *see Taherian*, 2024 WL 1652625, at *6 ("Evaluating Plaintiffs' APA claim regarding the DS-5535 would require the Court to intrude on a policy decision entrusted to another branch of government." (cleaned up)).

What's more, the statute contains no law to apply. The same statutory language at issue in *LAVAS*, the "form and manner" of the visa application, is at issue here. Section 1202(a)'s broad language simply states that noncitizens must apply for immigrant visas in the "form and manner . . . as shall be by regulations prescribed." That language does not cabin the Secretary's authority or provide any standard against which to judge the Secretary's exercise of discretion. *See LAVAS*, 104 F.3d at 1353.

Because the timing of DS-5535 collection "is committed to agency discretion by law," 5 U.S.C. § 701(a)(2), Plaintiffs' DS-5355 claim (Count One) should be dismissed for failure to state a viable claim.

### B. Collection of the DS-5535 after consular interviews is neither unlawful nor arbitrary and capricious.

Even if the Court were to conclude that Plaintiffs' DS-5355 claim is justiciable, Plaintiffs nevertheless fail to plead a claim for relief because the decision to collect the DS-5535 after a consular interview does not violate the APA. Accepting the Complaint's

allegations as true, the provisions Plaintiffs cited make clear that collecting the DS-5535 after the consular interview is not "arbitrary and capricious" under 5 U.S.C. § 706(2)(a). *See* Compl. ¶¶ 2, 450.

Courts may vacate agency actions only when, as relevant here, those actions are "found" to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law." 5 U.S.C. § 706(2); *Overton Park*, 401 U.S. at 416. As the Supreme Court has cautioned, a reviewing "court is not to substitute its judgment for that of the agency," and should uphold even "a decision of less than ideal clarity" so long as "the agency's path may reasonably be discerned." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513-14 (2009) (citation and quotation marks omitted). Ultimately, the question is whether the agency's decision is "within the bounds of reasoned decisionmaking." *Balt. Gas & Elec. Co. v. NRDC*, 462 U.S. 87, 105 (1983). Courts "will strike down an agency action as 'arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency,' or if the agency's decision 'is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Turtle Island Restoration Network v. U.S. Dep't of Com.*, 878 F.3d 725, 732 (9th Cir. 2017) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)) ("*State Farm* scenarios").

Here, Plaintiffs assert that the decision to collect Form DS-5535 only after consular interviews is "arbitrary and capricious," *see* Compl. ¶ 450, but have not and cannot allege any of the *State Farm* scenarios under which courts may conclude an action is arbitrary and capricious. *See Turtle Island*, 878 F.3d at 732.

Regarding the first *State Farm* scenario, Plaintiffs have no plausible claim that Defendants relied on factors Congress precluded them from considering. By its plain terms, Section 1202 grants the Secretary discretion to set the "form and manner" of immigrant visa applications and solicit information from applicants as "necessary" to

13

confirm the identity of the applicant, make eligibility determinations, and enforce immigration laws. 8 U.S.C. § 1202(a). In other words, Congress expressly permitted the Secretary to determine which visa applicants must provide a DS-5535 and when that information must be provided.

Plaintiffs' protestations that the Secretary did not consider certain supposed aspects of the problem (the second *State Farm* scenario) are unavailing here. *See* Compl. ¶¶ 418-22. Indeed, as to timeliness, the notices in the Federal Register for the DS-5535 explain the rationale for the timing of collection: the information will only be collected "when the consular officer determines that the circumstances of a visa applicant, a review of a visa application, or responses in a visa interview indicate a need for greater scrutiny." 86 Fed. Reg. 8475, 8476 (also permitting questions to be sent "electronically to the applicant"). The Secretary also responded to comments received in response to an earlier notice of the collection, 85 Fed. Reg. 67088 (Oct. 21, 2020). *See* Office of Information & Regulatory Affairs, Office of Mgmt. & Budget, *30-Day Supporting Statement DS-5535 Final 1405-0226.docx*, available at https://www.reginfo.gov/public/do/PRAViewDocument?ref_nbr=202102-1405-001. That the Secretary responded to comments—including one about the added time the DS-5535 would impose on visa applicants—undermines any claim that the Secretary's decision to collect DS-5535s only after a consular officer has determined it is necessary to do so runs counter to evidence before the agency (the third *State Farm* scenario).

Plaintiffs contend that "Defendants failed to consider the State Department's own institutional animus against and deeply irrational fixations on Iranian visa applicants and how the discretion inherent in the DS-5535 Scheme could be used as a pseudo-travel ban." Compl. ¶ 420. This conclusory allegation cannot survive the pleading stage. *See Gallinger v. Becerra*, 898 F.3d 1012, 1020 (9th Cir. 2018) ("It is true that animus need not be explicit in the legislative history for a plaintiff to establish impermissible intent. At the same time, we do not credit conclusory allegations of law that are unsupported by specific factual allegations. Here, Plaintiffs have not made *any factual allegations to support their theory*

*of 'impermissible animus.'*") (emphasis added). State Department statistics undermine Plaintiffs' inaccurate statement that DS-5535 collection is a "pseudo-travel ban." *See* Dep't of State, Bureau of Consular Affairs, *Report of the Visa Office 2023*, *Immigrant and Nonimmigrant Visa Ineligibilities (by Grounds for Refusal Under the Immigration and Nationality Act): Fiscal Year 2023*, at 2 (available at https://travel.state.gov/content/dam/visas/Statistics/AnnualReports/FY2023AnnualReport/FY2023_AR_TableXIX.pdf) (providing that in fiscal year 2023, 220,430 immigrant visa applicants and 829,164 nonimmigrant visa applicants refused under Section 1201(g) overcame ineligibility findings); *see also supra* footnotes 3-4 (explaining that multiple Plaintiffs overcame ineligibility after being refused under Section 1201(g)). And, while Plaintiffs baldly assert that the so-called DS-5535 Scheme "could be used in bad faith by Defendants as a tool to evade judicial review of the timeliness of visa adjudications," Compl. ¶ 421, Plaintiffs fail to support this allegation with any facts demonstrating Defendants have exhibited bad faith or attempted to avoid any legislatively-permitted judicial review.

Finally, the fourth *State Farm* scenario is not analogous to the instant case. Far from being "so implausible" as to not be the product of agency expertise, the collection of the DS-5535 is part of a broader Executive Branch effort to strengthen screening and vetting tools. *See, e.g.*, Notice of Information Collection Under OMB Emergency Review: Supplemental Questions for Visa Applicants, 82 Fed. Reg. at 20957 ("The Department proposes requesting the following information, if not already included in an application, from a subset of visa applicants worldwide, in order to more rigorously evaluate applicants for terrorism or other national security-related visa ineligibilities . . . ."). The only evidence Plaintiffs identify to support their claim that the collection of the DS-5535 after consular interviews is arbitrary and capricious is the website for the U.S. Embassy in Ankara which suggests that applicants include their entire work history on the DS-260. Compl. ¶ 451. But the DS-260 is completed as part of pre-processing at the NVC and is not executed by the noncitizen or reviewed by a consular officer until the noncitizen appears before the

consular officer at the interview appointment. The U.S. Embassy in Ankara's suggestion regarding an un-executed form does not establish that collecting the DS-5535 only after an interview and only when a consular officer has determined it is necessary is arbitrary and capricious.

