O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| | Case No. 2:24-cv-04536-FWS-DFM |
| TOKTAM HOSSEINNEZHAD ARIANI, *et. al.* | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS, [16], AND DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, [45]** |
| Plaintiffs, | |
| v. | |
| ANTONY J. BLINKEN, *et. al.* | |
| Defendants. | |

///

///

///

Before the court are two matters: (1) Defendant Antony J. Blinken and Defendant Robert Jachim's (collectively, "Defendants") Motion to Dismiss, Drop Misjoined Parties, and Sever Claims ("Motion to Dismiss"), (Dkt. 16); and (2) Plaintiffs' Motion for Preliminary Injunction Re Undue Delay in Visa Applications ("Motion for Preliminary Injunction"), (Dkt. 41).[1]  Both matters are fully briefed.  (Dkts. 21, 29, 45, 44, 46.)  The court held oral argument on the Motion for Preliminary Injunction on December 19, 2024.  (Dkt. 48.)  Based on the state of the record, as applied to the applicable law, the court **GRANTS IN PART AND DENIES IN PART** the Motion to Dismiss and **DENIES** the Motion for Preliminary Injunction.

## I.    FACTUAL BACKGROUND

### A.    Statutory and Regulatory Framework[2]

---

[1] References to "Plaintiffs" include all persons listed in the Complaint other than the following nineteen persons Plaintiffs subsequently dismissed pursuant to Federal Rule of Civil Procedure 41(a)(1): Sayyed Mahidi Ziaei, Roozbeh Sanei, Esmaeil Sadeghi, Eunhye Lee, Paria Karimi, Atefeh Torabi, Fereshteh Mohammadi Vahed, Mohammadreza Shokouhimehr, Afshin Babazadeh, Aejung Kim, Amirhossein Goudarzi, Navid Rasekh, Kaveh Hosseini, Amirreza Moini, Sara Aghakhani, Amir Hossini, and Mohammad Mehdi Khajeh.  (*See* Compl. ¶¶ 1, 30-347; Dkts. 27, 28, 30, 35, 38, 39, 47.)

[2] Defendants request that the court take judicial notice of five government websites cited throughout the Motion to Dismiss.  (Dkt. 16 at 20 n.2.)  The court may take judicial notice of information available on government agencies' websites because such information "was made publicly available by the government entities" and "neither party disputes the authenticity of the [websites] or the accuracy of the information displayed therein."  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (taking judicial notice of the websites of two public schools); *Santos v. Minn Life Ins. Co.*, 571 F. Supp. 3d 1120, 1126 (N.D. Cal. 2021) ("Courts in this circuit routinely take judicial notice of material contained on government agency websites."); Fed. R. Evid. 201(b).  Therefore, Defendants' request for judicial notice is **GRANTED**.

The Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101-1537 authorizes the issuance of visas to three broad categories of immigrants: family-based, employment-based, and diversity.  8 U.S.C. § 1151(a).  As relevant here, employment-based immigrant visa applications generally proceed in the following manner.  First, the applicant submits Form I-140, Immigrant Petition for Alien Worker, to the United States Citizenship and Immigration Services ("USCIS").  *See id.* §§ 1153(b), 1154; 8 C.F.R. § 204.5.  If approved, and after submitting all necessary documents and fees, the applicant must appear for an interview with a consular officer at a United States embassy or consulate.  *See* 8 U.S.C. §§ 1201(a)(1), 1202; 22 C.F.R. §§ 42.62, 42.63, 42.65.  Following the interview, the consular officer must either issue the visa or refuse it under applicable law.  8 U.S.C. §§ 1201(g), 1361; 22 C.F.R. §§ 42.71, 42.81(a).

The consular officer "may require the submission of additional information or question the alien on any relevant matter whenever the officer believes that the information provided . . . is inadequate to determine the alien's eligibility to receive an immigrant visa."  22 C.F.R. § 42.63(c).  Such information may be provided through Form DS-5535, Supplemental Questions for Visa Applicants.  *See* 60-Day Notice of Proposed Information Collection: Supplemental Questions for Visa Applicants, 88 Fed. Reg. 65,418 (Sept. 22, 2023).  Any additional material submitted is "considered part of the immigrant visa application."  22 C.F.R. § 42.63(c).  If the applicant produces additional evidence "tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered."  *Id.* § 42.81(e).

**B.    Factual Background**[3]

---

[3] For purposes of the Motion to Dismiss, the court "accept[s] factual allegations in the Complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Plaintiffs consist of seventy-eight Iranian nationals, including primary applicants, derivative spouses, and minor child beneficiaries, who applied for employment-based immigrant visas.  (Dkt. 1 ("Compl.") ¶¶ 1, 4, 30-347.)  Each primary applicant plaintiff participated in a consular interview, had their visa refused under 8 U.S.C. § 1201(g), and was then asked to submit supplemental information via a DS-5535 form.  (*See, e.g.*, *id.* ¶¶ 4-6, 30-347.)  Although Plaintiffs timely provided the DS-5535 responses, their applications have remained in administrative processing for between six and fourteen months.  (*See, e.g.*, *id.* ¶¶ 8-11, 30-347.)  Plaintiffs allege the delays in adjudicating their visa applications have resulted in "severe emotional and financial strain."  (*Id.* ¶¶ 12, 434-44.)  Plaintiffs assert six claims stemming from this delay against Defendant Blinken, the Secretary of the United States Department of State, and Defendant Jachim, the Acting Director of the Office of Screening, Analysis, and Coordination.[4]

In Counts One and Two, Plaintiffs seek an order declaring two policies unlawful under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A) and (D).  (*Id.* ¶¶ 445-56 & Prayer for Relief.)  First, Plaintiffs challenge the "DS-5535 scheme," wherein Defendants require applicants to submit DS-5535 responses *after* their interviews, rather than alongside their applications.  (*Id.* ¶¶ 445-51.)  Plaintiffs allege "the essence" of this scheme "is a decision by Defendants to prohibit Iranian immigrant visa applicants from submitting the DS-5535 prior to their immigrant visa interviews."  (*Id.* ¶ 449.)  Second, Plaintiffs challenge the "221(g) non-final notice scheme," by which Defendants refuse visa applications using non-final decisions under INA § 221(g) based on information received after the interview.  (*Id.* ¶¶ 452-

---

[4] As Defendants note, (Dkt. 16. at 15 n.1), Defendant Jachim was automatically substituted for Carson Wu under Federal Rule of Civil Procedure 25(d).  *See* Fed. R. Civ. P. 25(d).

56.)  Plaintiffs allege that both policies cause unreasonable delay in adjudicating Plaintiffs' visa applications.  (*See, e.g.*, *id.* ¶¶ 394, 419, 449.)

In Counts Three, Four, Five, and Six, Plaintiffs seek a declaration that Defendants' delay in adjudicating Plaintiffs' visa applications is unreasonable, as well as a writ of mandamus and order compelling Defendants to complete all steps necessary to adjudicate Plaintiffs' visa applications within thirty days.  (Compl. ¶¶ 457-511 & Prayer for Relief.)  Defendants move to dismiss all Plaintiffs' claims for under Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), 12(b)(6).  (*See generally* Dkt. 16.)

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss

#### 1.    Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute."  *Gunn v. Minton*, 568 U.S. 251, 257 (2013) (citation and internal quotation marks omitted).  A party may move to dismiss a case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Fed. R. Civ. P. 12(b)(1).  A defendant's challenge under Rule 12(b)(1) may be either facial or factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A facial attack "accepts the truth of plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'"  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone*, 373 F.3d at 1039).  A factual attack "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside of the pleadings."  *Id.*

"In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  *Safe Air for Everyone*, 373 F.3d at 1039 (citation omitted).  The court need not presume the truthfulness of the plaintiff's allegations in

doing so.  *Id.*  "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (citation omitted). Where "the jurisdictional disputes [are] not intertwined with the merits of the claim" and "the existence of jurisdiction turn[s] on disputed factual issues," the court may "resolve those factual disputes" where necessary.  *See Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 944 (9th Cir. 2021) (citation and internal quotation marks omitted); *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008).

### 2.    Federal Rule of Civil Procedure 12(b)(3)

Under Federal Rule of Civil Procedure 12(b)(3), a party may move to dismiss an action for improper venue.  Fed. R. Civ. P. 12(b)(3).  "The district court of a district in which is filed a case laying venue in the wrong division shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  Section 1406 and Rule 12(b)(3) "authorize dismissal only when venue is 'wrong' or 'improper' in the forum in which it was brought."  *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013).  "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws . . . ."  *Id.*  The plaintiff bears the burden of showing venue is proper. *Piedmont Label Co. v. Sun Garden Parking Co.*, 598 F.2d 491, 496 (9th Cir. 1979). In deciding a motion to dismiss for improper venue, courts may consider facts outside the pleadings and need not accept the pleadings as true but must resolve all reasonable inferences and factual conflicts in the non-moving party's favor.  *Murphy v. Schneider*

*Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004) (citing *Argueta v. Banco Mexicana, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996)).

