UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**TOKTAM HOSSEINNEZHAD ARIANI**, *et al.*,

        Plaintiffs,

    v.

**MARCO RUBIO**, *et al.*,

        Defendants.

No. 25-cv-349 (TSC)

## MEMORANDUM OPINION

Plaintiffs are 58 Iranian nationals whose visa applications were refused under 8 U.S.C. § 1201(g) and placed into administrative processing. They sued the Secretary of State and another State Department official, seeking to compel further action on their refused applications. *See* Compl., ECF No. 1. Defendants now move for judgment on the pleadings, arguing that State Department officials have no duty to act on already refused visa applications. Defs.' Mot. for J. on the Pleadings at 10, ECF No. 58 ("Defs.' Mot.").

Also before the court is Plaintiffs' motion for leave to amend their complaint. In addition to their original claims of unreasonable delay and unlawful withholding under the Administrative Procedure Act ("APA") and Mandamus Act, Plaintiffs now seek to challenge Presidential Proclamation No. 10949, which suspends the entry of most Iranian nationals into the United States, as well as two State Department policies that purport to implement the Proclamation. Pls.' First Mot. to Amend, ECF No. 71. For the reasons below, the court will GRANT Defendant's Motion for Judgment on the Pleadings, and GRANT in part and DENY in part Plaintiffs' First Motion to Amend the Complaint. A separate order will follow.

Page **1** of 15

I.  **BACKGROUND**

**A. Legal Background**

To initiate an application for an employment-based visa, either the noncitizen applicant or their employer—depending on the specific visa sought—must file a Form I-140 Petition with U.S. Citizenship and Immigration Services ("USCIS"). 8 C.F.R. § 204.5(a). If USCIS approves the petition and the applicant resides outside the United States, the petition is forwarded to the State Department's National Visa Center for pre-processing. *See id.* § 204.5(n); *see also* U.S. Dep't of State, *Immigrant Visa Process – NVC Processing*, https://perma.cc/X82F-G26W (last accessed November 18, 2025). The applicant must then submit a Form DS-260, which is forwarded to the appropriate U.S. Embassy or Consulate for an interview with a consular officer. 22 C.F.R. § 42.63; *see also* U.S. Dep't of State, *Immigrant Visa Process – Applicant Interview*, https://perma.cc/P2KF-X7B8 (last accessed November 18, 2025). "[B]y bringing the required paperwork to [the] in-person interview with a consular officer," applicants "'execute' their applications." *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *1 (D.C. Cir. July 24, 2024) (quoting 9 F.A.M. § 504.1-3(a), (g)).

Once an application is executed, "the consular officer must issue" or "refuse the visa." 22 C.F.R. § 41.121(a); *see also* 9 F.A.M. § 504.1-3(g) ("Once an application has been executed, [the consular officer] must either issue the visa or refuse it.").[1] If the applicant fails to establish their visa eligibility, the consular officer "shall" refuse their application under section 221(g) of the Immigration and Nationality Act ("INA"). *See* 8 U.S.C. § 1201(g); *see also id.* § 1361 (placing burden on applicant to establish eligibility). A refusal is a "formal," "official decision" that fulfills

---

[1] If the applicant's home country is under a visa sanction, the consular officer must instead "discontinue granting the visa." 22 C.F.R. § 41.121(a). This provision is inapplicable here.

any obligation a consular officer has to act on a visa application. *Karimova*, 2024 WL 3517852, at *2 (cleaned up). That said, a consular officer "may choose to place an officially refused application in administrative processing," which allows the officer to "re-open and re-adjudicate" the previously refused application if additional information comes to light. *Karimova*, 2024 WL 3517852, at *2 (citing 9 FAM §§ 306.2-2(A)(a), (A)(a)(2)). "Unless and until" an officer re-opens an application, it "remains officially refused." *Id.*

In June 2025, President Trump issued Presidential Proclamation 10949. *See* 90 Fed. Reg. 24497 (June 4, 2025). Invoking his authority under section 212(f) of the INA—which provides that the President "may . . . suspend the entry of all [noncitizens] or any class of [noncitizens]" "[w]henever [he] finds that the entry of any [noncitizens] or any class of [noncitizens] . . . would be detrimental to the interests of the United States," 8 U.S.C. § 1182(f)—President Trump suspended the entry of certain noncitizens from 19 countries, including Iran. *See* 90 Fed. Reg. at 24498–99. The Proclamation establishes several exceptions. As relevant here, it allows for the entry of individuals who "the Secretary of State finds . . . would serve a United States national interest"—the so-called "the National Interest Exception." *Id.* at 24503. Shortly after President Trump issued the Proclamation, the State Department "sent implementing guidance to all diplomatic and consular posts worldwide," informing those posts that they should refuse visas to persons otherwise eligible if they are subject to the Proclamation. *Thein v. Trump*, No. 25-cv-2369 (SLS), 2025 WL 2418402, at *3 (D.D.C. Aug. 21, 2025). Plaintiffs refer to this as the "No Visa Policy."

