**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **TOKTAM ARIANI**, *et al.*<br><br>      Plaintiffs,<br><br>    v.<br><br>**MARCO RUBIO**, *et al.*<br><br>      Defendants. | No. 25-cv-349 (TSC) |
| **RANA JAHANI**, *et al.*<br><br>      Plaintiffs,<br><br>    v.<br><br>**MARCO RUBIO**, *et al.*<br><br>      Defendants. | No. 25-cv-989 (TSC) |

## OPINION & ORDER

Plaintiffs are Iranian nationals who applied for visas to study, research, or work in the United States.[1] Several of them have had their applications refused under 8 U.S.C. § 1182(f) pursuant to Presidential Proclamation 10,949, which restricted entry into the United States by persons from various countries including Iran. *See* 90 Fed. Reg. 24,497 (June 4, 2025).[2] The

---

[1] For a more extensive background and procedural history of these consolidated cases, see *Ariani v. Rubio*, No. 25-cv-349, 2025 WL 3653503, at *1–2 (D.D.C. Dec. 17, 2025) and *Jahani v. Rubio*, No. 25-cv-989, 2025 WL 3653542, at *1–3 (D.D.C. Dec. 17, 2025).

[2] The President subsequently issued Presidential Proclamation 10,998. *See* 90 Fed. Reg. 59,717 (Dec. 16, 2025). That Proclamation expanded and otherwise modified Proclamation 10,949 but not in any way that impacts this litigation. *See* Defs.' Mot. to Dismiss at 6, ECF No. 85 (noting that the President expanded entry restrictions to citizens of additional countries and modified exceptions but not the National Interest Exception relevant to this case).

remaining Plaintiffs "face a realistic and impending threat" that their visa applications—which have been refused pursuant to § 1201(g) and placed into administrative processing—will soon suffer the same fate. *Jahani v. Rubio*, No. 25-cv-989, 2025 WL 3653542, at *6 (D.D.C. Dec. 17, 2025).

In prior opinions, the court denied Plaintiffs leave to directly challenge Proclamation 10,949; such challenges would be futile in light of the Supreme Court's decision in *Trump v. Hawaii*, 585 U.S. 667 (2018). *See Jahani*, 2025 WL 3653542, at *6; *Ariani v. Rubio*, No. 25-cv-349, 2025 WL 3653503, at *1–2 (D.D.C. Dec. 17, 2025). But the court granted Plaintiffs leave to challenge two State Department policies which purport to implement the Proclamation. *See Jahani*, 2025 WL 3653542, at *7; *Ariani*, 2025 WL 3653503, at *6–7. Those policies are (1) the State Department's practice of refusing visas to applicants subject to the Proclamation ("the No Visa Policy"), and (2) the Department's directive that consular officers may/should only grant national interest exceptions to the Proclamation in rare and exceptional cases ("the No NIE Policy"). Defendants now move to dismiss the Amended Complaints. *See* Defs.' Mot. to Dismiss Am. Compls., ECF No. 85 ("Defs.' Mot.").[3] For the reasons set forth below, the court will DENY the Motion.

## I.    ANALYSIS

### a.  Consular Nonreviewability

Defendants first contend that Plaintiffs' policy challenges are barred by the doctrine of consular nonreviewability. *See* Defs.' Mot. at 15–23. The court disagrees. "[C]onsular nonreviewability shields individual visa determinations from judicial review." *Afghan & Iraqi Allies v. Rubio*, No. 18-cv-1388, 2026 WL 322996, at *5 (D.D.C. Feb. 6, 2026); *Saavedra Bruno*

---

[3] All ECF references are to the consolidated docket, No. 25-cv-349.

*v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999) ("[A] consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise."). But "it does not foreclose every challenge that touches on consular decisions." *Al-Shakliah v. Rubio*, No. 25-cv-3870, 2026 WL 1283663, at *5 (D.D.C. May 11, 2026). "To the contrary, it is well settled that when plaintiffs pursue forward-looking challenges to the lawfulness of regulations or policies governing consular decisions, courts may review them 'to assure that the executive departments abide by the legislatively mandated procedures.'" *Pietersen v. Dep't of State*, 138 F.4th 552, 560 (D.C. Cir. 2025) (quoting *Int'l Union of Bricklayers & Allied Craftsmen v. Meese*, 761 F.2d 798, 801 (D.C. Cir. 1985)). "Rather than contesting particular visa determinations by a consular officer," Plaintiffs "confine their challenge[s] to the lawfulness of [two] State Department polic[ies]." *Pietersen*, 138 F.4th at 560. Thus, under a straightforward application of binding D.C. Circuit precedent, consular nonreviewability does not bar Plaintiffs' claims.