Plaintiffs seemingly argue that the collection of the DS-5535 only after the interview "is not in accordance with law" because it prevents Plaintiffs from furnishing their application to a consular officer and thus violates 8 U.S.C. § 1202(b). *See* Compl. ¶¶ 2-3, 449. But the collection of the DS-5535 after the consular interview is consistent with Section 1202(b). The DS-5535 is only collected "when the consular officer determines that the circumstances of a visa applicant, a review of a visa application, or responses in a visa interview indicate a need for greater scrutiny." 82 Fed. Reg. at 20957. Per 22 C.F.R. § 42.62(b)(1), a consular officer must determine an immigrant-visa applicant's "eligibility to receive a visa" based in part on "the applicant's representations" at a consular interview. Officers also "ha[ve] the authority to require that the [noncitizen] answer any question deemed material to [an eligibility determination]." *Id.* § 42.62(b)(2). These provisions imply that a consular officer may properly determine at or after an interview that "other records or documents" are "required" under 8 U.S.C. § 1202(b).

Moreover, per 22 C.F.R. § 42.63(c), "[a]ll documents required under the authority of § 42.62 are considered papers submitted with the alien's application." Section 42.63(c) clearly envisions a situation in which a consular officer determines at a consular interview that "other records or documents" are "required," and additional document submissions occurs thereafter. Indeed, if consular officers had to determine before consular interviews whether "other records or documents" were "required" (as Plaintiffs imply), there would be no need for § 42.63(c) to specify that "documents required under the authority of § 42.62 are considered papers submitted with the alien's application." Sections 42.62(b) and 42.63(c) thus support the conclusion that Section 1202(b) permits consular officers to request DS-5535 responses after interviews.

Accordingly, collecting the DS-5535 after a consular interview—and only after a consular officer determines it is necessary—complies with 8 U.S.C. § 1202(b) and the Court should therefore dismiss this claim under Rule 12(b)(6).

### III.    Assuming Jurisdiction, Dismissal of Plaintiffs' "Illegal Throttling" Claim Is Further Warranted as Plaintiffs' Conclusory Challenge to Visa Refusals Under 8 U.S.C. § 1201(g) Fails to State a Claim

Plaintiffs' "illegal throttling" claim (Count Two) should also be dismissed because Plaintiffs fail to plead a viable APA challenge to consular officers' refusal of visa applications under 8 U.S.C. § 1201(g). Plaintiffs allege that consular officers' citation to Section 1201(g) when refusing visa applications is unlawful because the officers are not reaching "final" decisions on the applications. Compl. ¶ 453. Plaintiffs claim that consular officers' use of these "non-final" Section 1201(g) refusals is evidence of an agency policy to "throttle legal immigration." *Id.* Plaintiffs do not challenge the legality of citing to Section 1201(g) as a refusal ground, only the motive behind such refusals.

To state a claim under Rule 8 and thus "survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). In other words, a complaint "must include sufficient 'factual enhancement' to cross the 'line between possibility and plausibility.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (quoting *Twombly*, 550 U.S. at 556-57). The Complaint, however, alleges no facts to support the conclusion that Defendants have a policy of using visa refusals under Section 1201(g) to "throttle legal immigration." *See* Compl. ¶¶ 452-56. Plaintiff's "illegal throttling" claim thus fails on this dispositive ground alone.[5] *See*

---

[5]    Plaintiffs' "illegal throttling" claim (Count Two) should further be dismissed under Rule 12(b)(6) because: (1) Plaintiffs allege no facts indicating that consular officers refusing visas under Section 1201(g) as required by regulation constitutes an "illegal throttling" policy, *see Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (requiring plaintiffs to establish a final agency action as a prerequisite to bringing a claim under APA § 706(2)), *Lujan*, 497 U.S. at 890 (rejecting APA challenged to agency's alleged "land withdraw renewal program" as plaintiffs did not "refer to a single . . . order or regulation" establishing final agency action); and (2) Plaintiffs fail to plausibly plead that consular *(footnote cont'd on next page)*

*Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021) (affirming dismissal of complaint for failure to state a claim where "the district court correctly concluded [plaintiff's] complaint did not allege facts sufficient to support his ADA claim because the complaint primarily recited legal conclusions"); *see also Yocom v. USCIS*, No. 23-55430, 2024 WL 2206342, at *3 (9th Cir. May 16, 2024) (affirming Rule 12(b)(6) dismissal in immigration case where plaintiffs' complaint "d[id] not allege facts to support" their due process claim).

## IV.    This Court Is an Improper Venue for the Ninety-Four Co-Plaintiffs

The Court should dismiss for improper venue the ninety-four co-Plaintiffs who do not reside in this District. "Whether to dismiss for improper venue, or alternatively to transfer venue to a proper court, is a matter within the sound discretion of the district court." *Cabrera v. Ford Motor Co.*, No. 23-1402, 2023 WL 6307946, at *2 (N.D. Cal. Sept. 26, 2023) (citation omitted). When a defendant challenges venue, the plaintiff must show that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). In cases involving government officials, venue is proper in the district where "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1).

Here, Defendants are officials of governmental agencies in the District of Columbia. *See Kashin v. Kent*, 457 F.3d 1033, 1037 (9th Cir. 2006) ("[T]he Department of State, is located within the District of Columbia. The Department of State's foreign actions are "inextricably bound up with the District of Columbia in its role as the nation's capital."); *see also E.V. v. Robinson*, 200 F.Supp.3d 108, 113 n.3 (D.D.C. 2016). Consular officers abroad adjudicated Plaintiffs' visa applications. Any allegedly delayed adjudication, likewise, occurred abroad. As such, Plaintiffs should have brought this suit in either the

---

officers have a nondiscretionary duty to issue a "final decision" at the conclusion of a visa interview, *see* Sections VIII-X *infra*.

district where they or Defendants reside. Here, only Plaintiff Ariani resides in this District. Compl. ¶ 28. The co-Plaintiffs' claims are thus appropriately situated in the District of Columbia, where Defendants reside. As such, the Court should dismiss the ninety-four co-Plaintiffs for improper venue.

Plaintiffs assert that only one plaintiff needs to reside in this District for venue to be proper for all ninety-six Plaintiffs. *Id.* ¶ 29 (citing *Mosleh v. Pompeo*, No. 19-656, 2019 WL 2524407 (E.D. Cal. June 19, 2019); *Californians for Renewable Energy v. U.S. EPA*, No. 15-3292, 2018 WL 1586211 (N.D. Cal. Mar. 30, 2018)). But Plaintiffs' application of *Mosleh* and *Californians* to the instant facts is an overextension of cases reasoning that "venue is proper in a multi-plaintiff case if *any* plaintiff resides in the District." *See Californians*, 2018 WL 1586211, at *5 (emphasis in original; relying on *Exxon Corp. v. F.T.C.*, 588 F.2d 895, 898-99 (3d Cir. 1978)); *Mosleh*, 2019 WL 2524407, at *1 (relying on *Californians*, 2018 WL 1586211, at *5-6).

In *Exxon*, the case supplying the reasoning *Californians* relied on, the Third Circuit reasoned that "requiring every plaintiff in an action against the federal government or an agent thereof to independently meet section 1391(e)'s [venue] standards would result in unnecessary multiplicity of litigation." 588 F.2d at 898. Importantly, in *Exxon* there were only five plaintiffs, three of which were venued outside the district, and all of which sought the same relief. *Id.* at 898-99. Here, by contrast, there are ninety-six plaintiffs who seek the same relief with respect to the DS-5535 and "illegal throttling" claims (Counts One and Two) but attach to those claims factually distinct unreasonable delay claims. *Exxon*'s reasoning, which was concerned with requiring plaintiffs to bring separate actions in different districts for the same relief, simply should not be extended to situations such as this where ninety-six plaintiffs bring ninety-three separate unreasonable delay claims

requiring independent reasonableness analyses and seeking different relief, loosely connected by insufficient policy claims.[6]

This is particularly true where, as here, Plaintiffs purported policy claims—DS-5535 collection and "illegal throttling" (Counts One and Two)—should be dismissed for lack of jurisdiction and alternatively for failure to state a claim. *See* Sections I-III *supra*. Accordingly, the Court should dismiss the ninety-four out-of-District co-Plaintiffs for improper venue under Rule 12(b)(3). *See Chorostecki v. Blinken*, No. 24-cv-1240-PDW-JC, ---F.Supp.3d---, 2024 WL 3561944, at *4 (C.D. Cal. July 26, 2024) (dismissing immigration mandamus suit under Rule 12(b)(3)).