### 3.    Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).  To withstand a motion to dismiss brought under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  While "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action" such that the factual allegations "raise a right to relief above the speculative level."  *Id.* at 555 (citations and internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (reiterating that "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").  "A Rule 12(b)(6) dismissal 'can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'"  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"Establishing the plausibility of a complaint's allegations is a two-step process that is 'context-specific' and 'requires the reviewing court to draw on its judicial experience and common sense.'"  *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-96 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679).  "First, to be entitled to the presumption of truth, allegations in a complaint . . . must contain

sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Id.* at 996 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). "Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* (quoting *Starr*, 652 F.3d at 1216); *see also Iqbal*, 556 U.S. at 681.

Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). On one hand, "[g]enerally, when a plaintiff alleges facts consistent with both the plaintiff's and the defendant's explanation, and both explanations are plausible, the plaintiff survives a motion to dismiss under Rule 12(b)(6)." *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 47 (9th Cir. 2022) (citing *Starr*, 652 F.3d at 1216). But, on the other, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Eclectic Props. E.*, 751 F.3d at 996 (quoting *Iqbal*, 556 at U.S. 678). Ultimately, a claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 at 556); *accord Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

### B.    Motion for Preliminary Injunction

"A preliminary injunction is an extraordinary remedy that may be awarded only if the plaintiff clearly shows entitlement to such relief." *Am. Beverage Ass'n v. City & Cnty. of S.F.*, 916 F.3d 749, 754 (9th Cir. 2019) (en banc) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). A plaintiff seeking a preliminary injunction must demonstrate "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the

balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* (quoting *Winter*, 555 U.S. at 20). Courts in the Ninth Circuit "also employ an alternative serious questions standard, also known as the sliding scale variant of the *Winter* standard." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (cleaned up). Under that approach, "serious questions going to the merits" and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

"The first factor under *Winter* is the most important," to the extent the court need not consider the remaining three elements where the plaintiff fails to show a likelihood of success on the merits. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). Where the government is the nonmovant, "the last two *Winter* factors 'merge.'" *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)) (citation omitted). Courts in the Ninth Circuit "also employ an alternative serious questions standard, also known as the sliding scale variant of the *Winter* standard." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (cleaned up). Under that formulation, "serious questions going to the merits" and a balance of hardships that tips sharply towards the plaintiffs can support issuance of a preliminary injunction, so long as the plaintiffs also show that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* (cleaned up).

## III.    DISCUSSION

### A.    Defendants' Motion to Dismiss

Defendants challenge Plaintiffs' Article III standing, the reviewability of Plaintiffs' claims under the APA, the propriety of venue and joinder, and the sufficiency of Plaintiffs' "illegal throttling," unlawful withholding, and unreasonable delay claims. (Dkt. 16 at 6-55.)

1    1.    <u>Counts One and Two: The DS-5535 Scheme and the § 221(g) Non-Final Notice Scheme</u>

As discussed above, Plaintiffs' first and second claims challenge the lawfulness of: (1) the "DS-5535 scheme," which requires visa applicants to submit supplemental information after their consular interviews; and (2) the "§ 221(g) non-final notice scheme," which enables consular officers to "throttle legal immigration" by issuing non-final refusal notices. (*See, e.g.*, Compl. ¶¶ 445-56.) The court begins with Defendants' jurisdictional arguments regarding standing and reviewability under the APA, and then turns to the sufficiency of these claims. *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc); *Jajati v. U.S. Customs & Border Prot.*, 102 F.4th 1011, 1016 (9th Cir. 2024).

a.    *Standing*

Defendants first argue Plaintiffs' first and second claims fail for lack of standing under Federal Rule of Civil Procedure 12(b)(1). (Dkt. 16 at 23-24.) Article III standing is an "irreducible constitutional minimum" comprised of three distinct elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff must demonstrate that they: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016) (citations omitted). At the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating each element," *id.* (cleaned up), and "demonstrate standing separately for each form of relief sought," *Friends of the Earth v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

The parties agree that Plaintiffs alleged a procedural injury based on the unreasonable delay in adjudicating their visa applications. (Dkt. 16 at 23; Dkt. 21 at 26-27; Compl. ¶¶ 8, 434-44.) However, Defendants argue Plaintiffs cannot allege redressability or traceability because declaring the alleged schemes unlawful would

1   not affect the speed at which Plaintiffs' visa applications are processed and any

2   administrative delay is attributable to Plaintiffs' failure to establish their visa

3   eligibility.  (Dkt. 16 at 23-24.)  Plaintiffs note that the standards for causation and

4   redressability are "relaxed" when alleging a procedural injury.  (Dkt. 21 at 26-27.)

5   Plaintiffs do not clearly explain their theory of standing but generally assert their

6   claims are redressable because a favorable decision "would allow Plaintiffs' visa[s] to

7   be adjudicated and issued" and "could better protect their interest in the final

8   adjudication for the immigration visas."  (*Id.*)

9        Although procedural rights claims are subject to "less demanding" standards,

10  *Narragansett Indian Tribal Historic Pres. Off. v. Fed. Energy Regul. Comm'n*, 949

11  F.3d 8, 13 (D.C. Cir. 2020), "a claim of procedural injury does not relieve Plaintiffs of

12  their burden—even if relaxed—to demonstrate causation and redressability,"

13  *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1015 (9th

14  Cir. 2021).  "To establish causation, plaintiffs must allege that their injuries are 'fairly

15  traceable' to [the defendant's] conduct and 'not the result of the independent action of

16  some third party not before the court.'"  *Winsor v. Sequoia Benefits & Ins. Servs.,*

17  *LLC*, 62 F.4th 517, 525 (9th Cir. 2023) (quoting *Namisnak v. Uber Techs., Inc.*, 971

18  F.3d 1088, 1094 (9th Cir. 2020)).  The "relaxed redressability requirement is met

19  when correcting the alleged procedural violation *could* still change the substantive

20  outcome in the petitioner's favor; the petitioner need not go further and show that it

21  *would* effect such a change."  *Narragansett Indian Tribal Historic Pres. Off.*, 949 F.3d

22  at 13.  The plaintiffs need only show "that the relief requested—that the agency follow

23  the correct procedures—may influence the agency's ultimate decision of whether to

24  take or refrain from taking a certain action."  *Salmon Spawning & Recovery All. v.*

25  *Gutierrez*, 545 F.3d 1220, 1226-27 (9th Cir. 2008).

26       The court finds Plaintiffs sufficiently allege traceability and redressability under

27  the relaxed standing standard.  Again, the parties agree Plaintiffs suffered a procedural

28  injury due to unreasonable delay in adjudicating their visa applications.  Plaintiffs

further allege that this unreasonable delay is attributable to Defendants' *process* for adjudicating visa applications, including issuing non-final decisions "refusing" Plaintiffs' visa applications pending additional information and requiring Plaintiffs to submit their DS-5535 responses after their consular interviews. (*See, e.g.*, *id.* ¶¶ 445-56.)  Because Plaintiffs allege a defective process, the relevant inquiry is whether Defendants' process for adjudicating visas satisfied 8 U.S.C. § 1201(g) and the APA standards for agency action, rather than the result of the application. *See Ctr. for Bio. Diversity v. Mattis*, 868 F.3d 803, 817 (9th Cir. 2017) (stating, in evaluating plaintiff's procedural injury, that the causation "inquiry remains focused clearly on the process and not the result").

Accepting the Complaint's allegations as true, the court concludes Plaintiffs have plausibly alleged traceability by suggesting that the unreasonable delay stemmed from Defendants' failure to consider information relevant to the visa eligibility determination before issuing a "non-final refusal." *See, e.g.*, *id.* (concluding the plaintiff alleged traceability by pleading that the procedural violation arose from the government's "failure to take into account information relevant for making a determination as to whether the military facility will adversely affect the dugong and if so, how those effects may be avoided or mitigated").  Defendants' argument that Plaintiffs contributed to the delay by failing to demonstrate that all visa eligibility criteria underscores this conclusion—under Plaintiffs' theory, if Plaintiffs were able to submit the DS-5535 responses upfront, Plaintiffs may be able to meet the eligibility requirements at the time of their consular interviews.  Moreover, even if Plaintiffs contributed to the delay, this would not preclude a finding of traceability.  *See, e.g.*, *Sharma v. U.S. Dep't of Homeland Sec*, --- F. Supp. 3d ----, 2024 WL 4647617, at *4 (N.D. Cal. 2024) ("[T]he Ninth Circuit has made clear that a plaintiff 'need not allege that a defendant was the sole source of it's injury and need not eliminate any other contributing causes to establish its standing.'") (internal quotation marks omitted) (quoting *Isabel v. Reagan*, 394 F. Supp. 3d 966, 973 (D. Ariz. 2019)).