B. **Procedural History**

Plaintiffs originally filed this case in the U.S. District Court for the Central District of California. *See* Order Granting in Part and Denying in Part Defs.' Mot. to Dismiss, ECF No. 49

("MTD Order"). At the time, there were 96 Plaintiffs. *See* Compl. ¶¶ 30–347. All were Iranian nationals who had "applied for employment-based visas," as well as their "derivative spouses and minor child beneficiaries." MTD Order at 4. "Each primary applicant plaintiff [had] participated in a consular interview, had their visa refused under 8 U.S.C. § 1201(g)," and had their application placed into administrative processing. *Id.*; *see also* Compl. ¶¶ 4–6, 30–347.

Plaintiffs' original complaint contained two APA claims challenging aspects of the administrative-processing scheme, *see* Compl. ¶¶ 445–56, as well as four claims under the APA and Mandamus Act for the alleged unlawful withholding and unreasonable delay in acting further on Plaintiffs' refused visa applications. *Id.* ¶¶ 457–511. Defendants moved to dismiss all six claims. A district court in the Central District of California dismissed with prejudice Plaintiffs' two challenges to the administrative-processing scheme, *see* MTD Order at 10–19; determined that venue was improper in the Central District of California as to the remaining claims of all Plaintiffs who resided outside that District, *see id.* at 19–23; and transferred the unlawful withholding and unreasonable delay claims of 70 Plaintiffs to this court. *See* Order Dismissing and Transferring Certain Pls.' Claims at 3–4, ECF No. 50.

Defendants then answered the original complaint, *see* Answer, ECF No. 57, and moved for judgment on the pleadings, arguing that Plaintiffs' claims for unlawful withholding and unreasonable delay are barred by the D.C. Circuit's decision in *Karimova v. Abate*. *See* Defs.' Mot. at 10–12. Plaintiffs' opposed Defendants' motion, *see* Pls.' Opp'n, ECF No. 61, and moved "to strike certain paragraphs in Defendants' answer" on the basis that Defendants insufficiently denied certain allegations in Plaintiffs' Complaint. Pls.' Mot. to Strike, ECF No. 60.

In July 2025, Plaintiffs moved to amend their complaint in response to Presidential Proclamation 10949. They assert that "the proposed amendments to the Complaint do not alter [their] fundamental claims" of unlawful withholding and unreasonable delay. *See* Pls.' Mot. at 6. Plaintiffs seek to add four new claims challenging the Proclamation and the State Department's implementation of it. *See* Pls.' Reply – Ex. A (Redlined Amended Compl.) at 135–43, ECF No. 73-1 ("Proposed Am. Compl.").

First, Plaintiffs claim that section 212(f) of the INA is an unconstitutional delegation of legislative power, and, even if it were constitutional, the Proclamation exceeds the President's authority under that provision. *See* Proposed Am. Compl. at 135–37. Second, Plaintiffs argue that the State Department's policy implementing the National Interest Exception is arbitrary and capricious. *See id.* at 137–38. Third, Plaintiffs contend that the State Department's No Visa Policy is contrary to law because the President's determination that the *entry* of certain noncitizens into the United States should be suspended does not necessarily mean that those noncitizens should be refused a visa. *See id.* at 138–41. And fourth, Plaintiffs claim that the No Visa Policy is arbitrary and capricious. *See id.* at 141–43. Defendants oppose Plaintiffs' motion to amend their complaint. *See* Defs.' Opp'n at 3–10, ECF No. 72.

## II.    MOTION TO STRIKE

Under Federal Rule of Civil Procedure Rule 12(f), a party may move to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." "Motions to strike are disfavored," in part because they often "burden the court unnecessarily." *Cherokee Nation v. Dep't of the Interior*, 643 F. Supp. 3d 90, 121 (D.D.C. 2022) (quoting *Tyson v. DeJoy*, No. 21-5279, 2022 WL 3568046, at *1 (D.C. Cir. Aug. 11, 2022)); *see also Uzlyan v. Solis*, 706 F. Supp. 2d 44, 51 (D.D.C. 2010) (explaining that "striking portions of a pleading is a drastic remedy" and

motions to strike are viewed "with such disfavor that many courts will grant such a motion only if the portions sought to be stricken as immaterial are also prejudicial or scandalous").