Defendants attempt to discredit and distinguish *Pietersen*. First, they attack it as an ill-considered, overbroad statement of the law. *See* Defs.' Mot. at 22–23. But *Pietersen*'s statement regarding consular nonreviewability was not dicta—it was integral to the Circuit's decision to reverse the district court and remand for it to consider a policy challenge that the district court deemed barred by consular nonreviewability. And of course, this court is not free to disregard D.C. Circuit precedent, no matter how unwise Defendants believe it to be. *See Maxwell v. Snow*, 409 F.3d 354, 358 (D.C. Cir. 2005) (district courts are "bound to follow circuit precedent until it is overruled either by an *en banc* court or the Supreme Court"). In any event, *Pietersen*'s statement of the law is correct and true to the doctrine. Consular nonreviewability recognizes that "Congress has . . . granted consular officials the exclusive authority to" make "individual visa determinations," *i.e.*, to decide whether to "'exclude *a given alien*.'" *Afghan & Iraqi Allies*,

2026 WL 322996, at *5 (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950)).  In other words, Congress has "left to executive discretion" the unreviewable authority to make "a particular determination in a particular case." *Int'l Union of Bricklayers*, 761 F.2d at 801.  But consular nonreviewability does not extend so far as to allow the Executive to issue a policy deviating from "legislatively mandated procedures." *Id.*  That would go beyond Congressionally recognized discretion to make individualized determinations and instead would amount to unreviewable Executive repudiation of Congressional authority in the area of immigration.

Defendants also point out that "[o]ne of the plaintiffs in *Pietersen* was a U.S. citizen" and suggest that only U.S. citizens or plaintiffs present in the United States have standing to challenge immigration policies.  Defs.' Mot. at 22–23.  Although "foreign nationals seeking admission have no constitutional *right* to entry," *Hawaii*, 585 U.S. at 703 (emphasis added), it does not follow that they have no legally cognizable *interest* in coming to the United States such that they lack standing.  *See Pourabdollah v. Blinken*, No. 23-cv-1603, 2024 WL 474523, at *4 (D.D.C. Feb. 7, 2024) ("[A] visa applicant's lack of a constitutional right to entry does not preclude Article III standing.").  Indeed, the Seventh Circuit has squarely rejected Defendants' argument, noting that an interest "need not rise to the level of a right, let alone a constitutional right" to be cognizable under Article III.  *Matushkina v. Nielsen*, 877 F.3d 289, 293 (7th Cir. 2017) ("A right of entry . . . is not a prerequisite to standing in the case of someone seeking entry to the United States.").  Several other Circuits have similarly held that losing "a significant opportunity to receive an immigrant visa . . . is itself a concrete injury" even though immigration plaintiffs have no right to the visa itself.  *Patel v. USCIS*, 732 F.3d 633, 638 (6th Cir. 2013) (cleaned up); *see also Mantena v. Johnson*, 809 F.3d 721, 731 (2d Cir. 2015) (same).  The court

therefore has little trouble concluding that although Plaintiffs have "no underlying right" to a visa, "they still [have] some legally protected interest in the government's adherence to required procedures." *Ranjan v. DHS*, 747 F. Supp. 3d 192, 198 (D.D.C. 2024).

Finally, Defendants argue that Plaintiffs cannot bring policy challenges because they already received refusals. *See* Defs.' Mot. at 20–22. But a "policy challenge can proceed even where the named plaintiffs themselves have received final visa refusals if the refusals followed from the policy under attack." *Al-Shakliah*, 2026 WL 1283663, at *5. Indeed, that was precisely the case in *Pietersen*; the applicant there had her visa refused pursuant to guidance in the Foreign Affairs Manual which she claimed was erroneous. 138 F.4th at 554–55. For purposes of consular nonreviewability, the focus of the challenge is what matters—not whether the challenger has had an application already refused or not. When a refused applicant attacks a policy, they "do not challenge a particular determination in a particular case." *Int'l Union of Bricklayers*, 761 F.2d at 801. They instead target "the legality of State Department policies . . . without implicating the discretionary decisionmaking of individual consular officers." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 142 (D.D.C. 2021) (citing *P.K. v. Tillerson*, 302 F. Supp. 3d 1, 12 (D.D.C. 2017)). Because Plaintiffs attack State Department policies—not individual visa determinations—their claims do not implicate consular nonreviewability.

### b. No Visa Policy

In their Amended Complaints, Plaintiffs allege that the State Department has adopted a policy of suspending visa issuance to Iranian nationals pursuant to the Proclamation that President Trump issued under 8 U.S.C. § 1182(f). *See* Ariani Am. Compl. ¶¶ 295–99, ECF No. 82; Jahani Am. Compl. ¶¶ 205–09, ECF No. 84. Plaintiffs contend that this No Visa Policy exceeds the State Department's statutory authority because although § 1182(f) authorizes the

President to impose restrictions on entry into the United States, it does not give the Department any corresponding authority to suspend visa issuance. *See* Ariani Am. Compl. ¶¶ 314–25; Jahani Am. Compl. ¶¶ 241–52. Defendants move to dismiss, arguing that "[c]onsular officers may properly rely on proclamations issued pursuant to 8 U.S.C. § 1182(f) to deny visa applications." Defs.' Mot. at 23.[4]