**V.    Alternatively, the Court Should Drop the Ninety-Two Co-Plaintiffs Whose Refused Applications Remain in Administrative Processing for Misjoinder Under Rule 21 or, at the Very Least, Sever Those Co-Plaintiffs' Unreasonable Delay Claims Under Rule 21**

Should the Court decline to dismiss for improper venue, the Court should drop the ninety-two co-Plaintiffs whose refused applications remain in administrative processing under Rule 21, which provides that a court may, on motion, or *sua sponte*, add or drop a party at any time for misjoinder of parties or sever any claim. Fed. R. Civ. P. 21. Rule 20(a) joinder is appropriate where "(1) the plaintiffs asserted a right to relief arising out of the same transaction and occurrence *and* (2) some question of law or fact common to all the plaintiffs will arise in the action." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (emphasis added); Fed. R. Civ. P. 20(a). "If the test for permissive joinder is not satisfied, a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance." *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997).

---

[6]    The *Exxon* court assured the government that its holding would not "open the doors to the joinder of plaintiffs with frivolous claims so as to circumvent venue requirements." 588 F.2d at 899. The court explained that "[w]here a district court finds that such a ploy has been attempted, it may dismiss the frivolous claims and not permit the other parties to use those claims as a basis for providing themselves with proper venue." *Id.*

The Court should drop the ninety-two co-Plaintiffs because they fail to demonstrate that joinder is appropriate under Rule 20(a). To begin, Plaintiffs' DS-5535 and "illegal throttling" claims (Counts One and Two) fail for lack of standing and failure to state a claim, and Count One is non-justiciable, *see* Sections I-III *supra*, thus eliminating the common occurrence or question needed to unite these Plaintiffs.

The remainder of Plaintiffs' claims—unlawful withholding and unreasonable delay claims (Counts Three, Four, Five, and Six)—do not satisfy Rule 20(a). First, Plaintiffs' withholding and delay claims and their claim to relief do not "aris[e] out of the same transaction and occurrence." *See Coleman*, 232 F.3d at 1296. Visa issuance is a highly particularized, fact intensive process for each applicant. For example, the type of visa sought, the applicant's factual background, what security screening may be needed, when the applicant applied, and the consulate adjudicating their visa all contribute to the pace of adjudicating a visa petition. *See* Dep't of State, Bureau of Consular Affairs, *Administrative Processing Information*, available at: https://usaodc.click/AdminProcessInfo (last visited July 24, 2024) ("The duration of the administrative processing will vary based on the individual circumstances of each case."). The ninety-three refused visa applications currently in administrative processing (Plaintiff Mikaniki plus ninety-two co-Plaintiffs) are distinct from one another, and Plaintiffs have not alleged that their visa delays arise from the same transaction or occurrence. Second, Plaintiffs do not have a common question of law or fact. *See Coleman*, 232 F.3d at 1296. Plaintiffs' own pleadings underscore this point. For example, Plaintiffs allege varying lengths of delay, *e.g.*, Compl. ¶¶ 30 (six months), 139 (twelve months), 188 (eighteen months), and visa classes sought, *e.g.*, *id.* ¶¶ 30 (EB-2 visa), 50 (EB-1 visa), 171 (EB-3 visa). Courts have routinely observed that "[w]hat constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." *Gelfer v. Chertoff*, No. 06-6724, 2007 WL 902382, at *2 (N.D. Cal. Mar. 22, 2007) (quotation marks omitted). The Court's analysis of delay in multiple, distinct visa applications together would be burdensome and disjointed as each Plaintiff's application

stands on its own and does not arise out of the same transaction or occurrence. For these reasons, the Court should drop these ninety-two co-Plaintiffs under Rule 21.

Even if the Court does not drop the ninety-two co-Plaintiffs from this case, the Court should nevertheless sever those co-Plaintiffs' unreasonable delay claims in Counts Five and Six. Courts "ha[ve] broad discretion in determining whether to sever claims under Rule 21." *Cupp v. Harris*, No. 16-523, 2018 WL 4599588, at *3 (E.D. Cal. Sept. 21, 2018) (citing *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1992)); *Coleman*, 232 F.3d at 1297. "Claims may be severable under Rule 21 if they arise from different factual situations or pose different legal questions," or "if it will serve the ends of justice and further the prompt and efficient disposition of litigation." *Cupp*, 2018 WL 4599588, at *3 (citations and quotation marks omitted). Courts must weigh "the interests of judicial efficiency" against the "potential prejudice" to the plaintiffs whose claims would be severed. *See Coleman*, 232 F.3d at 1297; *Cupp*, 2018 WL 4599588, at *3.

Here, severance is warranted because, as discussed *supra*, the ninety-two co-Plaintiffs' unreasonable delay claims arise from different factual situations and pose different legal questions. *See Cupp*, 2018 WL 4599588, at *6 (granting Rule 21 motion to sever claims because "[u]ltimately, the [complaint] involves completely different plaintiffs, defendants, events, and jurisdictions, and the Court is unable to discern any reason for these claims being brough together"). Additionally, severing the co-Plaintiffs' unreasonable delay claims is appropriate to alleviate the undue burden imposed in requiring the agency and the Court to conduct ninety-three individualized reasonableness analyses in a single case (Plaintiff Mikaniki plus ninety-two co-Plaintiffs). *See Stith v. California*, No. 23-947, 2023 WL 4274043, at *3-4 (E.D. Cal. June 29, 2023) (holding severance of claims was warranted because "[t]he joinder of multiple Plaintiffs with varying factual allegations does not promote judicial economy and confuses and complicates the issues because there are questions of fact and causation unique to each of their alleged injuries" (citation and quotation marks omitted)). Accordingly, if the Court

does not drop the ninety-two co-Plaintiffs, it should nevertheless sever their unreasonable delay claims (Counts Five and Six) under Rule 21.

## VI.    The Court Should Dismiss Certain Plaintiffs for Forum Shopping

"Forum shopping refers to [t]he practice of choosing the most favorable jurisdiction or court in which a claim might be heard." *R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 981 (9th Cir. 2011) (citation and quotation marks omitted; collecting cases finding plaintiffs engaged in forum shopping). Telltale signs of forum shopping include choosing a forum for tactical advantages, including more favorable law, "the habitual generosity of juries . . . in the forum district," or "the inconvenience and expense to the defendants resulting from litigation in that forum." *Vivendi SA v. T-Mobile USA*, Inc., 586 F.3d 689, 695 (9th Cir. 2009). If the Court finds that plaintiffs have engaged in forum shopping, it may dismiss their case. *Coalition for Clean Air v. VWR Int'l, LLC*, 922 F.Supp.2d 1089, 1112 (E.D. Cal. 2013) (collecting cases). A court can reasonably infer forum shopping when the plaintiffs, represented by the same counsel, filed identical suits in other venues, and then voluntarily dismissed them in close proximity to filing another lawsuit. *Walker v. Discover Fin. Servs.*, No. 10-3013, 2010 WL 4269193, at *3 (N.D. Cal. Oct. 25, 2010).