Plaintiffs' allegations are also sufficient to demonstrate redressability. The crux of these allegations is timing: if Defendants allowed Plaintiffs to submit their DS-5535 responses prior to the consular interview and prohibited non-final refusals under INA § 221(g), the consular officers would have additional information needed to decide Plaintiffs' visa applications prior to the interview, and thus could grant or deny the applications more quickly. Because altering these procedures could "change the substantive outcome" of the visa application decisions in Plaintiffs' favor or "influence" the consular officers' ultimate decisions by supplying necessary information earlier in the process, the court concludes Plaintiffs adequately allege redressability. *Narragansett Indian Tribal Historic Pres. Off.*, 949 F.3d at 13; *Salmon Spawning & Recovery All.*, 545 F.3d at 1227; *see also WildEarth Guardians v. U.S. Dep't of Agriculture*, 795 F.3d 1148, 1156 (9th Cir. 2015) (concluding the plaintiff's injury satisfied the relaxed redressability requirement because updating a programmatic policy "could influence" the agency's ultimate action). Therefore, the Motion to Dismiss is **DENIED** as to standing.

b. *Judicial Reviewability under the APA*

Defendants next argue the court should dismiss Plaintiffs' first claim challenging the DS-5535 scheme because the court lacks a judicially manageable standard by which to review the challenged agency actions.[5] (Dkt. 16 at 24-28.)

Generally, "[t]here is a strong 'presumption in favor of judicial review of final agency action' under the APA." *Jajati*, 102 F.4th at 1016 (quoting *Perez Perez v. Wolf*, 943 F.3d 853, 861 (9th Cir. 2019)). However, this presumption can be overcome "if the challenged agency action is 'committed to agency discretion by

_____

[5] Alternatively, Defendants argue that Plaintiffs have failed to allege that DS-5535 scheme is arbitrary and capricious. (Dkt. 16 at 28-33.) Because the court concludes Plaintiffs' first claim is unreviewable under the APA, the court does not address Defendants' alternative ground for dismissal.

law.'" *Id.* (quoting 5 U.S.C. §§ 701(a)(2)). This exception should be read "narrowly," and limited to "those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Weyerhaeuser Co. v. U.S. Fish. & Wildlife Serv.*, 580 U.S. 9, 23 (2018) (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)).

To determine "whether the court has a meaningful standard against which to judge the agency's exercise of discretion," courts look to "the language of the statute" and "whether the general purposes of the statute would be endangered by judicial review." *Trout Unlimited v. Pirzadeh*, 1 F.4th 738, 751 (9th Cir. 2021) (cleaned up). Courts may also consider "regulations, established agency policies, or judicial decisions" to supply a meaningful standard of review. *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 719 (9th Cir. 2011).

The court begins with "the context of the plaintiff's complaint" to "determine if there is law to be applied in the instant case." *Trout Unlimited*, 1 F.4th at 752 (alteration adopted) (quoting *Perez Perez*, 943 F.3d at 864). Plaintiffs allege that Defendants' policy requiring Iranian visa applicants to submit the DS-5535 *after* their interviews, rather than before, is inconsistent with 8 U.S.C. § 1202(b) and arbitrary and capricious.[6] (*See, e.g.*, Compl. ¶¶ 2-6, 377-428, 445-51.) As Defendants note,

---

[6] Plaintiffs briefly allege that the DS-5535 scheme violates 8 U.S.C. § 1202(b). (*See, e.g.*, Compl. ¶ 2.) Although the exact nature of the alleged violation is unclear, Plaintiffs appear to suggest that section 1202(b) requires visa applicants to submit all documentation needed for consular officer to assess their application *before* their consular interviews, and thus consular officers cannot request supplemental information via the DS-5535 *after* the interview. (*See, e.g.*, Compl. ¶¶ 377-402.) The court observes Plaintiffs did not raise this alleged violation in the Opposition, and thus have abandoned this claim. *See Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (finding a plaintiff "effectively abandoned" a claim when he failed to respond to arguments in motion to dismiss, and thus the claim could not be raised on appeal); *Allen v. Dollar Tree Stores, Inc.*, 475 F. App'x. 159, 159 (9th Cir. 2012) (affirming district court's dismissal of certain claims where the plaintiff's

1   Plaintiffs' allegations pertain to the timing of DS-5535 responses. (*See* Dkt. 16 at 24;

2   Dkt. 21 at 13; Compl. ¶ 6). Defendants argue, however, that Plaintiffs' claim is

3   nonreviewable because decisions regarding the timing of DS-5535 submissions are

4   committed to agency discretion under 8 U.S.C. § 1202(a). (Dkt. 16 at 24-28.)

5        The court agrees that Plaintiffs' APA claim challenging the DS-5535 scheme is

6   unreviewable. The relevant statute, section 1202(a), provides:

> Every alien applying for an immigrant visa and for alien
> registration shall make application therefor in such form and
> manner and at such place as shall be by regulations prescribed.
> In the application the alien shall state his full and true name,
> and any other name which he has used or by which he has
> been known; age and sex; the date and place of his birth; and
> such additional information necessary to the identification of
> the applicant and the enforcement of the immigration and
> nationality laws as may be by regulations prescribed.

14   8 U.S.C. § 1202(a).

15        First, the broad language of 8 U.S.C. § 1202(a) suggests that decisions

16   regarding the timing of DS-5535 responses are unreviewable. Section 1202(a) confers

---

18   "opposition to the motion to dismiss failed to respond to [the defendant's] argument");

19   *Toranto v. Jaffurs*, 297 F. Supp. 3d 1073, 1104 (S.D. Cal. 2018) (granting motion to

     dismiss where the plaintiff abandoned the claim by failing to address the issue in the

20   opposing brief). Regardless, this allegation would not alter the court's conclusion

21   because Plaintiffs have failed to plausibly allege that requesting information after a

22   consular interview is unlawful. Section 1202(b) does not prohibit consular officers

     from requesting supplemental information, and regulations explicitly authorize such

23   requests. *See* 8 U.S.C. § 1202(b) ("The immigrant shall furnish to the consular officer

24   with his application a copy of a certification by the appropriate police authorities

     stating what their records show concerning the immigrant; a certified copy of any

25   existing prison record, military record, and record of his birth; and a certified copy of

26   all other records or documents concerning him or his case which may be required by

     the consular officer."); 22 C.F.R. § 42.63(c) ("The officer may require the submission

27   of additional information or question the alien on any relevant matter whenever the

28   officer believes that the information provided in Form DS-230 or Form DS-260 is

     inadequate to determine the alien's eligibility to receive an immigrant visa.").

the Secretary of State with discretion to prescribe regulations regarding the "form and manner" of immigrant visa applications and what "additional information" is necessary "to the identification of the applicant and the enforcement of the immigration and nationality laws."  8 U.S.C. § 1202(a).  This discretion encompasses decisions regarding when to collect information necessary to adjudicate visa applications.  *See, e.g.*, *Taherian v. Blinken*, 2024 WL 1652625, at *6 (C.D. Cal. Jan. 16, 2024) ("Section 1202 leaves decisions regarding the "form and manner" of visa applications, such as when to collect relevant information, to be prescribed by agency regulations.").

However, section 1202(a) does not provide "substantive standards against which the Secretary's determination could be measured."  *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State ("LAVAR")*, 104 F.3d 1349, 1353 (D.C. Cir. 1997).  The statute contains no language dictating when information necessary to adjudicate visa applications should be collected but rather leaves these decisions to the discretion of the Secretary of State.  *See, e.g.*, *id.* (concluding that the "broad language" of section 1202(a) provided no standard for reviewing a consular venue policy because "[t]hese determinations are left entirely to the discretion of the Secretary of State").

Plaintiffs identify no alternative statute or regulation governing the timing of DS-5535 responses.  (*See generally* Dkt. 21.)  In fact, Plaintiffs implicitly concede the discretionary nature of these decisions by alleging the applicable policy authorizes consular officers to solicit DS-5535 responses both during and after the interview.  (*See, e.g.*, Compl. ¶ 404 (quoting 86 Fed. Reg. 8745, 8746 (Feb. 5, 2021)).)  Because neither the relevant statute nor regulations supply a framework for evaluating these timing-related decisions, the court concludes it lacks a "meaningful standard against which to judge the agency's exercise of discretion."  *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).

In addition, the court finds the general purposes of section 1201(g) would be endangered by judicial review. "For reasons long recognized as valid, the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government." *Mathews v. Diaz*, 426 U.S. 67, 81 (1976). Here, the plain language of section 1202(a) provides the State Department with the discretion necessary to "balanc[e] complex concerns involving security and diplomacy, State Department resources and the relative demand for visa applications." *LAVAR*, 104 F.3d at 1353. Consequently, evaluating Plaintiffs' challenge to the State Department's exercise of discretion under section 1202(a) would require the court to second-guess "a policy decision entrusted to another branch of government." *Taherian*, 2024 WL 1652625, at *6. In light of the lack of statutory guidance and the complex factors involved in adjudicating visa applications, the court concludes that Plaintiffs' DS-5535 claim is unreviewable.