It is unclear how any of the paragraphs Plaintiffs move to strike can fairly be characterized as "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). And in fact, Plaintiffs do not attempt to meet that standard, instead arguing that Defendants were insufficiently detailed in their denials of certain allegations. *See* Pls.' Mot. to Strike at 2–6. But Federal Rule of Civil Procedure 8(b) provides that in responding to the allegations of a complaint, a defendant need only "admit or deny the allegations asserted against it" or state that it "lacks knowledge or information sufficient to form a belief about the truth of an allegation." "No more [is] needed at the pleading stage." *Indigo America, Inc. v. Big Impressions, LLC*, 597 F.3d 1, 5 n.1 (1st Cir. 2010). "No response is required," moreover, "to legal conclusions in a complaint," and it is "acceptable" for a defendant to state that "the terms of documents attached to [a] complaint speak for themselves." *Khepera-Bey v. Santander Consumer USA, Inc.*, No. 11-1269, 2012 WL 1965444, at *5 (D. Md. May 30, 2012) (cleaned up). The court will therefore DENY Plaintiffs' Motion to Strike.

### III.    MOTION FOR JUDGMENT ON THE PLEADINGS

Federal Rule of Civil Procedure 12(c) permits a party to "move for judgment on the pleadings" "[a]fter the pleadings are closed—but early enough not to delay trial." "The standard of review for [a] Rule 12(c)" motion "essentially mirrors the standard for motions to dismiss under Rule 12(b)." *Tapp v. WMATA*, 306 F. Supp. 3d 383, 391 (D.D.C. 2016). The court must "accept as true the allegations in the opponent's pleadings," and ask whether "the moving party [has] demonstrate[d] that no material fact is in dispute and that it is entitled to judgment as a matter of law." *Marine Eng'rs Beneficial Ass'n v. Liberty Maritime Corp.*, 933 F.3d 751, 760–61 (D.C. Cir. 2019) (cleaned up).

Defendants have shown that they are entitled to judgment as a matter of law on Plaintiffs' claims of unlawful withholding and unreasonable delay under the APA and the Mandamus Act. To prevail under either statute, Plaintiffs must make the same "threshold" showing that the State Department has "'failed to take a discrete agency action that it is required to take.'" *Karimova*, 2024 WL 3517852, at *1 (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)).[2] Because Plaintiffs fail to point to any duty requiring the State Department to take further action on already-refused visa applications, they cannot prevail on these claims as a matter of law.[3]

Although Plaintiffs are correct that a consular officer must "issue" or "refuse" a visa once an application is executed, Pls.' Opp'n at 8 (quoting 22 C.F.R. § 41.121(a)), Plaintiffs have "already received" the "official refusal[s]" to which they are entitled. *Karimova*, 2024 WL 3517852, at *4. Indeed, Plaintiffs do not dispute that their visa applications have been refused under section 221(g) of the INA. Instead, they assert that an "interim 221(g) refusal" is insufficient to satisfy the State Department's purported duty to "conclusively adjudicate visa applications." Pls.' Opp'n at 6, 15. But a unanimous panel of the D.C. Circuit squarely rejected that argument in *Karimova v. Abate*. There, the Court explained that even if a consular officer places an executed application into administrative processing after refusing it, the officer has still issued a "formal" and "official refusal" that discharges any duty to act under 22 C.F.R. § 41.121(a) and section

---

[2] *See also In re Ctr. for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022) (To obtain the "extraordinary remedy" of mandamus, Plaintiffs "must first establish that the agency has violated a crystal-clear legal duty." (citation modified)); *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 227 (D.C. Cir. 2009) (To prevail on a claim of agency inaction under the APA, Plaintiffs must "identify a legally required, discrete act that [the agency] has failed to perform.").

[3] Because the court dismisses Plaintiffs' claims on this ground, it need not address Defendants' alternative argument that the doctrine of consular nonreviewability bars Plaintiffs' claims. *See Almaqrami v. Pompeo*, 933 F.3d 774, 784 n.3 (D.C. Cir. 2019) ("Courts may assume without deciding that a plaintiff's statutory claims are reviewable and proceed to the merits notwithstanding consular nonreviewability." (citation modified)).