Defendants' core argument is that any noncitizen who is ineligible to enter under § 1182 is automatically ineligible to receive a visa under § 1201(g). Defs.' Mot. at 24. "But that argument ignores the basic distinction between admissibility determinations, i.e., entry determinations, and visa issuance"—a distinction "that runs throughout" the Immigration and Nationality Act. *Gomez v. Trump*, 485 F. Supp. 3d 145, 191 (D.D.C. 2020) (cleaned up). "Several courts in this district" have held that a "person subject to a Presidential Proclamation issued pursuant to § 1182(f) . . . is 'merely ineligible to enter,' not ineligible to receive a visa." *Al-Shakliah*, 2026 WL 1283663, at *12 (quoting *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 315 (D.D.C. 2020) and collecting cases). Although § 1182(a) makes clear that anyone ineligible to enter under that subsection is also ineligible to receive a visa, § 1182(f) contains no similar prohibition on both entry and visa issuance. *See Milligan*, 502 F. Supp. 3d at 315 (citing *Gomez*, 485 F. Supp. 3d at 192). When Congress intends an entry restriction to also function as a bar to visa issuance, it has said so directly. Thus, "the court sees no reason to depart from [the] decisions" of its sister courts. *Al-Shakliah*, 2026 WL 1283663, at *12.[5] "In practical terms,

---

[4]  Plaintiffs separately claim that the No Visa Policy is arbitrary and capricious because in suspending visa issuance, Defendants failed to adequately account for reliance interests. *See* Ariani Am. Compl. ¶¶ 326–32; Jahani Am. Compl. ¶¶ 253–59. Defendants do not substantively address this claim in their Motion to Dismiss.

[5]  Defendants contend that the Executive has long considered noncitizens barred from entry under § 1182(f) to be ineligible for visas, and that Congress ratified this understanding. *See*

Plaintiffs understand that receipt of a visa does not entitle them to enter the U.S., . . . but they wish to possess the visas in expectation" that entry restrictions may be relaxed or in hopes of obtaining an exception to the restrictions on entry. *Milligan*, 502 F. Supp. 3d at 313. Plaintiffs' statutory challenge to the No Visa Policy may therefore proceed.

### c. No NIE Policy

Finally, the Ariani Amended Complaint challenges the State Department's policy implementing the Proclamation's National Interest Exception—the No NIE Policy. *See* Ariani Am. Compl. ¶¶ 304–13. According to Plaintiffs, the Department has directed officials to apply the Exception so narrowly that the Exception has become "superficial and unattainable." *Id.* ¶ 312. Defendants move to dismiss, arguing that the Proclamation's creation of the Exception is not privately enforceable and, in any event, the State Department's implementation of the Exception is not arbitrary and capricious. *See* Defs.' Mot. at 30–32.

Defendants' first argument misconstrues Plaintiffs' claim. As Chief Judge Boasberg recently explained in a similar case, Plaintiffs "do not seek to enforce the Proclamation directly." *Al-Shakliah*, 2026 WL 1283663, at *10. "Instead, they proceed under the APA, which authorizes review of final agency action alleged to be arbitrary, capricious, or otherwise unlawful." *Id.* The nonenforceability of the Proclamation does not foreclose a challenge to the Department's "adherence to the Proclamation" and its implementing guidance. *Moghaddam v.*

---

Defs.' Mot. at 25–27. The doctrine of ratification, however, is narrower than Defendants suppose. It applies "when Congress reenacts, without change, statutory terms that have been given a consistent judicial or administrative interpretation." *Soc'y of Plastics Indus. v. ICC*, 955 F.2d 722, 728–29 (D.C. Cir. 1992). Defendants identify no reenactment of § 1182(f) against the backdrop of the administrative practice they cite. They rely instead on assorted collateral statutes that reference or assume the Secretary's role in the implementation of § 1182(f) entry restrictions without enacting the entry-ineligibility-equals-visa-ineligibility rule that they urge. Their ratification argument thus falls short.

*Pompeo*, 424 F. Supp. 3d 104, 120 (D.D.C. 2020); *see also Ashtari v. Pompeo*, 496 F. Supp. 3d 462, 469–70 (D.D.C. 2020).

Turning to the parties' merits arguments, they are not well suited to evaluation at this early stage. In general, arbitrary-and-capricious analysis "is a question for summary judgment on a developed record." *Al-Shakliah*, 2026 WL 1283663, at *11; *see also Swedish Am. Hosp. v. Sebelius*, 691 F. Supp. 2d 80, 89 (D.D.C. 2010) ("The court is unable to assess the merits of these arguments without considering the administrative record."); *Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41, 54 (D.D.C. 2011) ("Without the full administrative record and further briefing . . . , the court cannot determine whether Defendants' actions were arbitrary and capricious."). For now, the court is satisfied that Plaintiffs have alleged sufficient facts to state a plausible claim that Defendants have flouted the Proclamation's directive that National Interest Exceptions be made by "making such waivers, in effect, categorically unavailable." *Al-Shakliah*, 2026 WL 1283663, at *11.

## II.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the Amended Complaints, ECF No. 85, is hereby DENIED.

Date: June 10, 2026

*Tanya S. Chutkan*

TANYA S. CHUTKAN
United States District Judge