Here, two Plaintiffs—Amirreza Moini, Compl. ¶ 50, and Sayyed Mahdi Ziaei, *id.* ¶ 319—filed identical lawsuits challenging alleged visa adjudication delay in another venue with the same counsel representing Plaintiffs in this action. *See Moini v. Blinken*, No. 23-2245 (D.D.C.) (Plaintiff Moini) (voluntarily dismissed on May 26, 2024 after the parties fully briefed defendant's motion to dismiss); *Ziaei v. Blinken*, No. 23-1461 (D.D.C.) (Plaintiff Ziaei) (voluntarily dismissed on Nov. 21, 2023 before responding to defendant's motion to dismiss). Four other plaintiffs—Esmaeil Sadeghi, Compl. ¶ 266, Paria Karimi, *id.* ¶ 268, Fatemeh Safarpour Dizboni, *id.* ¶ 281, and Ayou Amini, *id.* ¶ 284—also filed identical challenges to alleged visa adjudication delay in other venues with different counsel. *See Sadeghi, et al. v. Blinken et al.*, No. 23-3007 (S.D. Tex.) (Plaintiffs Sadeghi and Karimi) (voluntarily dismissed on May 14, 2024 after the parties

23

fully briefed defendants' motion to dismiss); *Dizboni et al. v. Blinken et al.*, No. 23-1480 (D.D.C.) (Plaintiffs Dizboni and Amini) (same).

As just detailed, rather than await the courts' decisions on the sufficiency of their pleadings, five of these Plaintiffs voluntarily dismissed their cases in other venues just days or weeks before Plaintiffs filed the instant Complaint on May 31, 2024. The other, Plaintiff Ziaei, rather than respond to the government's motion to dismiss, voluntarily dismissed his prior case only six months before the filing of the instant Complaint. As in *Walker*, where the Court reasonably inferred forum shopping when plaintiffs filed identical lawsuits with the same counsel and the timing of dismissal of those lawsuits suggested plaintiffs were trying to avoid an unfavorable outcome, *see* 2010 WL 4269193, at *3, this Court should dismiss the six above-identified Plaintiffs.

## VII. Dismissal of Plaintiffs' Unlawful Withholding and Unreasonable Delay Claims Is Warranted as Plaintiffs Name Defendants Who Cannot Provide the Relief Requested

With respect to Plaintiffs' remaining withholding and unreasonable delay claims (Counts Three, Four, Five, and Six), the Court should dismiss this case as named Defendants, Secretary Blinken and Director Jachim, have no role in re-adjudicating the visa applications in question. As the Ninth Circuit has emphasized, "only State Department consular officers have the power to issue visas. . . . Not even the Secretary of State has the power to review a consular official's visa decision." *Patel v. Reno*, 134 F.3d 929, 933 (9th Cir. 1997) (citing 8 U.S.C. §§ 1101(a)(9), (16); 1201(a)); *Hong Kong, Inc. v. Levin*, 800 F.2d 970, 971 (9th Cir. 1986) ("The [INA] thereby conferred upon consular officials the authority to issue or withhold visas. . . . Congress specifically exempted the exercise of this power from review by the Secretary of State." (internal citation omitted)); *accord Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (explaining the INA "grants consular officers exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations").

Where a plaintiff challenges a policy or practice of an Executive Branch agency such as the State Department, the head of the agency is ordinarily the appropriate defendant and target of any potential injunction or decree issued by the Court. But Plaintiffs withholding and delay claims do not seek to challenge a State Department policy, rule, practice, or regulation. Rather, Plaintiffs seek to compel action on specific visa applications, which is the exclusive province of a U.S. consulate. *See* Compl. at 133 ¶¶ D-E; *cf.* 5 U.S.C. § 702 (An APA injunction "shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance.").

In *Patel*, plaintiffs brought a mandamus suit to compel action on a visa application. 134 F.3d at 931. In addition to the U.S. Consulate in Bombay where the application was processing and an official at the Immigrant Visa Section at Bombay, the plaintiffs sued the Attorney General, the Immigration and Naturalization Service ("INS"), and the INS acting director. *Id.* The Court held that "summary judgment was appropriately granted in favor of the Attorney General, the INS, and [the acting director]" because they were "without power to issue a visa." *Id.* at 933. Likewise, here, Secretary Blinken and Director Jachim lack the power to issue a visa. Accordingly, as in *Patel*, they should be dismissed from this action.

## VIII. Regardless, the Court Lacks Jurisdiction over Plaintiffs' Unlawful Withholding and Unreasonable Delay Claims Because Plaintiffs Fail to Demonstrate that Consular Officers Have a Mandatory, Non-Discretionary Duty to Re-Adjudicate Visa Applications Already Refused Pursuant to 22 C.F.R. §§ 41.121(a) and 42.81(a)

Plaintiffs seek a writ of mandamus under 28 U.S.C. § 1361 and bring claims under the APA. "Mandamus is an extraordinary remedy and is available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available." *Patel*, 134 F.3d at 931; 28 U.S.C. § 1361. "Failures to act are sometimes remediable under the APA, but not always." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61 (2004). A claim alleging that an agency has

25

unlawfully withheld action "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Id.* at 64 (emphases in original). As such, a "court can compel agency action under [Section 706(1)] only if there is 'a specific, unequivocal command' placed on the agency to take a 'discrete agency action,' and the agency has failed to take that action." *Viet. Veterans of Am. v. Cent. Intel. Agency*, 811 F.3d 1068, 1075 (9th Cir. 2016) (quoting *id.* at 63-64). The "agency action must be pursuant to a legal obligation so clearly set forth that it could traditionally have been enforced through a writ of mandamus." *Id.* at 1075-76 (internal quotation marks omitted). Accordingly, "for a claim of unreasonable delay to survive, the agency must have a statutory duty in the first place." *San Francisco BayKeeper v. Whitman*, 297 F.3d 877, 885 (9th Cir. 2002). Absent such a clear, non-discretionary duty, an agency's delay to act, however long, cannot be unlawful or unreasonable. Plaintiffs here cannot surmount this initial obstacle.

First, the allocation of consular resources—including the consular officer's adjudication of visas—is discretionary. Congress has given the Secretary broad, discretionary authority to "administ[er] and . . . enforce[]" the INA, 8 U.S.C. § 1104, and to "administer, coordinate, and direct the Foreign Service of the United States and the personnel of State," 22 U.S.C. § 2651a. Congress has also given Chiefs of Mission at U.S. embassies and consulates broad, discretionary authority to oversee U.S. government operations in foreign countries. *See id.* § 3927. The Secretary is responsible for over 230 U.S. posts worldwide, and the Secretary and each Chief of Mission must allocate consular resources to provide a broad range of important services to U.S. citizens abroad as well as to provide visa services to noncitizens. *See* 8 U.S.C. § 1104(a); 22 U.S.C. §§ 1731–1733, 1741–1741f, 2651a, 3927.