The court notes that this conclusion is consistent with the decisions of three other district courts that have found comparable claims brought by Plaintiffs' counsel challenging the same DS-5535 scheme to be unreviewable under the APA. *See, e.g.*, *Pars Equality Ctr. v. Blinken*, 2024 WL 4700636, at *6 (N.D. Cal. Nov. 5, 2024) (finding "no judicially manageable standards are available for judging how and when [the] agency should exercise its discretion" regarding when to collect the DS-5535 and dismissing the plaintiffs' claim with prejudice); *Dalmar v. Blinken*, 2024 WL 3967289, at *7 (D.D.C. Aug. 26, 2024) (dismissing the plaintiffs' claim because "[t]he procedure for adjudicating visa applications—namely the submission of DS-5535 following consular interviews—is . . . nonreviewable"); *Taherian*, 2024 WL 1652625, at *6 (dismissing the plaintiffs' claim challenging the timing of DS-5355 collection as unreviewable because section 1202(a) "leaves decisions regarding the 'form and manner' of visa applications, such as when to collect relevant information, to be prescribed by agency regulations and gives no other statutory guidance to a court evaluating the government's procedures"). Accordingly, the Motion to Dismiss is

1  **GRANTED** as to Plaintiffs' first claim. Because no amendment could make this

2  claim judicially reviewable, this claim is **DISMISSED WITH PREJUDICE**.

3            c.    *The Sufficiency of Count Two: The "§ 221(g) Non-Final*

4                  *Notice Scheme"*

5        Defendants seek to dismiss Plaintiffs' second claim for "illegal throttling"

6  under Rule 12(b)(6) because: (1) Plaintiffs do not challenge "the legality of citing to

7  [INA § 221(g)] as a refusal ground, only the motive behind such refusals"; and

8  (2) Plaintiffs have failed to allege facts suggesting Defendants use section 221(g) visa

9  refusals to "throttle legal immigration." (*Id.* at 33-34.) Other than cursorily stating

10  section 221(g) refusals "are being used in bad faith by Defendants as a tool to evade

11  judicial review of the timeliness of visa adjudications," Plaintiffs do not address these

12  arguments. (Dkt. 21 at 31.) Defendants thus contend Plaintiffs abandoned this claim.

13  (Dkt. 29 at 13.)

14        The court agrees that Plaintiffs abandoned their second claim by failing to

15  address Defendants' arguments regarding the sufficiency of this claim. *See, e.g.*,

16  *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (finding a

17  plaintiff "effectively abandoned" a claim when he failed to respond to arguments in

18  motion to dismiss, and thus the claim could not be raised on appeal); *Allen v. Dollar*

19  *Tree Stores, Inc.*, 475 F. App'x. 159, 159 (9th Cir. 2012) (affirming district court's

20  dismissal of certain claims where the plaintiff's "opposition to the motion to dismiss

21  failed to respond to [the defendant's] argument"); *Toranto v. Jaffurs*, 297 F. Supp. 3d

22  1073, 1104 (S.D. Cal. 2018) (granting motion to dismiss where the plaintiff

23  abandoned the claim by failing to address the issue in the opposing brief). Therefore,

24  the court **GRANTS** the Motion as to Plaintiffs' second claim and **DISMISSES** this

25  claim **WITH PREJUDICE**. *See, e.g.*, *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191,

26  1205 (N.D. Cal. 2014) ("[W]here a plaintiff simply fails to address a particular claim

27

28

in its opposition to a motion to dismiss that claim, courts generally dismiss it with prejudice.") (internal quotation marks and citation omitted).

2.    Dismissal or Severance of Certain Plaintiffs

Defendants contend that the court should dismiss all plaintiffs that reside outside the Central District of California for improper venue, or, alternatively, drop or sever their unreasonable delay claims for misjoinder.  (Dkt. 16 at 33-39.)  Defendants further argue that the court should dismiss six plaintiffs—Sayyed Mahdi Ziaei, Amirrez Moini, Esmaeil Sadeghi, Paria Karimi, Fatemeh Safarpour Dizboni, and Ayou Amini—for forum shopping because these plaintiffs filed identical lawsuits challenging unreasonable delay on their visa applications in other districts.[7]  (*Id.* at 39-40.)

To start, assuming the parties were properly joined when Plaintiffs initiated this action, venue is proper in the Central District of California.  In cases brought against agencies, officers, or employees of the United States, venue is proper in any judicial district where "a defendant in the action resides," "a substantial part of the events or omissions giving rise to the claim occurred," or "the plaintiff resides."  28 U.S.C. § 1391(e)(1).  In suits involving multiple plaintiffs, venue is proper "if *any* plaintiff resides in the District."  *Californians for Renewable Energy v. U.S. Env't Prot. Agency*, 2018 WL 1586211, at *5 (N.D. Cal. Mar. 30, 2018) (citing *Exxon Corp. v. Fed. Trade Comm'n*, 588 F.3d 895, 898-99 (3rd Cir. 1978)).  Here, Plaintiff Ariani resides in the Central District of California, (Compl. ¶ 28), and thus venue is proper.

Nonetheless, the court finds severing certain plaintiffs is appropriate for two reasons.  First, Plaintiffs are not properly joined.  "Under Federal Rule of Civil Procedure 20, joinder is proper if (1) the plaintiffs asserted a right to relief arising out

_____

[7] Four of these plaintiffs, Sayyed Mahdi Ziaei, Amirrez Moini, Esmaeil Sadeghi, and Paria Karimi, voluntarily dismissed their claims after the Motion was filed.  (*See* Dkts. 28, 35, 38; Dkt. 29 at 15 n.5.)

-19-

of the same transaction and occurrence *and* (2) some question of law or fact common to all the plaintiffs will arise in the action." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (citing Fed. R. Civ. P. 20(a); *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980)). Even if these requirements are met, the "district court must examine whether permissive joinder would 'comport with the principles of fundamental fairness' or would result in prejudice to either side." *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 870 (9th Cir. 2011) (quoting *Coleman*, 232 F.3d at 1296). "If the test for permissive joinder is not satisfied, a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance." *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) (citing Fed. R. Civ. P. 21).

At this stage of the proceedings, the court has dismissed the two claims common to all Plaintiffs (counts one and two) with prejudice. *See* sections III(A)-(C), *supra*. Plaintiffs' remaining claims for unlawful withholding and unreasonable delay on their individual visa applications (counts three through six) do not satisfy the test for permissive joinder. (*See, e.g.*, Compl. ¶¶ 30-347; 457-511.) These claims do not arise out of the same transaction and occurrence because Plaintiffs' applications were submitted and processed at different times and places, have been pending for various lengths of time, and necessarily depend on the fact-specific background of the applicant. *See, e.g.*, *Coughlin*, 130 F.3d at 1350 (concluding that 49 plaintiffs seeking a writ of mandamus against immigration officials based on the "alleged procedural problem of delay" were not properly joined because "the existence of a common allegation of delay, in and of itself, does not suffice to create a common transaction or occurrence"); *Visendi*, 733 F.3d at 870 (concluding the plaintiffs' claims regarding "100 distinct loan transactions with many different lenders" did not arise out of the same transaction or occurrence because the plaintiffs' "interactions with [d]efendants were not uniform").

Nor do these claims present common questions of law or fact given that Plaintiffs seek different classes of visa (EB-1, EB-2, and EB-3), subject to different prioritization schemes, and allege periods of delay ranging from six to eighteen months. *See, e.g.*, *Coughlin*, 130 F.3d at 1351 (concluding the plaintiffs failed to allege a common question of law or fact where the plaintiffs "filed different applications, petitions, or forms" and "present[ed] . . . different factual situation[s]" requiring "personalized attention" such that their claims were discrete); *Visendi*, 733 F.3d at 870 (holding the plaintiffs' claims did not present any common questions of law or fact by alleging that "[d]efendants violated the same laws in comparable ways"). At bottom, the court concludes Plaintiffs' remaining claims require individualized, fact-intensive inquiry, and thus Plaintiffs are not properly joined under Rule 20. *See, e.g.*, *Stith v. California*, 2023 WL 4274043, at *4 (E.D. Cal. June 29, 2023) (concluding "[t]he joinder of multiple Plaintiffs with varying factual allegations does not promote judicial economy and confuses and complicates the issues because there are questions of fact and causation unique to each of their alleged injuries").

Second, the court finds severing certain parties is appropriate due to the significant indicia of forum shopping present in this suit. "Forum shopping refers to '[t]he practice of choosing the most favorable jurisdiction or court in which a claim might be heard.'" *R.R. Street & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 981 (9th Cir. 2011) (quoting Black's Law Dictionary 726 (9th ed. 2009)). The court may "infer forum-shopping" where "the same plaintiffs represented by the same law firms filed virtually identical lawsuits," *Walker v. Discover Fin. Servs.*, 2010 WL 4269193, at *3 (N.D. Cal. Oct. 25, 2010), or where a party "pursued suit in a new forum after facing setbacks in the original proceeding," *Seneca Ins. Co., Inc. v. Strange Lend., Inc.*, 862 F.3d 835, 846 (9th Cir. 2017).