555(b) of the APA. *Karimova*, 2024 WL 3517852, at *2, 4. This likewise fulfills any obligation under 22 C.F.R. § 41.106 to "properly and promptly" process a visa application, to the extent such an obligation exists. *See Hemmat v. Blinken*, 2024 WL 4210658, at *4 (D.D.C. Sep. 17, 2024). Because Plaintiffs identify no clear requirement that the State Department must act further once issuing a 221(g) refusal, they cannot state a claim under either the APA or the Mandamus Act. *See Sedaghatdoust v. Blinken*, 735 F. Supp. 3d 1, 7 (D.D.C. 2024) ("[T]he *only* duty that the statute or regulations impose on consular officers is a duty to grant or refuse a visa. And that duty has been performed; [plaintiff's] application has been refused. The statute does *not* create an additional duty to engage in post-refusal reconsideration . . . .").

Plaintiffs attack *Karimova* as an "unpublished per curiam opinion." Pls.' Opp'n at 18. Although "courts in this district are split on whether unpublished circuit decisions like *Karimova* are binding," *see Seifan v. Sweeney*, No. 25-cv-261, 2025 WL 2171093, at *3 (D.D.C. July 31, 2025) (collecting cases), this court has already concluded that it "must follow" *Karimova*. *See Deylami v. Kvien*, No. 23-cv-1393, 2025 WL 219064, at *5 (D.D.C. Jan. 16, 2025). While unpublished decisions of the D.C. Circuit are not binding on future panels of the Court of Appeals, those decisions are "precedential" if entered on or after January 1, 2002. *Davis v. U.S. Sent'g Comm'n*, 716 F.3d 660, 666 n.2 (D.C. Cir. 2013) ("Because it was unpublished, while that decision is precedential, it is not binding on *this panel*." (emphasis added)); *see also Khaksari v. Chairman, Broad. Bd. of Governors*, 451 F. App'x 1, at *4 (D.C. Cir. Oct. 28, 2011) (explaining that unpublished opinions after January 1, 2002, have "the force of precedent"); *accord In re Grant*, 635 F.3d 1227, 1232 (D.C. Cir. 2011) ("Although our circuit does not have a local rule directly on point, we agree that unpublished dispositions should not strictly bind *panels of the court*." (emphasis added)). Given "our hierarchical system of absolute vertical stare decisis," *Klayman v.*

*Obama*, 805 F.3d 1148, 1149 (D.C. Cir. 2015) (Kavanaugh, J., concurring in the denial of rehearing en banc), this lower court is unwilling to depart from the directly on point, unanimous decision of three appellate judges.

In any event, "regardless of whether *Karimova* is actually binding, it is still a case decided by the Circuit that contains reasoning the court finds persuasive." *Pour v. Rubio*, No. 25-cv-573, 2025 WL 2374559, at *5 (D.D.C. Aug. 14, 2025) (cleaned up); *see also Doroodchi v. Rubio*, No. 24-cv-3170, 2025 WL 1865114, at *4 (D.D.C. July 7, 2025) ("Published or not, [*Karimova*] represents the considered and unanimous judgment of a D.C. Circuit panel."). As the D.C. Circuit persuasively explained, the fact that the State Department might "re-open and re-adjudicate" a refused application based on new information does not change the fact that the Department has already acted on and refused the application, thus satisfying the only duties set forth by federal regulation. *See Karimova*, 2024 WL 3517852, at *2, *4–5. And critically, "nothing in federal law" prevents a consular officer from "hold[ing] onto [a refused] application in case circumstances later change in the applicant's favor, thereby saving the applicant the time and cost of filing a whole new visa application." *Id.* at *4. Indeed, by "keeping the door open," "administrative processing can only benefit, never hurt, the applicant's entry prospects." *Id.* at *2. To hold otherwise would only incentivize the State Department to deny visa applicants the opportunity of administrative processing. Accordingly, the court will GRANT Defendants' Motion for Judgment on the Pleadings.

## IV.   FIRST MOTION TO AMEND THE COMPLAINT

Under Federal Rule of Civil Procedure 15(a), a party who seeks to amend their complaint more than 21 days after service of a responsive pleading must obtain "the opposing party's written consent or the court's leave." Such leave "shall be freely given when justice so requires." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (cleaned up). But leave may be denied

if there is good reason to deny, such as "undue delay . . . on the part of the movant" or if allowing the amendment would cause "undue prejudice to the opposing party." *Atchinson v. District of Columbia*, 73 F.3d 418, 425–26 (D.C. Cir. 1996) (cleaned up). A district court may also "deny a motion to amend a complaint as futile if the proposed claim would not survive a motion to dismiss." *Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012). "It is the opposing party's burden to demonstrate why leave should not be granted." *Lannan Found. v. Gingold*, 300 F. Supp. 3d 1, 12 (D.D.C. 2017). For the reasons below, the court will GRANT in part and DENY in part Plaintiffs' First Motion to Amend the Complaint.