The State Department's discretion over the visa process includes the pace of visa adjudications. Congress granted the Secretary the discretion to set the form, manner, and place for a visa application. 8 U.S.C. § 1202(a) ("Every [noncitizen] applying for an immigrant visa . . . shall make application therefor in such form and manner and at such

26

place as shall be by regulations prescribed."). Granting the Secretary "the discretion to promulgate regulations governing the process of adjudication necessarily includes a grant of discretion over the pace of adjudication." *Beshir v. Holder*, 10 F.Supp.3d 165, 174 (D.D.C. 2014). In other words, "the statutory grant of discretion over *how*" to issue visas "necessarily carries with it the discretion to determine *when*" those decisions will be made. *See Karam v. Garland*, No. 21-915, 2022 WL 4598626, at *7 (D.D.C. Sept. 30, 2022) (internal quotation marks omitted; analyzing 8 U.S.C. § 1571(c)(1), which grants the Attorney General discretion regarding the admission of refugees). Indeed, the lack of a "congressionally-imposed deadline or timeframe to complete the adjudication of [visa] applications supports the conclusion that the pace of [re-adjudication of a visa application] is discretionary and thus not reviewable." *See Beshir*, 10 F.Supp.3d at 176 (discussing the Attorney General's discretion regarding the admission of refugees).

Second, any duty consular officers have to act on a noncitizen's visa applications is satisfied when officers refuse applications under Section 1201(g). Both 22 C.F.R. §§ 41.121(a) and 42.81(a) require consular officers to issue or refuse a visa at the end of consular interviews. Section 1201(g) then requires officers to refuse visas to applicants if "it appears to the consular officer, from statements in the application, or in the papers submitted therewith," or "the consular officer knows or has reason to believe that such [noncitizen] is ineligible to receive a visa . . . under [8 U.S.C. § 1182], or any other provision of law." 8 U.S.C. § 1201(g)(1), (3). As such, courts in this District have recognized that refusal of a visa application under Section 1201(g) at the conclusion of a consular interview satisfies the duty owed to the applicant. *See, e.g.*, *OC Modeling, LLC v. Pompeo*, No. 20-cv-1687-PA-MAA, 2020 WL 7263278, at *3 (C.D. Cal. Oct. 7, 2020) (recognizing that a refusal under Section 1201(g) satisfies the consular officer's duty to act); *Senobarian v. Blinken*, No. 23-cv-7208-ODW-MAA, 2024 WL 897566, at *3 (C.D. Cal. Feb. 29, 2024) ("[T]he State Department refused Senobarian's visa application under Section 221(g) of the INA, completing the action required by 22 C.F.R. § 41.121."); *see also Karimova*, 2024 WL 3517852, at *4-6 (holding the refusal of a visa at the conclusion

27

of a consular interview satisfies an officer's duty to act); *Yaghoubnezhad v. Stufft*, No. 23-3094, --- F.Supp.3d ---, 2024 WL 2077551, at *8 (D.D.C. May 9, 2024) ("In refusing Plaintiffs' applications under § [1201(g)] after their interviews with consular officers, State complied with the regulations governing visa adjudications. It thereby discharged its nondiscretionary duty."); *Gul v. Blinken*, No. 24-787, 2024 WL 3400107, at *3 (D.D.C. July 11, 2024) ("Here, the *only* duty that the statute or regulations impose on consular officers is a duty to grant or refuse a visa." (emphasis in original; citation and quotation marks omitted)).[7]

Here, the consular officers complied with 8 U.S.C. § 1201(g) and 22 C.F.R. §§ 41.121(a) and 42.81(a), refusing Plaintiffs' visa applications under Section 1201(g) when they failed to carry their burden of establishing eligibility. *See Tesfaye v. Blinken*, No. 22-411, 2022 WL 4534863, at *5 (D.D.C. Sept. 28, 2022) ("It is unclear to the Court what 'non-discretionary duty' purportedly imposed by this regulation has been 'unlawfully withheld.' Plaintiffs themselves indicate that after their interview, their applications were 'refused' under [Section 1201(g)]—in other words that the consular officer took the precise action directed by the regulation."); *Senobarian*, 2024 WL 897566, at *3 (same, citing *id.*); *Karimova*, 2024 WL 3517852, at *5 ("[T]he consular officer has

---

[7]    Defendants acknowledge recent decisions by this Court finding a nondiscretionary duty in analogous circumstances: *Mahboubian v. Blinken*, No. 24-cv-175-FWS-JDE, Filing No. 20 (C.D. Cal. July 3, 2024); *Esmaeilzadeh v. Blinken*, No. 23-cv-2118-FWS-JDE, Filing No. 31 (C.D. Cal. July 3, 2024). Respectfully, Defendants disagree with the Court's rationale regarding the duty issue. In *Esmaeilzadeh*, the Court focused only on whether 5 U.S.C. § 555(b) imposes a duty on agencies to act on matter presented to them within a reasonable time and did not decide whether the consular officers in those cases had already fulfilled their respective duties when they refused the applicants' visas under Section 1201(g) at the end of the consular interviews as required by 22 C.F.R. §§ 41.121(a) and 42.81(a). *See* Filing No. 31 at 9-10. In *Mahboubian*, the Court held that consular officers have a mandatory duty to adjudicate refused applications a second time because the initial refusal is not a "final adjudication" and the applications "remain in administrative processing." Filing No. 20 at 13 n.3. But the Court's rationale adds a "finality" element to visa refusals that is not required by statute or regulation. *See* 22 C.F.R. §§ 41.121(a), 42.81(a). Indeed, the D.C. Circuit in *Karimova*, 2024 WL 3517852, at *3, 6, recently rejected the contention that consular officers have a legal duty to reach a "final decision" on an already-refused visa application that is placed in administrative processing. As such, Defendants respectfully ask the Court to revisit its duty analysis in this case.

already acted on [the plaintiff's] application."). Consequently, the relief Plaintiffs request—adjudication of their visa applications, Compl. at 133, ¶¶ D-E—is moot. *See Zhou v. Chertoff*, No. 08-4523, 2009 WL 2246231, at *2 (N.D. Cal. July 24, 2009) ("Here, however, the consulate has issued a decision pursuant to [Section 1201(g)], and plaintiff's request for mandamus relief is moot."). Because consular officers issued a decision at the conclusion of the interviews—the only action required of them—there is no further non-discretionary action for Defendants to take. In asking the Court to order administrative processing—a discretionary, internal agency process—to conclude, *see* Compl. at 133 ¶¶ D-E, Plaintiffs are essentially asking the Court to order the consular officers to adjudicate their applications a second time, which they have no duty to do in general or within any particular timeframe.

Plaintiffs contend that APA § 555(b) imposes a mandatory duty on consular officers to conclude administrative processing "within a reasonable time." Compl. ¶¶ 23, 378, 484. But, given that administrative processing is a discretionary internal procedure initiated after consular officers have fulfilled their legal duty, Plaintiffs' contention lacks merit. Courts may enforce Section 555(b)'s reasonable time requirement only when "there is 'a specific, unequivocal command' placed on the agency to take a 'discrete agency action,' and the agency failed to take that action." *Ghalambor v. Blinken*, No. 23-cv-9377-MWF-BFM, 2024 WL 653377, at *2 (C.D. Cal. Feb. 1, 2024) (quoting *Viet. Veterans of Am.*, 811 F.3d at 1075-76). As just discussed, the consular officers fulfilled their duty to adjudicate Plaintiffs' visa applications when they refused visas after Plaintiffs failed to demonstrate eligibility. The officers have no statutory or regulatory duty to reach a second adjudication. Section 555(b) is therefore not implicated. *See Karimova*, 2024 WL 3517852, at *3-4 (holding that Section 555(b) does not impose a mandatory duty given its "generality and indistinctness" and, moreover, that the plaintiff's "matter" already concluded when the consular officer refused her visa application).

Accordingly, the Court should dismiss Plaintiffs' withholding and unreasonable delay claims (Counts Three, Four, Five, and Six) without leave to amend.