In this case, two plaintiffs originally party to this suit, Amirreza Moini and Sayyed Mahdi Ziaei, previously filed identical suits challenging the delay on their visa applications in another district with the same counsel and voluntarily dismissed their

cases while a motion to dismiss was pending. *See Moini v. Blinken*, No. 1:23-02245-BAH (D.D.C.) (filed August 3, 2023, voluntarily dismissed May 26, 2024); *Ziaei v. Blinken*, No. 1:23-01461-CRC (D.D.C.) (filed May 22, 2023, voluntarily dismissed September 21, 2023). Four other plaintiffs, Esmaeil Sadeghi, Paria Karimi, Fatemeh Safarpour Dizboni, and Ayou Amini, filed identical challenges to the delay on their visa applications in other districts with different counsel and voluntarily dismissed these suits while a motion to dismiss was pending. *See Sadeghi v. Blinken*, No. 4:23-03007 (S.D. Tex.) (filed by Plaintiffs Sadeghi and Karimi on August 15, 2023, voluntarily dismissed on May 14, 2024); *Dizboni v. Blinken*, No. 1:23-01480-APM (D.D.C.) (filed by Plaintiffs Dizboni and Amini on May 24, 2023, voluntarily dismissed on May 14, 2024). Three out of four these dismissals occurred within one to two weeks of Plaintiffs filing the Complaint in this matter. (*See* Compl. (filed May 31, 2024).) Further, Plaintiffs Moini, Ziaei, Sadeghi, and Karimi followed the same pattern in this suit, voluntarily dismissing their claims after Defendants filed the Motion to Dismiss. (*See, e.g.*, Dkts. 28, 35, 38.)

Plaintiffs maintain they are not forum shopping because Defendants identified only six plaintiffs who filed prior suits, and those six plaintiffs did not assert the same claims. (Dkt. 21 at 33.) Plaintiffs do not explain how the six plaintiffs' claims differed in past suits, and this argument does not alleviate the court's forum shopping concerns. As another district court explained in a similar suit brought by Plaintiffs' counsel challenging the DS-5535 scheme:

> The similarity of the facts underlying all these cases, the pattern of voluntarily dismissing after defendants moved to dismiss, that plaintiffs were represented by the same attorney who represents them here, and the fact that the majority of the plaintiffs in this case appear to have no connection to the Northern District of California, all combine to suggest that many of the plaintiffs have joined together in this case and refiled their suits here in order to obtain what they perceive to be a more favorable forum.

*Pars Equality Ctr.*, 2024 WL 4700636, at \*9.

Although not all the suits discussed above were initiated by Plaintiffs' counsel, the court finds the other considerations outlined in *Pars Equality Center* suggest Plaintiffs have engaged in forum-shopping here, particularly because the voluntary dismissals were close in time to the filing of the Complaint, only one plaintiff has any connection to the Central District of California, and Plaintiffs followed the same pattern of dismissing certain parties after Defendants filed the Motion to Dismiss.

In sum, given the dismissal of Plaintiffs' common claims (counts one and two), the fact-intensive nature of Plaintiffs' remaining claims (counts three, four, five, and six), and the court's forum shopping concerns, the court concludes the interests of justice are not served by joinder of Plaintiffs in this case. Further, the court finds severance will not result in prejudice to any of Plaintiffs' substantial rights because Plaintiffs may pursue their claims individually. *See Visendi*, 733 F.3d at 871. Therefore, the court **SEVERS** the claims of those plaintiffs who do not reside in the Central District of California into separate actions pursuant to Federal Rule of Civil Procedure 21. *See id.* at 1350 ("[T]he court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs against some or all of the present defendants based on the claim or claims attempted to be set forth in the present complaint.") (internal quotation marks and citation omitted). The court **ORDERS** the severed parties to file notices detailing how they would like to proceed on their remaining claims by **January 10, 2025**, as detailed in section IV, *infra*.

The remainder of this order binds only the Plaintiffs that reside in the Central District of California: primary applicant Plaintiff Ariani, derivative applicant Plaintiff Mikaniki, and their children, A.M. and A.M.

3. <u>Counts Three, Four, Five and Six: The Unreasonable Delay and Unlawful Withholding Claims</u>

Plaintiff Ariani and Plaintiff Mikaniki's third, fourth, fifth, and sixth claims allege Defendants unlawfully withheld and unreasonable delayed in adjudicating Plaintiff Mikaniki's visa application under the APA and the Mandamus Act. (*See, e.g.*, Compl. ¶¶ 457-511.) Defendants argue these claims should be dismissed because Plaintiff Ariani and Plaintiff Mikaniki sued the wrong defendants, failed to allege a mandatory duty, previously received a final decision on Plaintiff Mikaniki's visa application and cannot relitigate that decision under the doctrine of consular nonreviewability, and failed to allege unreasonable delay. (Dkt. 16 at 40-55.)

"The standard by which a court reviews this type of agency inaction is the same under both § 706(1) of the APA and the Mandamus Act, 28 U.S.C. § 1361." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017) (citing, *inter alia*, *Norton v. S. Utah Wilderness All. (SUWA)*, 542 U.S. 55, 63-64 (2004)); *see also Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022) ("[M]andamus relief and relief under the APA are 'in essence' the same, when a complaint seeks relief under the Mandamus Act and the APA and there is an adequate remedy under the APA.") (citation and some internal quotation marks omitted); *Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997 (noting "the Supreme Court has construed a claim seeking mandamus under [§ 1361], 'in essence,' as one for relief under § 706 of the APA") (citing *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986)).

Accordingly, courts treat the inquiries under these statutes as coextensive. *See, e.g.*, *Agua Caliente Tribe of Cupeno Indians of Pala Rsrv. v. Sweeney*, 932 F.3d 1207, 1216 (9th Cir. 2019) (analyzing § 1361 and § 706(1) "together because the relief sought is essentially the same") (cleaned up); *Vaz*, 33 F.4th at 1135 (electing to "analyze the APA claim only" where complaint sought relief under the Mandamus Act and the APA and plaintiff had an adequate remedy under the APA even though plaintiff's APA claim failed on the merits); *Plaskett v. Wormuth*, 18 F.4th 1072, 1082

(9th Cir. 2021) (noting "regardless of whether [plaintiff's] claim is viewed as one under § 1361 or under § 706(1)," plaintiff "was required to plead, *inter alia*, that the [defendant] had a clear, certain, and mandatory duty . . .").

The APA requires agencies to conclude matters "within a reasonable time," 5 U.S.C. § 555(b), and permits a court to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1). "A court can compel agency action under this section only if there is 'a specific, unequivocal command' placed on the agency to take a 'discrete agency action,' and the agency has failed to take that action." *Vietnam Veterans of Am. v. Cent. Intel. Agency*, 811 F.3d 1068, 1075 (9th Cir. 2016) (quoting *SUWA*, 542 U.S. at 63-64). "[T]he purportedly withheld action must not only be 'discrete,' but also 'legally *required*'—in the sense that the agency's legal obligation is so clearly set forth that it could traditionally have been enforced through a writ of mandamus." *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 932 (9th Cir. 2010) (citing *SUWA*, 542 U.S. at 63). "Thus, a court may compel agency action under the APA when the agency (1) has a clear, certain, and mandatory duty, and (2) has unreasonably delayed in performing such duty." *Vaz*, 33 F.4th at 1136 (citations and internal quotation marks omitted).

a.    *Improper Defendants*

Defendants argue that the court should dismiss Plaintiff Ariani and Plaintiff Mikaniki's third, fourth, fifth and sixth claims because Defendant Blinken and Defendant Jachim "have no role in re-adjudicating visa applications." (Dkt. 16 at 40-41.) Plaintiff Ariani and Plaintiff Mikaniki contend Defendants are the proper parties to redress his unreasonable delay and unlawful withholding claims because both "play a role in visa processing and the background checks necessary for consular officers to make a final decision on visa applications." (Dkt. 21 at 33-34.)

The court agrees that Defendant Blinken and Defendant Jachim are proper parties to redress Plaintiff Ariani and Plaintiff Mikaniki's unlawful withholding and

unreasonable delay claims. Defendants' argument is premised upon the proposition that the INA "grants consular officers exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determination." (Dkt. 16 at 40 (quoting *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021).) However, that proposition does not apply to Plaintiff Ariani and Plaintiff Mikaniki's claims because they are challenging the unreasonable delay in adjudicating Plaintiff Mikaniki's application, as opposed to consular officer's final determination. (*See, e.g.*, Compl. ¶¶ 457-511.) "The control of a consular officer's visa determinations differs from control over the timing by which the consular officer considers the applications presented to them." *Durham v. Blinken*, 2024 WL 3811146, at *3 (C.D. Cal. Aug. 8, 2024) (citing *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 10 (D.D.C. 2022)).