As an initial matter, the court will deny Plaintiffs' leave to file an amended complaint with respect to their claims for unlawful withholding and unreasonable delay. As detailed above, those claims fail as a matter of law because Plaintiffs have not identified any further action that the State Department is required to take on already-refused visa applications. *See supra* Part II. Plaintiffs concede that the "proposed amendments to the Complaint" merely repeat and "do not alter" those claims. Pls.' Mot. at 6; *see also* Pls.' Reply at 9, ECF No. 73 ("In the amended complaint, Plaintiffs repeat[] their unreasonable delay and unlawful withholding claims."). The proposed amendments do not, for example, identify some new source of law imposing an obligation on the State Department to act further on a refused application that has been placed into administrative processing. Thus, because it is well settled that "amendment of a complaint is futile where the proposed amendment does not modify the substance of the complaint," *Payne v. District of Columbia*, 773 F. Supp. 2d 89, 95 (D.D.C. 2011), the court will deny Plaintiffs' motion as to Counts Five through Eight of the proposed amended complaint, which merely repeat Plaintiffs' original claims for unlawful withholding or unreasonable delay.

It is a closer call whether Plaintiffs should be permitted to bring their proposed new claims related to Presidential Proclamation 10949. Defendants first argue that Plaintiffs' challenges to the Proclamation would "be futile because Plaintiffs' proposed amended complaint does not allege that any individual Plaintiff's visa application has been re-adjudicated and refused under INA § 212(f) pursuant to the Proclamation" and therefore Plaintiffs lack standing. Defs.' Opp'n at 6–7. But in evaluating standing, the court is not limited to allegations in the complaint; it may also "'consider materials outside the pleadings,'" "including additional declarations or affidavits provided by a plaintiff to support standing." *Ctr. for Bio. Diversity v. U.S. Int'l Dev. Fin. Corp.*, 585 F. Supp. 3d 63, 70 (D.D.C. 2022) (quoting *Marsh v. Johnson*, 263 F. Supp. 2d 49, 54 (D.D.C. 2003)); *see also Spann v. Colonial Village, Inc.*, 899 F.2d 24, 28 n.1 (D.C. Cir. 1990) ("This court and the district court may properly consider affidavits submitted by the parties, in addition to the complaint, to resolve the standing question."); *Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("[I]t is within the trial court's power to allow . . . the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing."). Plaintiffs have provided evidence that at least three Plaintiffs—Nima Ghiasidoost, Ghazal Delnavaz, and Mohammed Erfan Kazemi—have received § 212(f) refusals explicitly pursuant to the Proclamation and were also denied a National Interest Exception. *See* Pls.' Notice of Change in Material Facts, ECF No. 74. Receiving an employment-based visa denial—and the attendant "lost professional opportunities"—is a "traditional harm[] that [is] obviously concrete." *Ranjan v. DHS*, 747 F. Supp. 3d 192, 199 (D.D.C. 2024). Defendants thus do not dispute that a person who has received a § 212(f) refusal under the Proclamation would have standing to challenge it.

Defendants next argue that Plaintiffs' challenge to the Proclamation on nondelegation and excess-of-statutory-authority grounds would be futile. On this point, the court agrees. As another court in this district recently held, the claim that section 212(f) "is itself unconstitutional under the non-delegation doctrine" is "borderline frivolous." *Thein*, 2025 WL 2418402, at *14 n.14. To be sure, section 212(f) is a "comprehensive delegation" that "exudes deference to the President" and "vests the President with ample power to impose entry restrictions." *Trump v. Hawaii*, 585 U.S. 667, 684–85 (2018). But the Supreme Court has "found intelligible principles in a host of statutes giving agencies significant discretion," including statutes authorizing agencies "to regulate in the 'public interest.'" *FCC v. Consumers' Rsch.*, 606 U.S. 656, 683–84 (2025) (quoting *NBC v. United States*, 319 U.S. 190, 225–26 (1943)); *see also Chamber of Comm. v. Reich*, 74 F.3d 1322, 1327 (D.C. Cir. 1996) ("[E]ven the basic doctrine of unconstitutional delegation, while by no means repudiated, remains only a shadowy limitation on congressional power."). And "in the national security and foreign policy realms, the nondelegation doctrine . . . has played an even more limited role." *Id.* at 706 (Kavanaugh, J., concurring).