29

1
2    **IX.    The Consular Nonreviewability Doctrine Renders Plaintiffs' Unlawful Withholding and Unreasonable Delay Claims Non-Justiciable**

3          Even if the Court determines it has jurisdiction, the consular nonreviewability
4    doctrine precludes Plaintiffs' unlawful withholding and unreasonable delay claims
5    (Counts Three, Four, Five, and Six) because the Court may not review the consular
6    officer's decision to deny Plaintiffs' visa applications. Under this doctrine, "'[i]t has been
7    'consistently held that the consular official's decision to issue or withhold a visa is not
8    subject either to administrative or judicial review.'" *Bustamante v. Mukasey*, 531 F.3d
9    1059, 1061 (9th Cir. 2008) (quoting *Hong Kong, Inc.*, 800 F.2d at 971). The Supreme
10   Court recently reaffirmed the consular nonreviewability doctrine, stating that when
11   Congress "delegate[s] to executive officials the discretionary authority to admit
12   noncitizens immune from judicial inquiry or interference," "the action of an executive
13   officer to admit or to exclude a noncitizen is final and conclusive." *Dep't of State v. Muñoz*,
14   144 S. Ct. 1812, 1820 (2024) (citations, alterations, and quotation marks omitted). The
15   Court emphasized that "[t]he Judicial Branch has no role to play unless expressly
16   authorized by law," and that, because the "[INA] does not authorize judicial review of a
17   consular officer's denial of a visa," "as a rule, the federal courts cannot review those
18   decisions." *Id.* (citation and quotation marks omitted).

19         Like the INA, "the APA provides no avenue for review of a consular officer's
20   adjudication of a visa on the merits." *Allen v. Milas*, 896 F.3d 1094, 1108 (9th Cir. 2018).
21   The Ninth Circuit's reasoning is consistent with the D.C. Circuit's reasoning in *Saavedra*
22   *Bruno v. Albright*, 197 F.3d 1153, 1160 (D.C. Cir. 1999), which found that "[i]n terms of
23   APA § 702(1), the doctrine of consular nonreviewability—the origin of which predates
24   passage of the APA—thus represents one of the 'limitations on judicial review' unaffected
25   by Section 702's opening clause granting a right of review to persons suffering 'legal
26   wrong' from agency action." This recognized limitation on judicial review also extends to
27   "[a]n action in a court of the United States . . . stating a claim that . . . an officer . . . failed
28   to act." 5 U.S.C. § 702. *Accord Karimova*, 2024 WL 3517852, at *6 ("Indeed, this court

has already held that the [APA's] general applicability 'runs aground' when it comes to consular visa decisions." (quoting *Saavedra Bruno*, 197 F.3d at 1162)). The Ninth Circuit similarly noted that "[w]hether considered under § 702(1) or (2), the doctrine of consular nonreviewability is a limitation on the scope of our judicial review and thus precludes our review under § 706." *Allen*, 896 F.3d at 1108.

Plaintiffs characterize this suit as a challenge to agency delay in adjudicating their visa applications. *E.g.*, Compl. ¶ 1. At bottom, however, this suit challenges the officers' decisions to refuse Plaintiffs' visa applications. Courts "have vigilantly guarded against plaintiffs' creative attempts to plead around the doctrine of consular nonreviewability." *OC Modeling*, 2020 WL 7263278, at *2 (citing *Chun v. Powell*, 223 F.Supp.2d 204, 206 (D.D.C. 2002)). Ordering the consular officers to conclude administrative processing and make a second decision on Plaintiffs' applications would essentially be an order forcing the officers to revisit their decisions to refuse the visas, which the consular nonreviewability doctrine forbids. *See id.* at *3 ("Because the consular office has already rendered a decision on Plaintiff's visa application" under Section 1201(g), "this Court lacks subject matter jurisdiction under the doctrine of consular nonreviewability.");[8] *Yaghoubnezhad*, 2024 WL 2077551, at *11 (ordering a consular officer to take further adjudicatory action on a refused visa application "is, in effect, no different from ordering the State Department to reopen a dispositive adjudication"); *see also Karimova*, 2024 WL 3517852, at *6 (noting that because the consular nonreviewability doctrine precludes APA review of consular visa decisions, "we would not even be able to review the merits of the consular officer's decision if we ordered her to act"). Indeed, once a consular officer "refuse[s] [an applicant's] visa application under Section [1201(g)]," the consular officer has "rendered a decision" on a visa application and "the doctrine of consular nonreviewability precludes this Court from granting a remedy in th[e] action."

---

[8] Defendants seek dismissal due to consular nonreviewability under Rule 12(b)(6) rather than Rule 12(b)(1), *see Allen*, 896 F.3d at 1102 (consular nonreviewability reviewed under Rule 12(b)(6)), and submit that the holding in *OC Modeling* supports dismissal under Rule 12(b)(6).

*Senobarian*, 2024 WL 897566, at *3–4; *see Muñoz*, 144 S. Ct. at 1820 ("The action of an executive officer to admit or to exclude [a noncitizen] is final and conclusive." (citation and quotation marks omitted)).

Consular officers who find that visa applicants have not established eligibility and refuse their applications under Section 1201(g)—as the officers did here—have taken the very (and only) action required of them under Section 1201(g) and 22 C.F.R. §§ 41.121, 42.81(a). *See Senobarian*, 2024 WL 897566, at *3–4; *Allen*, 896 F.3d at 1107 (A consular officer "is charged with adjudicating visas under rules prescribed by law, and the officer is instructed" by 8 U.S.C. § 1201(g)(3) "not to issue a visa if the officer 'knows or has reason to believe that such alien is ineligible to receive a visa' under any provision of law."); *see also Karimova*, 2024 WL 3517852, at *3. Because the consular officer denied Plaintiffs' visa applications as required by statute and regulation, the consular nonreviewability doctrine is implicated and precludes judicial review. *Allen*, 896 F.3d at 1108.

Accordingly, the Complaint is not justiciable due to the consular nonreviewability doctrine and dismissal is warranted.

## X.    Regardless of Justiciability, Dismissal of Plaintiffs' Unlawful Withholding Claims Is Warranted as Plaintiffs Fail to Plausibly Allege Consular Officers Withheld Adjudication of Their Visa Applications

Even if the Court were to consider Plaintiffs' withholding claims (Counts Three and Four) further, Plaintiffs fail to state a plausible unlawful withholding claim under the APA or Mandamus Act. The APA authorizes suit by any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. "Agency action" is defined as, among other things, "failure to act." *Id.* § 551(13). The APA requires agencies to conclude matters "within a reasonable time," *id.* § 555(b), and authorizes federal courts to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1).

As just discussed in Sections VIII-IX *supra*, at the conclusion of a visa interview,

1    consular officers are only required to "issue the visa" or "refuse the visa." 22 C.F.R.

2    §§ 41.121(a), 42.81(a). Additionally, consular officers are required to refuse visas when

3    they "know[] or ha[ve] reason to believe that such [applicant] is ineligible." 8 U.S.C.

4    § 1201(g). And when refusing a visa, consular officers must do so "under [Section

5    1182(a)] or [Section 1201(g)] or other applicable law." *Id.* § 42.81(a).

6        Here, the consular officers fulfilled their statutory and regulatory duties when the

7    officers interviewed each Plaintiff, determined they failed their burden of establishing

8    eligibility, and refused their applications at the end of the interview citing Section 1201(g)

9    as the refusal ground. *See OC Modeling*, 2020 WL 7263278, at *3; *Senobarian*, 2024 WL

10   897566, at *3; *see also Tesfaye*, 2022 WL 4534863, at *5; *Yaghoubnezhad*, 2024 WL

11   2077551, at *8; *Karimova*, 2024 WL 3517852, at *5-6. There is nothing more for the

12   consular officers to do and thus, no action withheld.

13       Accordingly, dismissal of Plaintiffs' unlawful withholding claims is warranted.

14   **XI.  Dismissal of Plaintiff Mikaniki's Unreasonable Delay Claims Is Warranted as**
         **He Does Not Plausibly Allege the Six Months His Visa Application Has Been**
15       **in Administrative Processing Is Unreasonable as a Matter of Law[9]**

16       Turning to Plaintiff Mikaniki's unreasonable delay claims (Counts Five and Six),

17   Plaintiff Mikaniki fails to allege a viable claim under the APA or Mandamus Act. Courts

18   determine whether agency delay is unreasonable by looking to the six factors identified in

19   *Telecomm. Rsch. and Action Ctr.* ("*TRAC*") *v. F.C.C.*, 750 F.2d 70 (D.C. Cir. 1984). The

---

[9]    Courts in this District have consistently held that the six- to eighteen-month delays
faced by the co-Plaintiffs, *see* Compl. ¶¶ 37-347, are not unreasonable as a matter of law.
However, as discussed *supra*, co-Plaintiffs' unreasonable delay claims (Counts Five and
Six) should be severed for judicial efficiency. *See* Section V *supra*. As such, Defendants
respectfully request that the Court extend the time for Defendants to respond to co-
Plaintiffs' unreasonable delay claims (Counts Five and Six) until after a decision is
reached on Defendants' request to sever/dismiss co-Plaintiffs. *See* Fed. R. Civ. P. 12(a)(4);
*Hernandez v. Avis Budget Group, Inc.*, No. 17-211, 2018 WL 10323280, at *1 (E.D. Cal.
Nov. 2, 2018) (collecting cases from this Circuit and holding that "a timely filed motion
to dismiss which addresses only some of the claims tolls the time to respond to the
remaining claims under Rule 12(a)(4)" (cleaned up)); *Talbot v. Sentinal Ins. Co., Ltd.*, No.
11-1766, 2012 WL 1068763, at *4 (D. Nev. Mar. 29, 2012) ("Pursuant to [Rule].
12(a)(4)(A), Defendants are not required to file a responsive pleading on the unchallenged
claims until 14 days after the court has rendered its decision on the motion.").

1   *TRAC* factors are:

2       (1)    the time agencies take to make decisions must be governed by a

3               rule of reason;

4       (2)    whether Congress has provided a timetable or other indication of

5               the speed with which it expects the agency to proceed in the

6               enabling statute;

7       (3)    the impact on human health and welfare;

8       (4)    the effect of expediting delayed action on agency activities of a

9               higher or competing priority;

10      (5)    the nature and extent of the interests prejudiced by the delay; and

11      (6)    whether there has been any agency impropriety.

12  *Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 507 n.7 (9th Cir. 1997) (citing *id.*). Even

13  accepting Plaintiff Mikaniki's allegations as true, the balance of the *TRAC* factors weighs

14  in Defendants' favor.

15          **C. *TRAC* factors one and two**

16          The first and most important factor "considers whether the time for agency action

17  has been reasonable." *Vaz v. Neal*, 33 F.4th 1131, 1138 (9th Cir. 2022) (quotation marks

18  omitted). In the visa context, district courts have routinely held that the first two *TRAC*

19  factors favor the government based on the "wide discretion in the area of immigration

20  processing" that Congress has afforded agencies as well as the relatively short length of

21  delay. *See, e.g.*, *Nosraty v. Oudkirk*, No. 23-cv-4632-MCS-PD, 2024 U.S. Dist. LEXIS

22  587, at *6 (C.D. Cal. Jan. 2, 2024) (holding the first two *TRAC* factors favored defendants

23  in a six-month visa processing delay case after noting that other courts have held delays

24  of up to four years were not unreasonable); *Ghadami v. U.S. Dep't of Homeland Sec.*, No.

25  19-397, 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020) (finding first two *TRAC* factors

26  favored defendants despite a twenty-five month delay, noting that "many courts evaluating

27  similar delays have declined to find a two-year period to be unreasonable as a matter of

28

law"). Courts have routinely analyzed the first *TRAC* factor by comparing the length of delay to prior cases. *See Throw v. Mayorkas*, No. 22-5699, 2023 WL 2787222, at *4 (W.D. Wash. Apr. 5, 2023) ("'Absent a congressionally supplied yardstick, courts typically turn to case law as a guide.'" (quoting *Sarlak v. Pompeo*, No. 20-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020))).

Here, the case law controverts Plaintiff Mikaniki's claim that the length of the alleged delay—just six months since his consular interview on November 27, 2023, and the May 31, 2024 filing of the Complaint—is unreasonable. *See* Compl. ¶ 35. In *Shahijani v. Laitinen*, the court declined to find that the plaintiffs' wait of "roughly eight months" was unreasonable, noting "it is sufficient to say that the relatively short delay here is not unreasonable." No. 23-cv-3967-RGK-MRW, 2023 WL 6889774, at *4 (C.D. Cal. Oct. 6, 2023). "[N]umerous district courts within the Ninth Circuit have found that lengthier delays were not unreasonable," *Kapoor v. Blinken*, No. 21-1961, 2022 WL 181217, at *4 (N.D. Cal. Jan. 20, 2022) (collecting cases finding delays of four to five years not unreasonable), including recently in *Ferdowski v. Blinken*, where the court concluded a delay of four to twelve months was reasonable, noting that a four-year delay "is considered reasonable in the immigration context," No. 23-cv-1123-JWH-KES, 2024 WL 685912, at *4 (C.D. Cal. Feb. 12, 2024) (emphasis omitted). On its own, the length of the alleged delay here—the most important factor—tips the balance of the *TRAC* factors strongly in Defendants' favor.

The second *TRAC* factor asks whether Congress has provided a timetable within which it expects the agency to proceed. *Vaz*, 33 F.4th at 1137. "Congress has not required that immigrant visa applications be processed under any particular timeline." *Kapoor*, 2022 WL 181217, at *6. "[A]bsent a precise statutory timetable or other factors counseling expeditious action, an agency's control over the timetable of its proceedings is entitled to considerable deference." *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (quotation marks omitted). Here, the decision-making—whether to enable the entry of a noncitizen to reside as a permanent resident, which implicates national

35

security—"involves a complicated balancing of a number of factors which are peculiarly within [an agency's] expertise." *Lincoln v. Vigil*, 508 U.S. 182, 190–91 (1993) (citation and quotation marks omitted); *see Didban v. Pompeo*, 435 F.Supp.3d 168, 176 (D.D.C. 2020) ("Decisions regarding the admission of foreign nationals are granted an especially wide degree of deference, as they frequently implicate relations with foreign powers, or involve classifications defined in the light of changing political and economic circumstances." (cleaned up)). Accordingly, courts have held there is no congressionally imposed timeline for processing visa applications. *See, e.g.*, *Ghalambor*, 2024 WL 653377, at *6; *Eljalabi v. Blinken*, No. 21-1730, 2022 WL 2752613, at *5 (D.D.C. July 14, 2022).

Plaintiffs erroneously contend Congress requires Defendant to process visas within a specific timeframe. Compl. ¶ 506 (citing 8 U.S.C. § 1571(b)). But Section 1571's "sense of Congress" language regarding processing times is "'non-binding legislative dicta'" that does not create a mandatory processing timeframe. *Mohsenzadeh v. Kelly*, 276 F.Supp.3d 1007, 1014 (S.D. Cal. 2017) (quoting *Yang v. Cal. Dep't of Soc. Servs.*, 183 F.3d 953, 961-62 (9th Cir. 1999)); *see Ghalambor*, 2024 WL 653377, at *6 ("[C]ourts in the Ninth Circuit have interpreted similar 'sense of Congress' language as a policy statement that neither requires nor prohibits any action."). Moreover, Section 1571 applies to USCIS, not the State Department, "and 'therefore lacks bearing on the present controversy.'" *Poursohi v. Blinken*, No. 21-1960, 2021 WL 5331446, at *8 (N.D. Cal. Nov. 16, 2021) (quoting *El Centro Reg'l Med. Ctr. v. Blinken*, No. 21-361, 2021 WL 3141205, at *4 (S.D. Cal. July 23, 2021)); *Arab v. Blinken*, 600 F.Supp.3d 59, 69-70 (D.D.C. 2022).

As such, *TRAC* factors one and two favor Defendants.

### D. *TRAC* factor four

Given that Plaintiff Mikaniki demands to be prioritized ahead of other noncitizens awaiting action, the fourth *TRAC* factor effectively precludes this lawsuit. Critically, even *if* "all the other factors considered in *TRAC* favored it," courts have consistently "refused

to grant relief . . . where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (cleaned up).

Courts in this District have recognized the same and have repeatedly denied relief in the immigration context "where a judicial order putting an applicant 'at the head of the queue would simply move all others back one space and produce no net gain.'" *Zhu v. Cissna*, No. 18-cv-9698-PA-JPR, 2019 WL 3064458, at *5 (C.D. Cal. April 22, 2019) (quoting *id.*); *see, e.g.*, *Aghchay v. U.S. Dep't of State*, No. 22-cv-5708-PA-PVC, 2022 WL 19569516, at *3 (C.D. Cal. Dec. 20, 2022) ("[G]ranting the relief Plaintiff seeks would simply push others, some of whom may not have the resources to commence litigation, further back in the process. This factor therefore weighs strongly in favor of Defendants."); *Shahijani*, 2023 WL 6889774, at *5 ("Plaintiff has not alleged any justification for expediting Tirkodi's application ahead of the thousands, if not tens of thousands, of applications of other noncitizens. The Court sees no reason to reorder the immigration agency's priorities, especially considering the relatively short [eight-month] delay that Plaintiff has thus far experienced. This factor, therefore, weighs strongly in favor of Defendants.").

While Plaintiff Mikaniki is just one applicant, "an accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities." *Tate v. Pompeo*, 513 F.Supp.3d 132, 150 (D.D.C. 2021). His application is one of thousands of immigrant and nonimmigrant visa applications adjudicated at the U.S. Embassy in Yerevan and one of millions of immigrant and nonimmigrant visa applications adjudicated by consular officers worldwide in any given fiscal year. *See* Dep't of State, Bureau of Consular Affairs, *Report of the Visa Office 2023*, available at https://travel.state.gov/content/travel/en/legal/visa-law0/visa-statistics/annual-reports/report-of-the-visa-office-2023.html (last visited July 24, 2024). As in *Shahijani*, this Court should find "no reason to reorder the immigration agency's

priorities, especially considering the relatively short delay that [Plaintiff Mikaniki] has thus far experienced." 2023 WL 6889774, at *5.

As such, *TRAC* factor four favors Defendants.

### E. *TRAC* factors three and five

Neither the third nor fifth *TRAC* factor favors Plaintiff Mikaniki. "The third and fifth factors overlap—the impact on human health and welfare and economic harm, and the nature and extent of the interests prejudiced by the delay." *Liberty Fund, Inc. v. Chao*, 394 F.Supp.2d 105, 118 (D.D.C. 2005).

Here, Plaintiff Mikaniki alleges that the delay in re-adjudicating his visa application has caused him and his family "severe emotional distress and psychological harm," Compl. ¶ 441, as well as financial stress, *id.* ¶ 444. Even though Plaintiff Mikaniki's situation is unquestionably sympathetic, his circumstances are not unique. *See Khajik v. Blinken*, No. 23-cv-4891-DSF-KS, 2023 U.S. Dist. LEXIS 202026, at *7-8 (C.D. Cal. Nov. 9, 2023) ("There is certainly an impact on an individual being separated from a spouse, . . . [h]owever, the Court cannot find this to be a unique or particularly pressing need to justify prioritizing [plaintiff's] petition or altering the routine course of the State Department's evaluation of visa applications."); *Mohammad v. Blinken*, 548 F.Supp.3d 159, 168–69 (D.D.C. 2021) (recognizing that "financial, medical, and emotional hardship" is common while awaiting adjudication of visa applications). Indeed, because Plaintiff Mikaniki's interest in prompt processing is shared by "many others facing similar circumstances," "[c]atapulting [him] to the front of the line directs resources away from the adjudications that the State Department has identified as more urgent" *Dastagir v. Blinken*, 557 F.Supp.3d 160, 168 (D.D.C. 2021) (alteration and quotation marks omitted). Defendants therefore must consider the prejudice to other noncitizens also awaiting action. *See Xu v. Cissna*, 434 F.Supp.3d 43, 55 (S.D.N.Y. 2020) ("The effect of leapfrogging Plaintiff's application to the front of the line would do nothing to cure the deficiencies of the asylum application process; it would only harm other applicants, who are equally

deserving of prompt adjudication."); *Pushkar v. Blinken*, No. 21-2297, 2021 WL 4318116, at *9 (D.D.C. Sept. 23, 2021) ("[I]t is not just [plaintiff's] 'health and welfare' that the Court must consider, but also that of others similarly situated.").

Thus, *TRAC* factors three and five favor Defendant.

### F. *TRAC* factor six

The sixth *TRAC* factor provides that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." 750 F.2d at 80 (quotation marks omitted). Conversely, the good faith of the agency in addressing the delay weighs against compelling action. *See In re Am. Fed'n of Gov't Emps., AFL-CIO*, 837 F.2d 503, 507 (D.C. Cir. 1988). Here, Plaintiff Mikaniki does not appear to allege agency bad faith related to the delay in processing his visa case.[10] As such, *TRAC* factor six favors Defendants or is at least neutral.

Accordingly, given that all six *TRAC* factors favor Defendants, the balance weighs in their favor and warrants dismissal of Plaintiff Mikaniki's unreasonable delay claims (Counts Five and Six).

## XII.   CONCLUSION

For the foregoing reasons, the Court should grant this Motion and dismiss Plaintiffs' Complaint.

---

[10]    Plaintiff Mikaniki makes two bad faith allegations not relevant to the asserted six-month delay: (1) a preemptive bad faith allegation concerning a hypothetical second Section 1201(g) refusal, Compl. ¶ 16; and (2) a bad faith allegation concerning the State Department's explanation of Section 1201(g) refusals on its website, *id.* ¶ 417.

Dated: August 2, 2024                    Respectfully submitted,

                                         BRIAN M. BOYNTON
                                         Principle Deputy Assistant Attorney General
                                         Civil Division

                                         NANCY K. CANTER (CA 263198)
                                         Senior Litigation Counsel
                                         Office of Immigration Litigation
                                         Civil Division

                                         /s/ *Joseph A. McCarter*
                                         Joseph A. McCarter (MD 2311290014)
                                         Trial Attorney
                                         Office of Immigration Litigation
                                         Civil Division

                                         Attorneys for Defendants

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**L.R. 11-6.1 Certification**

The undersigned counsel of record for Defendants certifies that the Memorandum of Points and Authorities is no more than 40 pages, which complies with the Court's July 17, 2024 Order, ECF 15.

Dated: August 2, 2024                    /s/ *Joseph A. McCarter*
                                         Joseph A. McCarter (MD 2311290014)
                                         Trial Attorney, U.S. Department of Justice