Further, Defendants' official duties suggest they could redress the delay in adjudicating Plaintiff Mikaniki's visa application. According to the Complaint, Defendant Blinken, as the Secretary of State, "has supervisory responsibility over" all United States embassies and visas issued after DS-5535 responses are evaluated. (Compl. ¶ 348.) As numerous other courts have concluded, "nothing precludes [Defendant Blinken] from directing the consular officers to decide pending applications 'within a reasonable time.'" *Janay v. Blinken*, --- F. Supp. 3d ----, 2024 WL 3432379, at *4 (D.D.C. July 16, 2024) (citation omitted); *see also Ramirez v. Blinken*, 594 F. Supp. 3d 76, 90 (D.C.C. 2022) ("[T]he Secretary has the authority to manage the operations of the State Department and the Foreign Service. While the Secretary may have left the discretion of when to conduct interviews to consular chiefs that is simply a delegation of authority he undoubtedly possesses.") (cleaned up).

Similarly, Defendant Jachim, as the Acting Director of the Office of Screening, Analysis, and Coordination, oversees the administrative processing that purportedly

caused the delay on Plaintiff Mikaniki's application. (*See, e.g.*, Compl. ¶¶ 8-10, 376 & Exh. K); *see also Aminzadeh v. Blinken*, 2024 WL 3811153, at *3 (C.D. Cal. Aug. 9, 2024) (concluding the Acting Director of the Office of Screening, Analysis, and Coordination could redress the plaintiffs' unreasonable delay claim because he oversaw "the department responsible for the administrative processing that [the] [p]laintiffs' claim has caused the delay in adjudication"). Thus, the court concludes both Defendants are properly named, and the Motion to Dismiss is **DENIED** as to whether Defendants can redress Plaintiff Ariani and Plaintiff Mikaniki's claims.

b.    *Mandatory Duty and Consular Non-Reviewability*

Defendants argue that Plaintiff Ariani and Plaintiff Mikaniki have failed to allege a clear, non-discretionary duty based on Defendants' purported delay in acting because: (1) the allocation of consular resources, including the pace of visa adjudications, is discretionary; (2) any duty to act was satisfied when Plaintiffs' visa application was refused under 8 U.S.C. § 1201(g) and 22 C.F.R. §§ 41.121(a) and 42.81(a); and (3) that refusal is not reviewable under the doctrine of consular nonreviewability.[8] (Dkt. 16 at 41-48.) Plaintiff Ariani and Plaintiff Mikaniki allege

_____

[8] Defendants also request that the court "revisit its duty analysis" in light of several of the court's prior decisions that Defendants argue were wrongly decided. (Dkt. 16 at 44 n.7.) Defendants principally rely on *Karimova v. Abate*, 2024 WL 3517852 (D.C. Cir. July 24, 2024). As the court has noted previously, this authority is not binding and lacks precedential or persuasive value to the case at bar. *See Hajizadeh v. Blinken*, 2024 WL 3638336, at *3 n.3 (D.C.C. Aug. 2, 2024) (declining to follow *Karimova* because it is "an unpublished opinion, and 'a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition'") (citing D.C. Cir. R. 36(e)(2)); *Maadarani v. Mayorkas*, 2024 WL 4674703, at *8 (E.D. Cal. Oct. 31, 2024) ("The [c]ourt is not persuaded by Defendants' reliance on *Karimova*'s holding regarding § 555(b). *Karimova* primarily relied on the Foreign Affairs Manual (FAM) to determine that an initial visa refusal constitutes a final decision" but "the FAM 'lack[s] the force of law' in the Ninth Circuit.") (citations omitted).

that Defendants have a mandatory duty to adjudicate Plaintiff Mikaniki's visa application within a "reasonable time" under 5 U.S.C. § 555(b). (Dkt. 21 at 37-40; Compl. ¶¶ 378-79.)

The court is not persuaded by Defendants' arguments. First, Defendants argue that Plaintiff Ariani and Plaintiff Mikaniki have failed to allege a mandatory duty to act because the government is not legally required to adjudicate visa applications within a certain timeframe. However, "a mandatory duty to act may exist without a mandatory deadline." *Infracost Inc.*, 2024 WL 1914368, at *6 (stating "in contrast to actions alleging unlawful withholding, actions alleging unreasonable delay by definition involve situations where an agency has a mandatory duty, but has not violated a mandatory deadline"); *see also Aminzadeh*, 2024 WL 3811153, at *4 ("[T]here is a difference between the [government]'s discretion over how to resolve an application and the [government's] discretion over whether it resolves an application.") (quoting *Khan v. Johnson*, 65 F. Supp. 3d 918, 926 (C.D. Cal. 2014)). Even in the absence of a binding deadline to issue a final decision on a visa application, "[a] consular office is required by law to act on visa applications." *Patel v. Reno*, 134 F.3d 929, 932 (9th Cir. 1997). In particular, under 22 C.F.R. § 42.81(a), "[w]hen a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa [or] refuse the visa under INA 212(a) or 221(g) or other applicable law . . . ." 22 C.F.R. § 42.81(a).

Further, consular officers must render a final adjudication on visa applications "within a reasonable time." 5 U.S.C. § 555(b). Section 555(b) generally "requires agencies to 'conclude a matter presented to it' 'within a reasonable time,'" meaning that agencies have "a duty to fully respond to matters that are presented to it under its internal processes." *In re A Cmty. Voice*, 878 F.3d at 784 (quoting 5 U.S.C. § 555(b)) (citing *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 418 (D.C. Cir. 2004)). The use of the term "shall" in this statute is "mandatory language" that "usually

connotes a requirement." *Maine Cmty. Health Options v. United States*, 590 U.S. 296, 310 (2020) (citations and internal quotation marks omitted); *see also Nat. Res. Def. Council, Inc. v. Perry*, 940 F.3d 1072, 1078 (9th Cir. 2019). Accordingly, the court concludes section 555(b) requires the processing of a visa application "within a reasonable time under the APA." *Borzouei v. Bitter*, 2022 WL 17682659, at *4 (S.D. Cal. Dec. 14, 2022) (citing 5 U.S.C. § 555(b)); *see also Khan v. Blinken*, 2024 WL 3446432, at *5 (E.D. Cal. July 17, 2024) (finding a non-discretionary duty under 5 U.S.C. § 555 requiring "adjudication of immigrant visa applications within a reasonable time"); *Iqbal v. Blinken*, 2023 WL 7418353, at *7 (E.D. Cal. Nov. 9, 2023) (finding "[t]he APA imposes a clear nondiscretionary duty" on defendants to adjudicate immigrant visa petitions within a reasonable time).

Defendants next argue the refusal of Plaintiff Mikaniki's visa application for administrative processing under 8 U.S.C. § 1201(g) and 22 C.F.R. §§ 41.121(a) and 42.81(a) satisfied Defendants' duty to adjudicate the visa application. But the Ninth Circuit has held that a "refusal" of a visa application does not constitute "a refusal within the meaning of 22 C.F.R. § 42.81" if "it is not a final decision." *Patel*, 134 F.3d at 932-33 (concluding the consulate did not issue a refusal within the meaning of 22 C.F.R. § 42.81 by holding visa applications in abeyance for eight years pending conclusion of denaturalization procedures); *see also Aminzadeh*, 2024 WL 3811153, at *4 ("The mere fact that the [State] Department has chosen to characterize this action as a 'refusal' does not necessarily make it a final decision; 'the focus should be on what is actually happening.'") (quoting *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98 (D.D.C. 2020)).

In this case, Plaintiff Ariani and Plaintiff Mikaniki allege that the consular officer issued a non-final 221(g) decision and requested DS-5535 responses from Plaintiff Mikaniki, Plaintiff Mikaniki provided DS-5535 responses on December 2, 2023, and Plaintiff Mikaniki remains in administrative processing. (Compl. ¶¶ 33-36.) "Courts have 'consistently recognized' that 'where the application is still undergoing

administrative processing, even where a refusal has been relayed, the decision is not final.'" *Nusrat v. Blinken*, 2022 WL 4103860, at *5 (D.D.C. Sept. 8, 2022) (collecting cases); *see also Durham*, 2024 WL 3811146, at *5; *Aminzadeh*, 2024 WL 3811153, at *4; *Kiani v. Blinken*, 2024 WL 658961, at *4-5 (C.D. Cal. Jan. 4, 2024); *Shahijani v. Laitinen*, 2023 WL 6889774, at *3 (C.D. Cal. Oct. 6, 2023); *Billoo v. Baran*, 2022 WL 1841611, at *4 (C.D. Cal. Mar. 18, 2022); *Gonzalez v. Baran*, 2022 WL 1843148, at *2 (C.D. Cal. Jan. 11, 2022). Accepting the Complaint's allegations as true, the court concludes Defendants have not issued a final decision on Plaintiff Mikaniki's visa application within the meaning of 8 U.S.C. § 1201(g), 22 C.F.R. §§ 41.121(a) and 42.81(a) by refusing the application for administrative proceedings.[9]

Finally, Defendants argue that the doctrine of consular nonreviewability precludes judicial review of the consular official's decision to deny Plaintiff Mikaniki's visa application. Although "a consular official's decision to deny a visa to a foreigner is not subject to judicial review," *Khachatryan v. Blinken*, 4 F.4th 841, 849 (9th Cir. 2021), suits challenging "the authority of the consul to take or fail to take an action" are reviewable, *Patel*, 134 F.3d at 931. In this case, Plaintiff Ariani and Plaintiff Mikaniki have adequately pleaded that Defendants failed to issue a final decision on Plaintiff Mikaniki's visa application after the application was refused for administrative processing. (Compl. ¶¶ 35-36.) Because Plaintiff Ariani and Plaintiff Mikaniki challenge the delay, rather than the substance, of the consular officer's decision, the doctrine of consular nonreviewability does not apply. *See, e.g.*, *Aminzadeh*, 2024 WL 3811153, at *5 (rejecting defendants' argument that the doctrine of consular nonreviewability applied because the consular officer's refusal of the plaintiff's application was "a refusal for further administrative processing, not a

---

[9] The court also declines to grant the Motion to Dismiss with respect to Defendants' unlawful withholding argument premised upon the same reasoning. (*See* Dkt. 16 at 48-49.)

final decision"); *Abbassi v. Gaudiosi*, 2024 WL 1995246, at \*4 (E.D. Cal. May 6, 2024) (agreeing with the "prevailing position among most other district courts" that consular nonreviewability does not bar review of a visa application in administrative processing).

In sum, the court concludes Plaintiff Ariani and Plaintiff Mikaniki have sufficiently alleged that "Defendants have a nondiscretionary duty to complete the administrative processing and must satisfy that duty within a reasonable time." *Shahijani*, 2023 WL 6889774, at \*3.  The court next considers the *TRAC* factors.

### c.    *Unreasonable Delay*

Whether an agency's delay is unreasonable depends on the application of the six "*TRAC*" factors, named for the balancing test announced in *Telecommunications Rsch. & Action Ctr. ("TRAC") v. F.C.C.*, 750 F.2d 70, 79-80 (D.C. Cir. 1984).  *In re A Cmty. Voice*, 878 F.3d at 783-84 (citing *Indep. Min.*, 105 F.3d at 507).  The *TRAC* factors include:

> (1) the time agencies take to make decisions must be governed by a "rule of reason[";]
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*Vaz*, 33 F.4th at 1137 (quoting *TRAC*, 750 F.2d at 80).  "The most important is the first factor, the 'rule of reason,' though it, like the others, is not itself determinative." *In re A Cmty. Voice*, 878 F.3d at 786 (citing *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)).

Courts are split on the propriety of analyzing the *TRAC* factors on a motion to dismiss.  *Compare Moghaddam v. Pompeo*, 424 F. Supp. 3d 104, 117 (D.D.C. 2020) (declining to analyze the *TRAC* factors at the motion to dismiss stage as premature), *with Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 338-40 (D.C. Cir. 2023) (affirming dismissal of lawsuits alleging that decisions on visa-related petitions had been issued after approximately four years under Rule 12(b)(6)).  In this case, the court observes that the parties argue the merits of the *TRAC* factors in their briefing. (*Compare* Dkt. 16 at 49-55, *and* Dkt. 29 at 23-29, *with* Dkt. 21 at 43-50.)  With the benefit of that briefing, the court finds it appropriate to evaluate the *TRAC* factors at the motion to dismiss stage.  *See, e.g.*, *Infracost Inc.*, 2024 WL 1914368, at *7 (stating "plaintiffs in visa-application cases must . . . plausibly allege unreasonable delay under the *TRAC* factors to survive a motion to dismiss" and "authorizing discovery without such a showing would 'lead to a substantial imposition on the Government' given 'the surfeit of lawsuits challenging delays in processing visa applications'") (quoting *Rashidi v. U.S. Dep't of State*, 2023 WL 6460030, at *7 (D.D.C. Oct. 4, 2023)).

The court finds the first two *TRAC* factors favor Defendants.  These factors are "often considered together."  *See, e.g.*, *Assadian v. Oudkirk*, 694 F. Supp. 3d 1310, 1317 (S.D. Cal. 2023).  Contrary to Plaintiff Ariani and Plaintiff Mikaniki's argument, Congress has not proscribed a timetable for processing immigrant visa adjudications, and instead "has given the agencies wide discretion in the area of immigration

processing."[10]  *See Skalka*, 246 F. Supp. 3d at 153-54.  "Absent a congressionally

supplied yardstick, courts typically turn to case law as a guide."  *Arab v. Blinken*, 600

F. Supp. 3d 59, 70 (D.D.C. 2022) (citations and internal quotation marks omitted).

Approximately six months passed from the date of Plaintiff Mikaniki's

November 27, 2023, interview until the date Plaintiff Ariani and Plaintiff Mikaniki

initiated this action on May 31, 2024, and to date the delay amounts to just over one

year.[11]  (*See* Compl. ¶ 35.)  The delay in the decision on Plaintiff Mikaniki's visa

application is substantially less than the delays that courts in this Circuit find

unreasonable.  *See, e.g.*, *Ortiz v. U.S. Dep't of State*, 2023 WL 4407569, at *8 (D.

Idaho July 7, 2023) ("Generally, courts have found 'immigration delays in excess of

five, six, [and] seven years are unreasonable, while those between three to five years

are often not unreasonable.'") (collecting cases); *In re Cal. Power Exch. Corp.*, 245

_____

[10] Plaintiff Ariani and Plaintiff Mikaniki argue Congress supplied a timetable in 8
U.S.C. § 1571, which states that "[i]t is the sense of Congress that the processing of an
immigration benefit application should be completed not later than 180 days after the
initial filing of the application."  8 U.S.C. § 1571(b).  (Dkt. 21 at 45-46; Compl.
¶ 506.)  This argument is unavailing both because "[s]imilar statutory 'sense of
Congress' language has been interpreted as 'non-binding legislative dicta,'"
*Mohsenzadeh v. Kelly*, 276 F. Supp. 3d 1007, 1014 (S.D. Cal. 2017) (citing *Yang v.
Cal. Dep't of Soc. Serv.*, 183 F.3d 953, 961 (9th Cir. 1999)), and because Plaintiffs
have failed to identify any authority suggesting this provision applies to the State
Department's processing of visa applications, as opposed to USCIS's processing of
immigrant benefit applications, *see Arab*, 600 F. Supp. 3d at 69-70 (collecting cases).
[11] Plaintiff Ariani and Plaintiff Mikaniki argue the court should calculate the delay
from the date Plaintiff Mikaniki submitted his visa application.  (Dkt. 21 at 44-45.)
But "[c]ourts measure the period of delay from the last government action to the
issuance of the opinion," or, in this case, the November 27, 2023, interview.  *Nusrat v.
Blinken*, 2022 WL 4103860, at *6 & n.6 (D.D.C. Sept. 8, 2022); *see also Aminzadeh*,
2024 WL 3811153, at *6 n.3 (collecting cases for the proposition that "[i]n
administrative processing cases, courts uniformly consider delays since the
interview"); *Ferdowski v. Blinken*, 2024 WL 685912, at *4 n. 26 (C.D. Cal. Feb. 12,
2024) ("The delay is measured from the time that Plaintiffs attended their interview,
not the time that they first petitioned USCIS.").

F.3d 1110, 1125 (9th Cir. 2001) ("The cases in which courts have afforded relief have involved delays of years, not months.") (collecting cases); *In re A Cmty. Voice*, 878 F.3d at 787 ("[A] '14–month time period' without more is not unreasonable.") (quoting *United Steelworkers of Am. v. Rubber Mfrs. Ass'n*, 783 F.2d 1117, 1120 (D.C. Cir. 1986)). Given that the approximately one-year delay alleged by Plaintiff Mikaniki is "drastically short of what constitutes an unreasonable delay in the Ninth Circuit," *see Yavari*, 2019 WL 6720995, at *8, the court concludes the first and second *TRAC* factors strongly favor Defendants.

The court finds the third and fifth *TRAC* factors are neutral. "Courts typically consider the third and fifth TRAC factors together, namely the dangers to human health and welfare as well as the nature of the interests prejudiced by the delay." *Najafi v. Pompeo*, 2019 WL 6612222, at *7 (N.D. Cal. Dec. 5, 2019) (citations omitted); *see also Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1073 (N.D. Cal. 2014) (noting the third and fifth factors "overlap"). Here, the Complaint generally alleges that all Plaintiffs have suffered "emotional distress," "psychological harm," and "financial stresses" while their visa applications remain pending. (*See, e.g.*, Compl. ¶¶ 441-44.) The court acknowledges the difficulties inherent to awaiting a decision on a visa application. *See, e.g.*, *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 168-69 (D.C.C. 2021) (noting "many [applicants] face similarly difficult circumstances as they await adjudication of their visa applications") (cleaned up). However, the court concludes this factor is neutral because the Complaint does not tie these conclusory allegations to Plaintiff Mikaniki. (*See, e.g.*, Compl. ¶¶ 33-36.)

The court finds the fourth *TRAC* factor favors Defendants. Courts have "refused to grant relief, even though all the other factors considered in TRAC favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (cleaned up). "The State Department has limited resources" to process visa applications, and

-34-

"[m]any families have been impacted by visa processing delays." *Throw v. Mayorkas*, 2023 WL 2787222, at *5 (W.D. Wash. Apr. 5, 2023). Given these circumstances, an order requiring the adjudication of Plaintiff Mikaniki's application ahead of the current queue would interfere with Defendants' "discretion in prioritizing its activities and allocating its resources." *Vaz*, 33 F.4th at 1138 (citation omitted). Accordingly, this factor strongly favors Defendants. *See, e.g.*, *Infracost Inc.*, 2024 WL 1914368, at*10 (finding the fourth *TRAC* factor strongly favored the government when expediting administrative processing would "necessarily (1) impact the processing of similarly situated applicants and (2) reorder Department priorities"); *Jain v. Renaud*, 2021 WL 2458356, at *6 (N.D. Cal. June 16, 2021) ("Most courts have found that the fourth *TRAC* factor weighs heavily in the agency's favor when a judicial order putting plaintiffs at the head of the line would simply move all others back one space and produce no net gain.") (collecting cases).

  Finally, the court finds the sixth *TRAC* factor is neutral. "In absence of any allegations of impropriety, the sixth *TRAC* factor typically is either neutral or weighs in the government's favor." *R.*, 2023 WL 9197564, at *5 (citation omitted). In this case, Plaintiff Ariani and Plaintiff Mikaniki allege and argue that Defendants acted in bad faith by failing to adjudicate or provide an estimate timeframe as to Plaintiff Mikaniki's visa application and implementing the DS-5535 and § 221(g) non-final notice schemes. (Dkt. 21 at 49-50; Compl. ¶ 417.) The court dismissed both the DS-5535 and § 221(g) non-final notice claims and thus concludes these "schemes" do not plausibly suggest bad faith. *See* sections III(A)-(C). Plaintiff Ariani and Plaintiff Mikaniki's remaining allegations also do not suggest bad faith because this factor concerns "whether the reason behind the delay is improper," not "the length or nature of the delay." *Aminzadeh*, 2024 WL 3811153, at *8; *see also Milligan v. Pompeo*, 502 F. Supp. 3d 302, 320 (D.D.C. 2020) (noting allegations criticizing the defendants "efforts and prioritization" do not justify a reasonable inference of impropriety); *Babaei v. U.S. Dep't of State*, 2024 WL 1178453, at *8 (D.D.C. Mar. 19, 2024)

1   (rejecting argument that length of delay creates an appearance of impropriety).

2   Because the Complaint does not plausibly allege that the delay is intentional or the

3   result of impropriety on the part of the Defendants, the court concludes this factor is

4   neutral.

5        In sum, the first, second, and fourth factors favor Defendants, and the third,

6   fifth, and sixth factors are neutral.  On balance, the *TRAC* factors suggest the delay in

7   this case is reasonable, particularly given "the importance of the first and fourth

8   factors as well as how heavily they weigh in Defendants' favor."  *R.*, 2023 WL

9   9197564, at *5.  The court concludes Plaintiff Ariani and Plaintiff Mikaniki failed to

10   adequately allege unreasonable delay, and accordingly **DISMISSES** Plaintiff Ariani

11   and Plaintiff Mikaniki's remaining claims for agency action unlawfully withheld and

12   unreasonably delayed under APA sections 555(b), 706(1), and 706(2) and the

13   Mandamus Act (counts three, four, five, and six).  Because no amendment consistent

14   with the Complaint would alter the court's conclusion regarding unreasonable delay at

15   this time, the court **DISMISSES** the Complaint **WITHOUT LEAVE TO AMEND**.

16   This dismissal, however, is **WITHOUT PREJUDICE** should later circumstances

17   demonstrate an unreasonable delay.  *See, e.g.*, *Infracost Inc.*, 2024 WL 1914368, at

18   *11; *Aminzadeh*, 2024 WL 3811153, at *9; *Shahijani*, 2023 WL 6889774, at *6.

19
20        **B.   Plaintiffs' Motion for Preliminary Injunction**

21        Because the other plaintiffs' claims have been severed, *see* section III.A.3,

22   *supra*, the court considers the Motion for Preliminary Injunction only as to Plaintiff

23   Ariani, Plaintiff Mikaniki, and their minor children.  Plaintiff Ariani and Plaintiff

24   Mikaniki seek preliminary relief on their unreasonable delay and unlawful

25   withholding claims in the form of an order requiring Defendants to issue a decision on

26   Plaintiff Mikaniki's application by January 20, 2025.  (Dkt. 41-1 at 20-31; Dkt. 41-2.)

27   As discussed above, Plaintiff Ariani and Plaintiff Mikaniki must demonstrate "[1] that

28   [they are] likely to succeed on the merits, [2] that [they are] likely to suffer irreparable

harm in the absence of preliminary relief, [3] that the balance of equities tips in [their] favor, and [4] that an injunction is in the public interest." *Am. Beverage Ass'n*, 916 F.3d at 754 (quoting *Winter*, 555 U.S. at 20).

As Defendants note, (Dkt. 45 at 12-23), Plaintiff Ariani and Plaintiff Mikaniki seek a mandatory injunction, which "orders a responsible party to take action." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (quoting *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996)); *cf. Babaria v. Blinken*, 2022 WL 10719061, at *6 (N.D. Cal. Oct. 18, 2022) (concluding that the plaintiffs sought a mandatory injunction where "the injunction requested would require [defendants] to take action by adjudicating plaintiffs' [visa] applications for adjustment of status"). In seeking a mandatory injunction, Plaintiff Ariani and Plaintiff Mikaniki's burden under the first *Winter* factor is "doubly demanding" because they "must establish that the law and facts clearly favor [their] position, not simply that [they are] likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc).

The court finds Plaintiff Ariani and Plaintiff Mikaniki have failed to demonstrate a likelihood of success on the merits of their APA and Mandamus Act claims. To succeed on those claims, the plaintiff must demonstrate that "the agency (1) has a clear, certain, and mandatory duty, and (2) has unreasonably delayed in performing such duty." *Vaz*, 33 F.4th at 1136. However, the court has already determined that Plaintiff Ariani and Plaintiff Mikaniki failed to allege that the delay on Plaintiff Mikaniki's application is unreasonable. *See* section III(A)(3)(b), *supra*. "Failure to plausibly allege a claim can bar a finding of likelihood of success on the merits in the preliminary injunction inquiry." *Weiss v. Perez*, 602 F. Supp. 3d 1279, 1304 (N.D. Cal. 2022).

The court notes that Plaintiff Ariani and Plaintiff Mikaniki have not provided any additional evidence or argument suggesting a likelihood of success on the issue of unreasonable delay. (*See generally* Dkt. 41-1.) In fact, Plaintiffs' counsel conceded

at oral argument that the weight of authority suggests the approximately one-year

delay on Plaintiff Mikaniki's application is reasonable.  (Dkt. 48.)  Thus, the court

concludes that Plaintiff Ariani and Plaintiff Mikaniki have not adequately

demonstrated that they are likely to succeed on the merits of their unreasonable delay

and unlawful withholding claims, let alone that the law and facts clearly favor their

position.  *See, e.g.*, *Doe v. Fed. Dist. Ct.*, 467 Fed. App'x 725, 728 (9th Cir. 2012)

("Because Doe's complaint was insufficient to survive a motion to dismiss for failure

to state a claim, she could not show a strong likelihood of success on the merits.");

*Kelley v. Mortg. Elec. Registration Sys., Inc.*, 642 F. Supp. 2d 1048, 1059 (N.D. Cal.

2009) (granting motions to dismiss and, as a result, denying motion for preliminary

injunction for failure to show likelihood of success on the merits).

Because "[t]he failure to show a likelihood of success on the merits precludes

injunctive relief," the court **DENIES** the Motion for Preliminary Injunction.

*Assurance Wireless USA, L.P. v. Reynolds*, 100 F.4th 1024, 1049 (9th Cir. 2024); *see*

*also Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (holding

courts "need not consider the other factors in the absence of serious questions going to

the merits").

## IV.    DISPOSITION

For the reasons set forth above, the Motion to Dismiss is **GRANTED IN**

**PART AND DENIED IN PART** and the Motion for Preliminary Injunction is

**DENIED**.  The court **ORDERS** the following:

1. The court **DISMISSES** Counts One and Two **WITH PREJUDICE**.

2. The court **DISMISSES** Counts Three, Four, Five, and Six as to Plaintiff Ariani
   and Plaintiff Mikaniki **WITHOUT LEAVE TO AMEND** but **WITHOUT**
   **PREJUDICE** should later circumstances demonstrate unreasonable delay.

3. The court **SEVERS** the claims of all plaintiffs residing outside of the Central
   District of California.  The court **ORDERS** these Plaintiffs to file a notice by
   **January 10, 2025**, indicating whether they prefer the court to: (1) dismiss their
   claims without prejudice, (2) transfer their case to the United States District

Court for the District of Columbia, or (3) transfer their case to the judicial district in which the plaintiff resides.  The notice shall be accompanied by a proposed order.  Failure to file a notice will result in dismissal for failure to prosecute or comply with court orders.

**IT IS SO ORDERED.**

DATED: December 26, 2024

Honorable Fred W. Slaughter
UNITED STATES DISTRICT JUDGE