To survive a nondelegation challenge, a statute need only "provide[] an intelligible principle to guide an agency's exercise of discretion." *Sanchez v. Off. of State Superintendent of Educ.*, 45 F.4th 388, 402 (D.C. Cir. 2022). As several courts in this District have held, the "textual limits" on the President's power under section 212(f) amply supply an intelligible principle. *Gomez v. Trump*, 485 F. Supp. 3d 145, 187 (D.D.C. 2020) (cleaned up); *see also Thein*, 2025 WL 2418402, at *14 n.14. In particular, the statute requires that the President identify "a class of [noncitizens] whose entry is restricted," "make a finding" that their entry would be "detrimental to the interests of the United States," and "suspend" their entry only "for a fixed period of time or until resolution of a triggering condition." *Gomez*, 485 F. Supp. 3d at 187 (cleaned up). Although

"standards such as 'detrimental to the interests of the United States' . . . convey an expansive grant of power," "they are no more capacious than the broad standards deemed sufficiently intelligible by the Supreme Court in all but two of its cases." *Id.*

Plaintiffs' argument that the Proclamation exceeds the President's authority under section 212(f) would likewise be futile in light of the Supreme Court's decision *Trump v. Hawaii*. In Presidential Proclamation 10949, President Trump found that the entry of noncitizens from Iran would be detrimental to U.S. interests because of "inadequacies" in Iran's "information-sharing and identity-management protocols and practices," which, the President determined, undermine "the effectiveness of the screening and vetting protocols and procedures of the United States." 90 Fed. Reg. at 24498–99. The Supreme Court deemed a virtually identical finding sufficient in *Trump v. Hawaii* and warned that a more "searching inquiry into the persuasiveness of the President's justifications" would be "inconsistent with the broad statutory text and the deference traditionally accorded the President in this sphere." 585 U.S. at 686. Accordingly, the court will deny Plaintiffs' motion as to Count One of the proposed amended complaint.

The court will, however, grant Plaintiffs leave to bring Counts Two through Four of the proposed amended complaint, challenging State Department policies implementing the Proclamation. Although Defendants amply demonstrated the futility of Plaintiffs' direct challenges to Presidential Proclamation 10949, Defendants do not explain why Plaintiffs' challenges to the No Visa Policy and the State Department's implementation of the National Interest Exception would be futile. *See Gingold*, 300 F. Supp. at 12 (explaining that the burden is on the non-moving party to show that leave should be denied). Moreover, although the court will not prejudge the merits of these issues before it has briefing, there is some reason to think that at least Plaintiffs' challenge to the No Visa Policy might succeed. "Several other courts in this

District have held that the Department of State cannot rely on proclamations issued pursuant to [section 212(f)] to deny visa applications" because the INA appears to distinguish between suspending entry and denying visas. *Thein*, 2025 WL 2418402, at *15 (collecting cases).

Defendants have likewise failed to establish that there is some other valid reason to deny leave to amend with respect to Counts Two through Four. Plaintiffs did not engage in any undue delay—they moved to amend their complaint within a month after the President issued Presidential Proclamation 10949. Nor can it be said that a challenge to policies governing the issuance of visas to Iranian nationals "bears no more than a tangential relationship to the original" claims regarding visa applications submitted by Iranian nationals. *Geter v. U.S. Gov't Publ'g Off.*, 268 F. Supp. 3d 34, 44 (D.D.C. 2017) (quoting *Miss. Ass'n of Coops. v. Farmers Home Admin.*, 139 F.R.D. 542, 544 (D.D.C. 1991)). The "nature of the case" remains the same: Plaintiffs want their visa applications approved. *Id.* Although the court will not require Defendants to relitigate the claims regarding unlawful withholding and unreasonable delay, nor fight off plainly meritless challenges to Presidential Proclamation 10949, Rule 15(a) "afford[s]" Plaintiffs "an opportunity to test" their claims regarding the State Department's implementation of the Proclamation "on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## V.  CONCLUSION

For the reasons explained above, the court will DENY Plaintiffs' Motion to Strike; GRANT Defendants' Motion for Judgment on the Pleadings; and GRANT in part and DENY in part Plaintiffs' First Motion to Amend their Complaint. A corresponding order will follow.

Date: December 17, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge
